James E. Cecchi
Caroline F. Bartlett
Michael A. Innes
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Attorneys for Plaintiffs and the Proposed Class*

(Additional counsel listed on signature page)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHERRY LEWIS and DAVID V. LEWIS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNMENT EMPLOYEES INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. <br><br><br> **COMPLAINT and** <br> **DEMAND FOR JURY TRIAL** |

## TABLE OF CONTENTS

**Page**

I.      NATURE OF THE ACTION ...................................................................................1

II.     JURISDICTION ......................................................................................................2

III.    VENUE ....................................................................................................................2

IV.     PARTIES .................................................................................................................3

V.      FACTUAL ALLEGATIONS ...................................................................................3

      A.    The Policy ....................................................................................................3

      B.    Sales Tax, Title Fees, and License Plate Transfer Fees ..............................5

      C.    Condition Adjustments ................................................................................7

      D.    GEICO Fails to Pay Sales Tax, Title Fees, or License Plate
           Transfer Fees on Plaintiffs' Total Loss Claim .............................................9

      E.    GEICO Reduced the Valuation by Applying an Illegitimate
           Condition Adjustment to Comparable Vehicles .........................................13

VI.     CLASS ACTION ALLEGATIONS ........................................................................14

VII.    COUNTS ALLEGED .............................................................................................17

COUNT ONE BREACH OF CONTRACT.........................................................................17

COUNT TWO BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
        AND FAIR DEALING ...............................................................................18

COUNT THREE  DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF ...................19

COUNT FOUR  NEW JERSEY CONSUMER FRAUD ACT ..........................................21

PRAYER FOR RELIEF ....................................................................................................22

JURY TRIAL DEMAND ...................................................................................................23

## I.     NATURE OF THE ACTION

1.     When a person's vehicle is totaled in an accident, an automobile insurance company must not underpay claims by manipulating the data used to value the vehicle. Specifically, New Jersey law prohibits insurers from reducing claim values with arbitrary, unexplained, and unjustified adjustments to the condition of comparable vehicles that bear no relation to actual cash value and requires that insurers include in their cash settlements for total loss claims all applicable sales taxes, title fees, and license plate fees required to be paid upon the purchase of a new vehicle.  An insurer must not misstate or conceal material facts that bear upon its estimate of value.

2.     In negotiating and settling total loss claims, Government Employees Insurance Company ("GEICO") flagrantly violates these rules. First, GEICO underpays consumers by failing to include applicable sales tax, title fees, and license plate fees in its valuation of the loss vehicle. Even though consumers will necessarily incur these fees to purchase a new vehicle, and even though New Jersey law requires the insurer to include them in the value of the claim, GEICO shorts its consumers by failing to do so.

3.     Second, GEICO reduces the value of comparable vehicles by an arbitrary amount that it deems a "condition adjustment" without itemizing or explaining the basis for the adjustment as required by New Jersey law. GEICO applies a uniform "condition adjustment" to multiple comparable vehicles involved in a valuation without even distinguishing one vehicle from the next. These arbitrary and unjustified condition adjustments artificially and improperly reduce claim payments by hundreds or thousands of dollars.

4.     GEICO's systematic under-valuations and underpayments violate its insurance contracts with its insureds as well as New Jersey statutes governing the adjustment of total loss claims. GEICO's actions also violate New Jersey prohibitions on consumer deception.

5.     Plaintiffs, Sherry Lewis and David V. Lewis (collectively referred to as "Plaintiffs"), bring this class action on behalf of all those insured under automobile insurance policies issued in the State of New Jersey by GEICO whose claim valuations omitted applicable sales tax, title fees, license plate fees, and those whose claim valuations were based upon the values of comparable vehicles that were reduced by artificial, unexplained "condition adjustments."

6.     Plaintiffs seek for themselves and the class compensatory damages, statutory damages, punitive damages, and attorney's fees, as well as declaratory and injunctive relief.

## II.     JURISDICTION

7.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiffs are citizens of New Jersey and GEICO is a citizen of Maryland (where it has its principal place of business) and Delaware (where it is incorporated).

8.     This Court has personal jurisdiction over GEICO because GEICO routinely conducts business in New Jersey, has a Claims Center in New Jersey, and otherwise avails itself of the protections and benefits of New Jersey law through its claims processing, and its advertising, marketing, and sale of insurance policies in New Jersey, and this action arises out of or relates to these contacts. This Court has personal jurisdiction over Plaintiffs because Plaintiffs consent to this Court's jurisdiction.

## III.     VENUE

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is a resident of this District within the meaning of 28 U.S.C. § 1391(c)(2) and because a substantial

part of the events or omissions giving rise to the claim, including the claims adjustment, occurred in this District.

## IV.   PARTIES

10.    Plaintiff Sherry Lewis, at all relevant times, is and was an adult residing in Sewell, New Jersey.

11.    Plaintiff David V. Lewis, at all relevant times, is and was an adult residing in Sewell, New Jersey.

12.    Defendant GEICO Government Employees Insurance Company ("GEICO"), a wholly-owned subsidiary of Berkshire Hathaway, Inc., is an insurance company incorporated in Maryland. GEICO's principal place of business is 5260 Western Avenue, Chevy Chase, MD, 20815. Although GEICO is a private company that does not provide separate results of affiliates (such as GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company), it earned underwriting profits from its property and casualty insurers of $462 million on $26.3 billion of premiums in 2016. *See* Berkshire Hathaway, Inc. 2016 Annual Report, at 79.

## V.   FACTUAL ALLEGATIONS

### A.   The Policy

13.    GEICO issues policies of insurance for private passenger automobile physical damage.

14.    At all times material hereto, Plaintiffs were lessees of a 2017 Volkswagen Jetta SE, VIN 3VWDB7AJ8HM393604 (the "Vehicle").

15.    GEICO insured the Vehicle pursuant to a New Jersey Family Automobile Insurance Policy, form A-30NJ (02-08), with a policy period of January 6, 2018 through July 6,

2018 (the "Policy") (attached hereto as Exhibit A).  Plaintiffs paid a six-month premium of

841.70 for the Policy, of which $335.80 was for auto physical damage coverage.

16.     Upon information and belief, New Jersey policy form A-30NJ (02-08) is based on

and has the same material terms as Defendant's policy form A-30.

17.     Upon information and belief, Defendant issues private passenger auto physical

damage policies under policy form A-30 throughout New Jersey and in states nationwide.  *See,*

*e.g.,* Ex. A, Ex. B (A-30NV); Ex. C (A-30ME).

18.     The Policy requires payment on first-party total loss physical damage claims of

"Actual Cash Value" ("ACV"), which is defined by the policy as "the replacement cost of the

auto or property less depreciation or betterment."  Ex. A, Policy, at 18.

19.     Relating to physical damage collision coverage, the Policy provides as follows:

> ***Actual cash value*** of property will be determined at the time of the
> loss and will include an adjustment for ***depreciation*** and/or
> ***betterment*** and for the physical condition of the property.

*Id.* at 20 (emphasis in original).

20.     The Policy defines ACV as:

> 1. ***Actual cash value*** is the replacement cost of the auto or
>    property less ***depreciation*** and/or ***betterment***.
> 2. ***Betterment*** is improvement of the auto or property to a value
>    greater than its pre-loss condition.
>    . . .
> 5. ***Depreciation*** means a decrease or loss in value to the auto or
>    property because of use, disuse, physical wear and tear, age,
>    outdatedness, or other causes.

Ex. A, Policy at 18 (emphasis in original).

**B.      Sales Tax, Title Fees, and License Plate Transfer Fees**

21.      An insured vehicle cannot be replaced without payment of sales tax, title fees, and/or license plate transfer fees. These costs are undeniably part of the "replacement cost" of a totaled vehicle.

22.      Moreover, under New Jersey law, ACV includes sales tax and specifically requires that, whether the insurer elects to replace the totaled vehicle or make a cash settlement for a totaled vehicle, its offer must include applicable sales tax (hereafter referred to as "ACV Sales Tax"). N.J. Admin Code 11:3-10.4(a).

23.      Thus, Defendant is required by its Policy to pay ACV Sales Tax on first-party total loss claims because it is a mandatory cost of the purchase or lease of any replacement vehicle and because, as per applicable state law, sales tax is part of ACV and must be included in any cash settlement for a totaled vehicle.

24.      Similar to sales tax, title and license plate transfer fees are mandatory costs and are therefore part of the "replacement cost" of any vehicle. Sales tax, title fees, and license plate transfer fees are each "applicable fees and taxes" required to be paid as part of the cost of purchasing any vehicle under New Jersey law.

25.      For instance, New Jersey requires the payment of applicable taxes before any vehicle is permitted to be titled and operated. (http://www.state.nj.us/mvc/vehicles/titlenew.htm) ("If you purchase a vehicle in New Jersey, you must pay sales tax and complete the sales tax section stamped on the title. New Jersey dealers are required to collect sales tax for New Jersey residents.") (last accessed February 23, 2018).[1]

---

[1] Effective January 1, 2018, the New Jersey Sales and Use Tax rate decreased from 6.875% to 6.625%.

26.     New Jersey law also requires that all vehicles operated on state roadways have the title of the vehicle registered with the State. *See, e.g.*, N.J.S.A. 39:10-6; 39:3-4. The cost in New Jersey to transfer title to a purchased replacement vehicle is a minimum of $60.00.

27.     In addition, New Jersey law requires that all vehicles operated on New Jersey roads have a license plate. *See* N.J.S.A. 39:3-33. The cost in New Jersey to transfer a license plate to a replacement vehicle is a minimum of $4.50.

28.     Defendant maintains a Claims Center and claims information website for the purpose of informing insureds of their rights when they suffer a total loss. Through this website, GEICO and its affiliates also have made, and continue to make, false statements about coverage for title fees on total losses to the general public.

29.     In the GEICO Claims Center website publication, "Car Is Totaled: Learn About The Total Loss Process" (www.geico.com/claims/claimsprocess/total-loss-process/) (last visited 2/13/18), Defendant states: "If your policy covers a total loss, GEICO will: pay the actual cash value of the vehicle (plus applicable state fees and taxes) less any deductible."

30.     Thus, Defendant, consistent with industry standard, explains to insureds that they will receive payment of ACV (minus deductible) upon suffering a total loss, and that this value includes applicable fees and taxes. *Id.*

31.     Notably, the Policy language, does not include any provision excluding sales tax or state and local regulatory fees from ACV.

32.     As Defendant is aware, the New Jersey Department of Banking and Insurance has explicitly found it to be in violation of New Jersey law for failing to include the full ACV Sales Tax in its settlement offers to insureds. *See* New Jersey Department of Banking and Insurance Market Conduct Examination of GEICO, dated June 24, 2009 (stating the settlement offer must

be "actual cash value as defined under **N.J.A.C. 11:3-10.2** and as further established by the company's use of CCC pursuant to **N.J.A.C. 11:3- 10.4(a)2 and 3)**, [and that it] is subject to valuation additions and deductions plus applicable sales tax.") (finding violations by Defendant related to excluding salvage retention value from the sales tax calculation for ACV).

33.     In its 2009 Market Conduct Examination of GEICO, the New Jersey Department of Banking and Insurance made clear that, under New Jersey law, "if an insurer elects to make a cash settlement in lieu of providing an actual replacement, its offer is subject to additions and deductions **plus applicable sales tax**." *Id.*

34.     However, contrary to the statement on its website, New Jersey law, and the terms of Defendant's auto insurance policies, Defendant does not include applicable state fees and taxes as part of its claims payments to total loss insureds throughout New Jersey.

C.     **Condition Adjustments**

35.     Further, in valuing total loss claims, GEICO must rely only upon "written, itemized valuations showing all options and deductions." N.J.A.C. § 11:3-10.4(a). Where a database of vehicle values is used in valuing total loss claims, GEICO must explain and justify the condition adjustments made to the loss vehicle and comparable vehicles.

36.     New Jersey law makes this obligation clear: "If the database uses several price ranges for the same model vehicle depending on the condition of the vehicle, it must clearly indicate what condition the vehicle is being valued at and define in detail the difference between such rating categories." N.J.A.C. § 11:3-10.4(a)(3). The purpose of this requirement is to ensure that any adjustments are reasonable and justified and to ensure that consumers can evaluate and challenge any deductions that are improper.

37.     Nonetheless, GEICO bases its offers and payments on manipulated data and reports that do not meet GEICO's duties under New Jersey law, imposing arbitrary and unexplained "condition adjustments" to artificially reduce the values of comparable vehicles.

38.     To calculate its offer and payment, GEICO obtains a valuation report from a third party company called CCC Information Services, Inc. ("CCC"). These reports purport to contain values for comparable used vehicles recently for sold or for sale in the geographic area of the insured. The reports contain a purported valuation for the loss vehicle based upon the data in the report.

39.     GEICO offers its insureds a claim settlement that includes a valuation equivalent to the valuation amount found on the report.

40.     The valuation reports reduce the estimated values of comparable vehicles citing a "condition adjustment" but fail to itemize or explain the basis for these condition adjustments.

41.     These condition adjustments are arbitrary and unjustified. Indeed, even though each comparable vehicle has unique characteristics, the reports reduce the value of multiple comparable vehicles by the exact same amount, down to the last dollar, without any itemization or explanation for the reduction.

42.     Nowhere does GEICO explain or justify the amount of the reduction, nor does GEICO explain why the condition of each unique comparable vehicle justifies the exact same condition adjustment down the last dollar. GEICO does not explain why the list price of a vehicle does not accurately reflect the condition and characteristics of the vehicle, or why the specific amount of the adjustment is correct. And GEICO does not explain why adjustments to comparable vehicle prices are needed when the value of the loss vehicle has been independently adjusted to reflect its characteristics, mileage, configuration, and condition.

43.     In reality, the condition adjustments are a sham that GEICO uses to underpay the claim. These blind and arbitrary reductions bear no relation to the actual fair market value of the comparable vehicles or the loss vehicle. The application of an arbitrary condition adjustment to reduce the value of comparable vehicles artificially reduces the valuation of the loss vehicle to benefit the insurer at the expense of the insured.

**D.      GEICO Fails to Pay Sales Tax, Title Fees, or License Plate Transfer Fees on Plaintiffs' Total Loss Claim**

44.     As set forth above, at all relevant times, Plaintiffs were lessees of the Vehicle, which was financed through VW Credit, Inc.

45.     On January 10, 2018, Plaintiffs' daughter, an additional insured on the Policy, was involved in a collision resulting in a total loss of their covered Vehicle.

46.     Plaintiffs complied with all terms of the Policy and fulfilled all of the duties that the Policy imposed on them, including their duty to timely notify Defendant of the details regarding the accident and how it occurred.

47.     Defendant, through its adjuster Stuart Flaxman, issued an estimate of record finding that the Vehicle was a total loss. *See* Estimate of Record, dated January 16, 2018, (attached hereto as Exhibit D); *see also* Letter dated January 31, 2018 (stating "We understand that your [Vehicle] has been declared a total loss.") (attached hereto as Exhibit E).  Defendant estimated that the cost of repair was $17,613.05 (including 6.625% sales tax on a $16,518.69 estimated repair cost subtotal).

48.     Pursuant to the Policy, Plaintiffs were entitled to recovery of ACV- the replacement cost of the Vehicle- for their total loss.

49.     Defendant made a cash settlement offer to Plaintiffs in the amount of $18,258, minus the $1,000 deductible, for a total amount of $17,258.00 to compensate Plaintiffs for the loss of the Vehicle.

50.     Upon learning that the cash settlement offer did not include ACV Sales Tax, Plaintiffs contacted Mr. Flaxman who represented that Defendant does not pay sales tax as part of ACV for total loss claims on leased vehicles in New Jersey.

51.     The Policies for Plaintiffs and every class member provide that a "leased" vehicle insured under the Policy is considered an "owned auto" for purposes of physical damage coverage. Ex. A, Policy at 18 ("owned auto [is] [a]ny vehicle described in this policy for which a specific premium charge indicates there is coverage").

52.     Plaintiffs requested that the cash settlement include sales tax but Defendant refused.

53.     Unbeknownst to Plaintiffs, on January 29, 2018, Defendant posted to Plaintiffs' account on Defendant's web-portal a letter to Plaintiffs enclosing a "Total Loss Settlement Explanation." The letter, purportedly authored by Defendant's adjuster, Stuart Flaxman, stated:

> The enclosed "Total Loss Settlement Explanation" is a breakdown of your vehicle's settlement. For your convenience, the Market Valuation is available on GEICO.com. The Net Settlement Amount is the Base Value of your vehicle, **plus any applicable fees and adjustments**. If you have any questions, please contact me at 917-440-8155. You can also access your claim information at GEICO.com.

January 29, 2018 Letter with Enclosure (attached hereto as Exhibit F) (emphasis added).

54.     The enclosed Total Loss Settlement Explanation contained the following breakdown:

| | |
|---|---|
| Base Value | $16,172.00 |
| Condition Adjustment | $886.00 |
| Pre Tax Adjustment | $1,200.00 |

| | | |
|---|---|---|
| **Tax** | | **$1,209.59** |
| Total Value | | $19,467.59 |
| **State and Local Regulatory Fees** | | **$0.00** |
| Post Tax Adjustment | | $0.00 |
| Less Deductible | | $1,000.00 |
| Less Percent Negligent | 0% | $0.00 |
| Less Retention Amount | | $0.00 |
| **New Settlement Amount** | | **$18,467.59** |
| Towing Charges | | $0.00 |
| Storage Charges | | $0.00 |

Ex. F (Total Loss Settlement Explanation, Form CL-30) (emphasis added). To date, other than posting it to its website portal, Defendant never notified Plaintiffs of the "Total Loss Settlement Explanation."

55.     The Total Loss Settlement Explanation includes $1,209.59 for "Tax" (equaling 6.625% of the $18,258.00 estimate), evidencing Defendant's acknowledgment that ACV Sales Tax is covered under the Policy and of Plaintiffs' entitlement to it. Defendant also marked "Does Not Apply" to a section containing the following language: "Any state sales tax due the owner through replacement of the vehicle will be considered when notice is given and purchase invoice presented." Ex. F (Total Loss Settlement Explanation).

56.     The Total Loss Settlement Explanation also shows $0.00 for "State and Local Regulatory Fees" evidencing Defendant's refusal to pay state and local regulatory fees, such as title fees and license plate transfer fees, on the total loss.

57.     In a correspondence dated February 13, 2018, Defendant provided Plaintiffs with an itemization of the total loss claim settlement as follows:

| | |
|---|---|
| Base Value: | $16,172.00 |
| Pre-Loss Deduction: | |
| Agreed Value of Vehicle: | $16,172.00 |
| **Add State Sales Tax:** | |
| Misc. Fees & Adjustments: | $2,086.00 |
| Total: | $18,258.00 |
| Less deductible amount (if any): | $1,000.00 |
| Less net value of salvage you retained: | |
| Less payment to lien holder: | |
| Lienholder Payment Draft Number: | |

AMOUNT TO CUSTOMER:          $17,258.00

*See* Letter dated February 13, 2018 from GEICO Salvage Specialist enclosing Form CL-30 (attached hereto as Exhibit G) (emphasis added).

58.     Defendant paid the sum of $17,258.00 to the lienholder, VW Credit Inc., which consisted of the $18,258 minus the Policy's deductible of $1,000.00. *See* February 14, 2018 Bank Confirmation (attached hereto as Exhibit H). Excluded from the payment and settlement amount was the $1,209.59 in ACV Sales Tax owed to Plaintiffs and identified in the January 29, 2018 Total Loss Settlement Explanation and any amounts for other applicable fees necessary to the purchase of a replacement, such as license fees and title fees. *Id.*

59.     Thus, Defendant never accounted for sales tax, license fees, and title fees and, as such, failed to pay the full ACV on Plaintiffs' claim. Defendants wrongfully withheld payment of ACV Sales Tax, license fees, and title fees even though they are "replacement costs" necessarily included in the amount "for which the damaged vehicle can be replaced with one that is substantially similar."

60.     Defendant's policy and practice of not paying sales tax, title fees, and license plate transfer fees violates applicable state law and is a breach of the terms of the policies of insurance Defendant entered into with its insureds, which specifically require Defendant to pay the full "replacement cost" to insureds suffering a total loss of their vehicle.

61.     Plaintiff has been damaged by Defendant's policy of not including ACV Sales Tax, title fees, and license plate transfer fees as part of ACV as required under the Policy and state law.

62.     Upon information and belief, Defendant has failed to pay at the time of settlement full ACV Sales Tax, title fees, and license plate transfer fees to potentially tens of thousands of

first-party total loss claimants in New Jersey, even though these fees are required by contract and applicable state law.

**E.     GEICO Reduced the Valuation by Applying an Illegitimate Condition Adjustment to Comparable Vehicles**

63.     After the total loss of Plaintiffs' vehicle, GEICO obtained a valuation report from CCC that contained an "Adjusted Vehicle Value" for Plaintiffs' vehicle.

64.     GEICO based its settlement offer upon the Adjusted Vehicle Value in the valuation report.

65.     The CCC report states that the Adjusted Vehicle Value in the valuation report is "determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes." The CCC report states that the "Base Vehicle Value" is "derived from comparable vehicle(s) available or recently available in the marketplace at the time of valuation."

66.     The CCC report contains a chart comparing the loss vehicle to three comparable vehicles, listing the equipment configuration for each.

67.     At the bottom of the chart, the CCC report states the list price for each comparable vehicle: $17,325, $18,879, and $17,770 respectively.

68.     Beneath the list prices, the CCC report lists "Adjustments" to the value of each comparable vehicle for mileage and condition.

69.     Even though each comparable vehicle is unique, and even though each comparable vehicle is listed at its own unique price in the report, the CCC report applies a flat $1,006 reduction to the value of each comparable vehicle.

70.     Neither GEICO nor the CCC report explains or justifies this blanket reduction to the listed values of the comparable vehicles.

71.     In fact, the $1,006 reduction to the values of the three comparable vehicles is arbitrary and unjustified and bears no relation to the actual value of the comparable vehicles.

72.     Defendant's policy and practice of applying an arbitrary, unexplained, and unjustified condition adjustment to comparable vehicles violates applicable state law and is a breach of the terms of the policies of insurance Defendant entered into with its insureds, which specifically require Defendant to compensate Plaintiffs for the Actual Cash Value of the loss vehicle, to provide "itemized valuations showing all options and deductions," and to "clearly indicate" and "define in detail" the difference between condition categories.

73.     Plaintiff has been damaged by Defendant's policy of applying arbitrary and unjustified adjustments to comparable vehicle values in calculating ACV as required under the Policy and state law.

74.     Upon information and belief, Defendant has applied improper condition adjustments to comparable vehicles for potentially tens of thousands of first-party total loss claimants in New Jersey, even though these adjustments violate their contracts and applicable state law.

## VI.     CLASS ACTION ALLEGATIONS

74.     This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23. Plaintiffs bring all claims herein individually and as a class action (for the classes defined below), pursuant to Federal Rule of Civil Procedure 23.

75.     Plaintiffs bring this action on behalf of the following classes:

> All individuals insured in New Jersey by GEICO under a GEICO private passenger vehicle policy who, from the earliest allowable time to the present,

     (1)    Received a first party total loss settlement or settlement offer that did not include applicable sales tax, title fees, or license plate fees; or

     (2)    Received a first party total loss settlement or settlement offer based in whole or in part on the price of comparable vehicles reduced by a "condition adjustment."

76.    While the exact number of members cannot be determined, the class consists at a minimum of thousands of persons located throughout the State of New Jersey. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by GEICO.

77.    There are questions of fact and law common to the class, including the following:

    i.    Whether GEICO applied arbitrary and unexplained condition adjustments to comparable vehicles to calculate the value of loss vehicles;

    ii.    Whether GEICO failed to include applicable taxes and fees to calculate the value of total loss settlements;

    iii.    Whether, through each of the foregoing practices, GEICO breached its contracts with its insureds;

    iv.    Whether, through each of the foregoing practices, GEICO violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 et seq.;

    v.    Whether GEICO's use of improper condition adjustments to value loss vehicles caused injury to Plaintiffs and the class;

    vi.    Whether GEICO's failure to include and pay applicable taxes and fees in the settlement of total loss claims caused injury to Plaintiffs and the class;

    vii.    Whether GEICO's actions were unreasonable, frivolous, or unfounded;

    viii.    Whether GEICO's actions were reckless, malicious, or willful;

    ix.    Whether plaintiffs and the class are entitled to an award of compensatory damages;

    x.    Whether plaintiffs and the class are entitled to an award of statutory damages;

    xi.    Whether plaintiffs and the class are entitled to an award of punitive damages;

      xii.    Whether plaintiffs and the class are entitled to a refund of premiums paid;

      xiii.   Whether plaintiffs and the class are entitled to an award of attorney's fees;

      xiv.   Whether plaintiffs and the class are entitled to declaratory and injunctive relief.

78.     Plaintiffs have the same interests in this matter as all other members of the class, and their claims are typical of those of all members of the class. Plaintiff's claims are coincident with and not antagonistic to those of other class members they seek to represent. Plaintiffs and all class members have sustained damages arising out of GEICO's common course of conduct as outlined herein. The damages of each class member were caused by GEICO's wrongful conduct.

79.     Plaintiffs are committed to pursuing this action and have retained competent class counsel experienced in insurance litigation and class action litigation. The Plaintiffs will fairly and adequately represent the interests of the class members.

80.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because GEICO's actions are generally applicable to the class as a whole, and the Plaintiffs seek, *inter alia*, equitable remedies with respect to the class as a whole.

81.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiffs' counsel, highly experienced in insurance litigation and class action litigation, foresees little difficulty in the management of this case as a class action.

82.     In the alternative, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' therein.

## VII.    COUNTS ALLEGED

## COUNT ONE

## BREACH OF CONTRACT

83.     Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

84.     Each Plaintiff and Each Class Member was a party to an insurance contract with Defendant under Policy Form A-30NJ, or a policy form with material terms identical to Policy Form A-30NJ or A-30.

85.     The material provisions of Policy Form A-30NJ, as outlined above, are identical for Plaintiffs and all Class Members.

86.     The interpretation of all such insurance contracts is governed by common law, and the law of all of the states is the same with regard to the interpretation of the contractual provisions at issue in this lawsuit.

87.     Plaintiffs and each Class Member made a claim determined by Defendant to be a covered claim and a first-party total loss under their insurance contract.

88.     Defendant, by paying on the total loss claim, determined that each Plaintiff and each Class Member complied with the terms of their insurance contracts and fulfilled all of their duties that the insurance contracts imposed for them to be paid on their total loss.

89.     Plaintiffs' and each Class Member's insurance contract required Defendant to pay full ACV, including sales tax, title fees, and license plate transfer fees.

90.     Defendant failed to offer and pay Plaintiffs, and upon information and belief, each Class Member's full ACV, including sales tax, title fees, and license plate transfer fees, at the

time of settlement and in so doing Defendant breached its insurance contracts with Plaintiffs and each Class Member.

91.     Defendant further breached the contract by basing its valuation and payment of Plaintiffs' and each Class Member's claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained.

92.     Plaintiffs and the Class Members have suffered monetary damages caused by Defendant's insurance contract breaches.

## COUNT TWO

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

93.     Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

94.     Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing.

95.     A party to a contract breaches the implied covenant of good faith and fair dealing when it acts in bad faith or engages in some other form of inequitable conduct that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

96.     GEICO owed Plaintiffs and class members, as its insureds, a duty of good faith and fair dealing at all times during the existence of the insurance contract and while providing automobile insurance coverage, including when handling total loss claims for its insureds.

97.     GEICO purposefully, in bad faith, and without regard to the rights of Plaintiffs and the Class, failed to pay the actual cash value of total loss vehicles.  GEICO's actions breached the insurance contract and were unreasonable, frivolous, and unfounded.

98.     GEICO's unfair acts and/or acts of bad faith include (1) basing its valuation and payment of the claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained; and (2) failing to include sales tax, title fees, and license plate transfer fees in its valuation and payment of total loss claims.

99.     GEICO breached the covenant of good faith and fair dealing with the aforementioned conduct.

100.    GEICO's breach of the obligation of good faith and fair dealing caused Plaintiffs and class members to incur damages as set forth more fully below.

## COUNT THREE

## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

101.    Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

102.    Defendant has a practice and policy of breaching its insurance contracts with Plaintiffs and Class Members relating to the calculation and payment of full ACV, including sales tax, title fees, and license plate transfer fees, on private passenger auto physical damage insurance policies issued under New Jersey form policy A-30NJ for first-party total loss claims.

103.    Defendant continues to breach its insurance policies with regard to the payment of sales tax, title fees, and license plate transfer fees on first-party physical damage total loss claims and the application of improper condition adjustments to the values of comparable vehicles.

104.    There is a serious and imminent risk and substantial likelihood of irreparable injury in the future to Plaintiffs and Class Members if declaratory and injunctive relief is not granted.

105.    There is an inadequate remedy at law because it is impracticable for Plaintiffs and individual Class Members to sue Defendant every time it breaches its policy provisions relating to this issue.

106.    Irreparable injury will occur if declaratory and injunctive relief is not granted because Plaintiffs and individual Class Members will not have the resources to litigate this issue on an individual basis every time there is a total loss claim; and Plaintiffs and individual Class Members will be denied of needed funds to replace their total loss vehicles.

107.    Defendant has acted and refused to act on grounds that apply generally to Plaintiffs and the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

108.    Plaintiffs and the Class Members are entitled to a declaratory judgment that policy terms in Form A-30 require Defendant to pay the full ACV, including sales tax, title fees, and license plate transfer fees, and that the policy prohibits Defendant from basing its valuation and payment of Plaintiffs' and each Class Member's claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained.

109.    There is a bona fide, actual, present, and practical need for the declaration sought because Defendant's illegal conduct has harmed Plaintiffs and Class Members, and will continue to harm other insureds who in the future will not receive full ACV, including sales tax, title fees, and license plate transfer fees, as required by their insurance contracts.

110.    The requested declaration deals with a present, ascertained, and ascertainable state of facts and a present controversy relating to Defendant's practices of refusing to pay ACV,

including sales tax, title fees, and license plate transfer fees, on private passenger auto physical damage policies for total loss vehicles.

111.   Plaintiffs and Class Members are subject to a substantial and immediate threat of injury because Defendant continues to breach its insurance policies relating to the payment of ACV and replacement costs on first-party physical damage total loss claims.

## COUNT FOUR

## NEW JERSEY CONSUMER FRAUD ACT

112.   Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

113.   Defendant is a person within the meaning of the New Jersey Consumer Fraud Act.

114.   The New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2 prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid.

115.   The definition of "merchandise" under the CFA includes, *inter alia*, goods, services, or anything offered, directly or indirectly, to the public for sale. Accordingly, the Defendant's insurance policies are "merchandise" under the CFA.

116.   Defendant sold the aforesaid insurance policy to the Plaintiffs and said action falls under the scope of the CFA.

117.   Defendant acted deceptively and with reckless disregard for its obligations under the policy the adjustment and payment of the total loss claims of Plaintiffs and the class. Defendants' unlawful actions include failing to pay the full ACV, including sales tax, title fees, and license plate transfer fees, and basing its valuation and payment of Plaintiffs' and each Class Member's claim on values of comparable vehicles that have been artificially reduced by an

arbitrary and unjustified "condition adjustment" that is not itemized or explained. Further, Defendant accepted premiums without the intention to pay full ACV, including sales tax, title fees, and license plate transfer fees, and Defendant fraudulently told its insureds that sales tax, title fees, and license plate transfer fees were not owed when, as Defendant knew, the law required them to be paid. Defendant further misrepresented that its "condition adjustments" to the value of comparable vehicles as justified when they were not, and Defendant failed to conduct a reasonable investigation in determining the Actual Cash Value of loss vehicles by applying a blanket condition adjustment without any justification, itemization, or proper explanation.

118. The above actions on the part of Defendant were part of an ongoing, widespread, and continuous scheme to defraud its insureds in the payment of benefits under their policies of insurance. Plaintiffs' experience is not an isolated case. The acts and omissions of Defendant or similar acts and omissions occur with such frequency that they constitute a general business practice of Defendant with regard to handling these types of claims. Defendant's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the insured. Specifically, Defendant received a benefit when it refused to pay Plaintiffs' entire claim because it retained hundreds of dollars that should have rightfully been paid to Plaintiffs under the policy.

119. As a result of all of the above Defendant is in violation of the New Jersey Consumer Fraud Act, N.J. 56:8-2 *et seq.*, and Plaintiffs seek damages under said Act for themselves and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class request a jury trial and pray for relief and judgment as follows:

A.  For an order certifying this action as a class action on behalf of the Class described above;

B.  For restitution of all amounts wrongfully taken and/or withheld from Plaintiffs and Class Members;

C.  For injunctive relief to prevent continuation of these illegal practices by Defendant, and for other injunctive relief as is proven appropriate in this matter;

D.  For actual, statutory, and punitive damages according to proof;

E.  For a declaration that Defendant is required under policies issued pursuant to Policy Form A-30NJ to pay ACV, including sales tax, title fees, and license plate transfer fees, that Defendant may not base its valuation and payment of Plaintiffs' and each Class Member's claim on values of comparable vehicles that have been artificially reduced by an arbitrary and unjustified "condition adjustment," and that Defendant must itemize and explain "condition adjustments" applied to comparable vehicles;

F.  For an award of attorneys' fees as appropriate pursuant to applicable law;

G.  For costs of suit herein incurred;

H.  For both pre- and post-judgment interest on any amounts awarded; and

I.  For such other and further relief as the Court may deem proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury for all issues so triable.

Dated: April 2, 2018

Respectfully submitted,

CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.

By ____*/s/ James E. Cecchi*_____
    James E. Cecchi
    Caroline F. Bartlett
    Michael A. Innes
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Robert B. Carey #011186
John M. DeStefano #025440
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob@hbsslaw.com
johnd@hbsslaw.com

Marc A. Goldich
AXLER GOLDICH LLC
1520 Locust Street, Suite 301
Philadelphia, Pennsylvania 19102
Telephone: (267) 534-7400
mgoldich@axgolaw.com

David Woloshin
ASTOR WEISS KAPLAN & MANDEL LLP
200 South Broad Street, Suite 600
Philadelphia, PA 19102
Telephone: (215) 790-0100
dwoloshin@astorweiss.com

# EXHIBIT A

# GEICO

**ONE GEICO PLAZA**
**Washington, D. C. 20076-0001**
**Telephone: 1-800-841-3000**

# New Jersey Family Automobile Insurance Policy

**GOVERNMENT EMPLOYEES INSURANCE COMPANY**

*200001442231307429012000242*

A-30-NJ (02-08)

# POLICY INDEX

Page

### SECTION I
### LIABILITY COVERAGES
### Your Protection Against Claims From Others

Definitions.......................................................... 3
Losses We Will Pay............................................... 3
Additional Payments We Will Make Under
    The Liability Coverages ............................... 3
Exclusions........................................................... 4
Persons Insured................................................... 5
Financial Responsibility Laws ............................. 5
Out Of State Insurance........................................ 5
Coverage Limits ................................................. 5
Other Insurance.................................................. 5
Conditions.......................................................... 5

### SECTION II
### PERSONAL INJURY PROTECTION
### Protection For Injured Persons For Medical
### Expenses, Income Continuation, Funeral Expenses
### And Essential Services.

Personal Injury Protection Options ...................... 6
Residual  Medical  Payments  –  Medical  Payments
Coverage............................................................ 7
Medical Expense Benefits Deductible .............................. 7
Medical Expense Benefits Co-Payment........................... 7
Deletion Of Benefits Other Than
    Medical Expense Benefits........................................ 7
Medical Expense Benefits As Secondary Coverage......... 7
Pedestrian Personal Injury Protection Coverage............. 8
Definitions........................................................... 8
Personal Injury Protection Coverage
    Losses We Will Pay..................................................11
Pedestrian Personal Injury Protection Coverage
    Losses We Will Pay..................................................12
Residual Medical Payment - Medical Payments Coverage
    Losses We Will Pay..................................................12
Exclusions............................................................13
Limit Of Liability .................................................14
Other Insurance....................................................15
Duties After An Accident Or Loss .....................16
General Conditions...............................................17
Our Right To Recover Payment...........................17
Territory ..............................................................17
Two Or More Auto Policies...................................17
Payments Of Benefits...........................................17
Proof Of Health Benefits Plan Coverage.........................17
Deletion Of Benefits Other Than Medical
    Expense Benefits....................................................17
Employee Benefits Reimbursements...............................17

### SECTION III
### PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Auto

Definitions ........................................................18
Losses We Will Pay..............................................19
Additional Payments We Will Make
    Under The Physical Damage Coverages..................19
Exclusions...........................................................19
Limits Of Liability ..............................................20
Other Insurance...................................................20
Conditions...........................................................20

### SECTION IV
### UNINSURED MOTORISTS COVERAGE
### Protection For You And Your Passengers For Injuries
### Caused By Uninsured and Hit And Run Motorists

Definitions .........................................................22
Losses We Pay......................................................23
Exclusions...........................................................24
Persons Insured....................................................24
Coverage Limits ..................................................24
Conditions...........................................................25

### SECTION V
### GENERAL CONDITIONS
### These Conditions Apply To All Coverages In This Policy

Territory ............................................................26
Policy Period.......................................................26
Premium..............................................................26
Changes...............................................................26
Disposal of Vehicle..............................................27
Assignment..........................................................27
Cancellation By The Insured................................27
Cancellation By Us...............................................27
Renewal...............................................................27
Other Insurance...................................................28
Dividend Provision...............................................28
Declarations.........................................................28
Fraud and Misrepresentation...............................28
Authorization  ..................................................... 27
Examination Under Oath......................................28
Terms Of Policy Conformed To Statutes.........................28
Choice Of Law.....................................................28
Limitation on Lawsuit Option .............................28

### SECTION VI - AMENDMENTS AND ENDORSEMENTS

#### Special Endorsement
United States Government Employees ................29

Whenever, **"he"**, **"his"**, **"him"**, or **"himself"** appears in this policy, *you* may read **"she"**, **"her"**, **"hers"**, or **"herself"**.

## AGREEMENT

**We**, the Company named in the Declarations attached to this policy, agree with *you*, in return for *your* payment of the premium when due, to insure *you*, subject to all the terms of this policy.

Acting in reliance on the information *you* have furnished us, we will insure *you* for the Coverages and the Coverage Limits for which a premium is shown in the Declarations.

---

### SECTION I - LIABILITY COVERAGES
### Bodily Injury Liability and Property Damage Liability
### Your Protection Against Claims From Others

---

## DEFINITIONS

The words bolded and italicized in **Section I** of this policy are defined below.

1. *Auto business* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2. *Bodily injury* means bodily injury to a person, caused by accident, including resulting sickness, disease or death. All claims for damages arising from *bodily injury* to a person from a single loss shall be considered one *bodily injury*.

3. *Civil union* means a legally recognized union of two eligible individuals of the same sex.

4. *Farm auto* means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

5. *Insured* means a person or organization described under " **PERSONS INSURED**".

6. *Non-owned auto* means an auto or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

7. *Owned auto* means:
   (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
   (b) A *trailer* owned by *you*;
   (c) A *private passenger*, *farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if
      (i) It replaces an *owned auto* as defined in (a) above, or
      (ii) We insure all *private passenger*, *farm* and *utility autos* owned or leased by *you* on the date of acquisition, and *you* ask us to add it to the policy no more than 30 days later;
   (d) A *temporary substitute* auto.

8. *Private passenger auto* means a four-wheel private passenger, station wagon or jeep-type auto.

9. *Property damage* means injury to or destruction of property. This includes loss of use of the property.

10. *Relative* means a person related to *you* by blood, marriage or adoption who is a resident of *your* household. This includes a ward or foster child.

11. *Temporary substitute auto* means an auto or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

12. *Trailer* means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger*, *farm* or *utility auto*.

13. *Utility auto* means a vehicle, other than a *farm auto*, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

14. *War* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

15. *You* (*Your*) means the policyholder named in the Declarations or his or her spouse or *civil union* partner if a resident of the same household.

## LOSSES WE WILL PAY

Under **Section I**, we will pay damages which an *insured* becomes legally obligated to pay because of:
1. *Bodily injury*, sustained by a person, and
2. *Property damage*,

arising out of the ownership, maintenance or use of the *owned* or *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit. We have no duty to investigate or defend any claims not covered under the terms of this policy.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

**1.** All investigative and legal costs incurred by us.

2. All court costs charged to an *insured* in a covered lawsuit.
3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:
   (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;
   (b) After the judgment, and until we pay, offer to pay, or deposit in court the amount due under this coverage.
4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of liability.
5. We will upon request by an *insured*, provide reimbursement for the following items:
   (a) Costs incurred by any *insured* for first aid to others at the time of an accident involving an *owned auto* or *non-owned auto*.
   (b) Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.
   (c) All reasonable costs incurred by an *insured* at our request
   (d) Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an *owned auto* or *non-owned auto*, not to exceed $250 per bail bond.

## EXCLUSIONS

We will not defend any suit for damages or indemnify an *insured* if one or more of the exclusions listed below applies.

**Section I does not apply:**

1. To any vehicle used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products, in excess of the minimum financial responsibility limits required by New Jersey law. However, a vehicle used in an ordinary carpool on a ride sharing or cost sharing basis is covered.
2. To *bodily injury* or *property damage* caused intentionally by or at the direction of an *insured*.
3. To *bodily injury* or *property damage* that is insured under a nuclear liability policy.
4. To *bodily injury* or *property damage* arising from the operation of farm machinery.
5. To *bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured*. However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.
6. To *bodily injury* to a fellow employee of an *insured* if the fellow employee's *bodily injury* arises from the use of an auto while in the course of employment and if worker's compensation or other similar coverage is available. We will defend *you* if a suit is brought by a fellow employee against *you* alleging use, ownership or maintenance of an auto by *you*.
7. To an *owned auto* while used by a person (other than *you* or a *relative*) when he is employed or otherwise engaged in the *auto business* in excess of the minimum financial responsibility limits required by New Jersey law.
8. To a *non-owned auto* while maintained or used by any person while such person is employed or otherwise engaged in (1) any *auto business* if the accident arises out of that business; (2) any other business or occupation of any *insured* if the accident arises out of that business or occupation, except a *private passenger auto* used by *you* or *your* chauffeur or domestic servant while engaged in such other business.
9. To damage to:
   (a) Property, including motor vehicles of any type, owned or transported by an *insured*; or
   (b) Property rented to or in charge of an *insured* other than a residence or private garage.
10. To an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.
11. To:
    (a) The United States of America or any of its Agencies;
    (b) Any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.
12. To any liability assumed under any contract or agreement.
13. To *bodily injury* or *property damage* caused by an auto driven in or preparing for any:
    (a) Race;
    (b) Speed event;
    (c) Demolition contest; or
    (d) Stunting activity of any nature.
14. To *bodily injury* or *property damage* losses resulting from participation in an organized automobile track event.
15. To punitive or exemplary damages recovered or potentially recoverable from any *insured* arising from the use or abuse of alcohol, medication or drugs.
16. To *bodily injury* or *property damage* caused by *war*, whether or not declared, civil *war*, insurrection, rebellion or revolution.

## PERSONS INSURED

**Section I** applies to the following as *insureds* with regard to an *owned auto*:

1. **You** and *your relatives*;

2. Any other person using the auto with *your* permission. The actual use must be within the scope of that permission;

3. Any other person or organization for his or its liability because of acts or omissions of an *insured* under **1.** or **2.** above.

**Section I** applies to the following with regard to a *non-owned auto*:

1. (a) **You**;
   (b) *Your relatives* when using a *private passenger auto*, *utility auto*, *farm auto*, or *trailer*.

   Such use by *you* or *your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission.

2. A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under **1.** above.

   The coverage limits stated in the Declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another automobile insurance policy. No person can be paid more than once for any item of loss.

## COVERAGE LIMITS

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of Bodily Injury Liability stated in the Declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

2. The limit of Bodily Injury Liability stated in the Declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

3. The limit of Property Damage Liability stated in the Declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the *insured* has other insurance against a loss covered by **Section I** of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply to **Section I**:

1. NOTICE

   As soon as possible after an occurrence, written notice must be given to us or our authorized agent stating:

   (a) The identity of the *insured*;
   (b) The time, place and details of the occurrence;
   (c) The names and addresses of the injured, and of any witnesses; and
   (d) The names of the owners and the description and location of any damaged property.

   If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2. TWO OR MORE AUTOS

   If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. ASSISTANCE AND COOPERATION OF THE *INSURED*

   The *insured* will cooperate and assist us, if requested:

   (a) In the investigation of the occurrence;

(b) In making settlements;
(c) In the conduct of suits;
(d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or *property damage*;
(e) At trials and hearings;
(f) In securing and giving evidence; and
(g) By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

**4.** ACTION AGAINST US

No suit will lie against us:

(a) Unless the *insured* has fully complied with all the policy's terms and conditions; and
(b) Until the amount of the *insured's* obligation to pay has been finally determined; either

(i) By a final judgment against the *insured* after actual trial; or
(ii) By written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or of his estate will not relieve us of our obligations.

**5.** SUBROGATION

When payment is made under this coverage, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

---

## SECTION II - PERSONAL INJURY PROTECTION COVERAGE
**Protection For *Injured Persons* For *Medical Expenses, Income Continuation, Funeral Expenses & Essential Services***

---

With respect to coverage provided by **Section II**, the provisions of the policy apply unless modified by this part or the Declarations and Schedule A.

**PERSONAL INJURY PROTECTION COVERAGE**

| Benefits | Limit of Liability |
|---|---|
| **Medical Expenses**<br>***Named Insured*** and ***Relative*** | PER PERSON/PER ACCIDENT LIMIT AS STATED ON THE DECLARATIONS FOR PERSONAL INJURY PROTECTION. However, if a limit lower than $250,000 is shown, a limit of $250,000 per person/per accident is available for a ***named insured*** or ***relative*** for ***catastrophic injury treatment.*** |
| ***Insureds*** Other Than ***Named Insured*** and ***Relatives*** | $250,000 PER PERSON/PER ACCIDENT LIMIT |
| **Non-Medical Benefits (Extra PIP Package)** | |
| Income Continuation | $100 per week to a maximum of $5,200 |
| Essential Services | $12 per day to a maximum of $4,380 |
| Death Benefits | |
|   Income Producer | $5,200 less any Income Continuation Benefits paid |
|   Essential Services | $4,380 less any Essential Services Provider Benefits paid |
| Funeral Expenses | $1,000 |
| **Out of State Losses-PIP Coverage for those not insured through a household policy**<br>Insureds other than Named Insured, Relatives & NJ Residents | A non-New Jersey insured is eligible for the state minimums for Personal Injury, required by law of the state in which the accident occurs, or $250,000 per person/per accident, whichever is less. |

## PERSONAL INJURY PROTECTION OPTIONS – SCHEDULE A

**PIP FULL PIP PRIMARY**
**PIP FULL HEALTH PRIMARY**
**PIP MED ONLY PIP PRIMARY**
**PIP MED ONLY HEALTH PRIMARY**

|  | Medical Expense Deductible | Medical Expense |
|---|---|---|
| OPTION A | $250 | $15,000 |
| OPTION B | $250 | $50,000 |
| OPTION C | $250 | $75,000 |
| OPTION D | $250 | $150,000 |
| OPTION E | $250 | $250,000 |
| OPTION F | $500 | $15,000 |
| OPTION G | $500 | $50,000 |
| OPTION H | $500 | $75,000 |
| OPTION I | $500 | $150,000 |
| OPTION J | $500 | $250,000 |
| OPTION K | $1,000 | $15,000 |
| OPTION L | $1,000 | $50,000 |
| OPTION M | $1,000 | $75,000 |
| OPTION N | $1,000 | $150,000 |
| OPTION O | $1,000 | $250,000 |
| OPTION P | $2,000 | $15,000 |
| OPTION Q | $2,000 | $50,000 |
| OPTION R | $2,000 | $75,000 |
| OPTION S | $2,000 | $150,000 |
| OPTION T | $2,000 | $250,000 |
| OPTION U | $2,500 | $15,000 |
| OPTION V | $2,500 | $50,000 |
| OPTION W | $2,500 | $75,000 |
| OPTION X | $2,500 | $150,000 |
| OPTION Y | $2,500 | $250,000 |

**RESIDUAL MEDICAL PAYMENTS – MEDICAL PAYMENTS COVERAGE**

The total limit of Extended Medical Expense Benefits payable is $1,000 per person/per accident, unless another limit is shown on the Declarations under RESIDUAL MEDICAL PAYMENTS.

**MEDICAL EXPENSE BENEFITS DEDUCTIBLE**

Unless otherwise indicated by the option selection shown on the Declarations, medical expense benefits are subject to a deductible of $250 per person/per accident.

If a higher PIP deductible is selected, the medical expense benefits applicable to the **named insured** and **relatives** shall be subject to the higher deductible instead of the $250 deductible per person/per accident.

**Insureds** other than the **named insured** and **relatives** shall be subject to a separate deductible of $250 per person/per accident.

**MEDICAL EXPENSE BENEFITS CO-PAYMENT**

Medical expense benefits are subject to a co-payment of 20% per person/per accident for amounts payable between the applicable deductible and $5,000, except as otherwise provided under the Penalty section of the Precertification Plan.

**DELETION OF BENEFITS OTHER THAN MEDICAL EXPENSE BENEFITS**

If **PIP MED ONLY PIP PRIMARY** OPTION is shown on the Declarations under Personal Injury Protection, no personal injury protection benefits, other than medical expense benefits, apply to the **named insured** or **relatives**.

**MEDICAL EXPENSE BENEFITS AS SECONDARY COVERAGE**

If **PIP FULL HEALTH PRIMARY** OPTION is shown on the Declarations, medical expense benefits applicable to the named insured and **relatives** shall be secondary to health benefits plans under which the named insured and **relatives** are insured.  Coverage also includes Non-Medical Benefits.

If **PIP MED ONLY HEALTH PRIMARY** OPTION is shown on the Declarations, medical expense benefits applicable to the **named insured** and **relatives** shall be secondary coverage to health benefits plans under which the **named insured** and **relatives** are insured.  Coverage excludes Non-Medical Benefits (Extra PIP Package).

**PEDESTRIAN PERSONAL INJURY PROTECTION COVERAGE**
Our Limit for Pedestrian Personal Injury Protection benefits payable under this Part is subject to the following limits:

**Medical Expenses**
$250,000 per person/per accident

**Income Continuation**
$100 per week to a maximum of $5,200

**Essential Services**
$12 per day to a maximum of $4,380

**Death Benefits**
Income Producer
$5,200 less any Income Continuation Benefits paid
Essential Services Provider
$4,380 less any Essential Services Benefits paid
Funeral Expenses
$1,000

**DEFINITIONS**
The definition of terms for Section I apply to Section II except for the following special definitions:

1. ***Actual benefits*** means those benefits determined to be payable for ***allowable expenses***.

2. ***Allowable expense*** means a ***medically necessary***, reasonable and customary item of expense covered as benefits by the ***named insured's*** or a ***relative's*** health benefits plan or personal injury protection benefits as an ***eligible expense***, at least in part.  When benefits provided are in the form of services, the reasonable monetary value of each such service shall be considered as both an ***allowable expense*** and a paid benefit.

3. ***Auto*** means a self-propelled vehicle of one of the following types, which is designed for use principally on public roads:
   (a) A private passenger or station wagon type automobile;
   (b) A pickup, delivery sedan or van; or
   (c) A utility automobile designed for personal use as a camper, motor home, or for family recreational purposes.
   However, ***auto*** does not include:
   (a) A motorcycle;
   (b) Any motorized vehicle that is designed for use principally off public roads;
   (c) An automobile used as a public or livery conveyance;
   (d) A pickup, delivery sedan, van, or utility automobile customarily used in the occupation, profession or business of an ***insured*** other than farming or ranching; or
   (e) A utility automobile customarily used for the transportation of passengers other than members of the user's family or their guests.

4. ***Bodily injury*** means bodily harm, sickness or disease, including an ***identified injury*** or death that results.

5. ***Catastrophic injury treatment*** means medical expenses incurred for treatment of:
   (a) Permanent or significant brain injury or spinal cord injury; or
   (b) Permanent or ***significant disfigurement***; or
   (c) Other permanent or significant injuries rendered at a trauma center or acute care hospital immediately following the accident and until the ***insured***:
      1. Is stable;
      2. No longer requires critical care; and
      3. Can be safely discharged or transferred to another facility in the judgment of the attending ***health care provider***.

6. ***Clinically supported*** means that a ***health care provider***, prior to selecting, performing or ordering the administration of a treatment or diagnostic test, has:
   (a) Personally examined the patient to ensure that the proper medical indications exist to justify ordering the treatment or test;
   (b) Physically examined the patient including making an assessment of any current and/or historical subjective complaints, observations, objective findings, neurologic indications, and physical tests;
   (c) Considered any and all previously performed tests that:
      1. Relate to the injury and the results; and
      2. Are relevant to the proposed treatment or test; and
   (d) Recorded and documented these observations, positive and negative findings and conclusions on the patient's medical records.

7. **Decision point** means those junctures in the treatment of identified injuries where a decision must be made about the continuation or choice of further treatment. **Decision point** also refers to a determination to administer one of the tests listed in N.J.A.C. 11:3-4.5(b) for identified and all other injuries.

8. **Eligible expense** means:
   (a) With respect to health benefits plans, that portion of the medical expenses incurred for the treatment of **bodily injury** which is covered under the terms and conditions of the plan, without application of the deductible(s) and co-payment(s), if any.
   (b) With respect to personal injury protection benefits, that portion of the medical expenses incurred for the treatment of **bodily injury** which, without considering any deductible and co-payment, shall not exceed:
      1. The percent or dollar amounts specified on the medical fee schedules, or the actual billed expense, whichever is less; or
      2. The reasonable amount, as determined by **us**, considering the medical fee schedules for similar services or equipment in the region where the service or equipment was provided, when an incurred medical expense is not included on the medical fee schedules.

9. **Emergency care** means all **medically necessary** treatment of a traumatic injury or a medical condition manifesting itself by acute symptoms of sufficient severity such that absence of immediate attention could reasonably be expected to result in:
   (a) Death;
   (b) Serious impairment to bodily functions; or
   (c) Serious dysfunction of a bodily organ or part.
   Such **emergency care** shall include all **medically necessary** care immediately following an automobile accident, including, but not limited to, immediate pre-hospitalization care, transportation to a hospital or trauma center, emergency room care, surgery, critical and acute care. **Emergency care** extends during the period of initial hospitalization until the patient is discharged from acute care by the attending physician.
   **Emergency care** shall be presumed when medical care is initiated at a hospital within 120 hours of the accident.

10. **Health care provider** means those persons licensed or certified to perform health care treatment or services compensable as medical expenses and shall include, but not be limited to:
    1. A hospital or health care facility that is maintained by State or any political subdivision;
    2. A hospital or health care facility licensed by the Department of Health and Senior Services;
    3. Other hospitals or health care facilities designated by the Department of Health and Senior Services to provide health care services, or other facilities, including facilities for radiology and diagnostic testing, freestanding emergency clinics or offices, and private treatment centers;
    4. A non-profit voluntary visiting nurse organization providing health care services other than a hospital;
    5. Hospitals or other health care facilities or treatment centers located in other States or nations;
    6. Physicians licensed to practice medicine and surgery;
    7. Licensed chiropractors;
    8. Licensed dentists;
    9. Licensed optometrists;
    10. Licensed pharmacists;
    11. Licensed chiropodists (podiatrists);
    12. Registered bioanalytical laboratories;
    13. Licensed psychologists;
    14. Licensed physical therapists;
    15. Certified nurse mid-wives;
    16. Certified nurse practitioners/clinical nurse- specialist;
    17. Licensed health maintenance organizations;
    18. Licensed orthotists and prosthetists;
    19. Licensed professional nurses;
    20. Licensed occupational therapists;
    21. Licensed speech-language pathologists;
    22. Licensed audiologists;
    23. Licensed physician's assistants;
    24. Licensed physical therapy assistants;
    25. Licensed occupational therapy assistants;
    26. Providers of other health care services or supplies, including durable medical goods; and
    27. Licensed Acupuncturists.

11. *Highway vehicle* means a land motor vehicle or *trailer* other than:
    (a) An *auto*;
    (b) A farm type tractor or other equipment designed for use principally off public roads, while not on public roads;
    (c) A vehicle operated on rails or crawler treads; or
    (d) A vehicle while located for use as a residence or premises.

12. *Hospital expenses* means the cost of treatment and services, as provided in the policy approved by the commissioner, by a licensed and accredited acute care facility which engages primarily in providing diagnosis, treatment and care of sick and injured persons on an inpatient or outpatient basis; the cost of covered treatment and services provided by an extended care facility which provides room and board and skilled nursing care 24 hours a day and which is recognized by the administrators of the federal Medicare program as an extended care facility; and the cost of covered services at an ambulatory surgical facility supervised by a physician licensed in New Jersey or in another jurisdiction and recognized by the Commissioner of Health and Senior Services, or any other facility licensed, certified or recognized by the Commissioner of Health and Senior Services or the Commissioner of Human Services or a nationally recognized system such as the Commission on Accreditation of Rehabilitation Facilities, or by another jurisdiction in which it is located.

13. *Identified injury* means the following *bodily injuries* for which the New Jersey Department of Banking and Insurance has established standard courses of diagnosis and treatment for medical expenses resulting from such injuries:
    (a) Cervical Spine: Soft Tissue Injury;
    (b) Cervical Spine: Herniated Disc/Radiculopathy;
    (c) Thoracic Spine: Soft Tissue Injury;
    (d) Thoracic Spine: Herniated Disc/Radiculopathy;
    (e) Lumbar-Sacral Spine: Soft Tissue Injury;
    (f) Lumbar-Sacral Spine: Herniated Disc/Radiculopathy; and
    (g) Any other *bodily injury* for which the New Jersey Department of Banking and Insurance has established standard courses of diagnosis and treatment for medical expenses resulting from such injuries.

14. *Income* means salary, wages, tips, commissions, fees and other earnings derived from work or employment. It does not include unearned income such as pensions, interest, dividends or social security.

15. *Income producer* means a person who, at the time of the accident, was in an occupational status earning or producing *income*. The status of an income producer will cease when the recipient is no longer an income producer for reasons other than disability.

16. *Essential services* means those services performed not for *income* which are ordinarily performed by an individual for the care and maintenance of such individual's family or family household.

17. *Insured motor vehicle* means a motor vehicle:
    (a) That is *insured* for both bodily injury liability coverage and Pedestrian Personal Injury Protection Coverage under this policy; and
    (b) For which specific premiums have been charged.

18. *Medically necessary* or *medical necessity* means that the medical treatment or diagnostic test is consistent with the *clinically supported* symptoms, diagnosis or indications of the injured person, and
    (a) The treatment is the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including the Care Paths in the Appendix of the regulations promulgated by the New Jersey Department of Banking and Insurance set forth at N.J.A.C. 11:3-4;
    (b) The treatment of the injury is not primarily for the convenience of the injured person or provider; and
    (c) Does not include unnecessary testing or treatment.

19. *Named insured* means:
    (a) The person named in the Declarations; and
    (b) That person's spouse or *civil union* partner if a resident of the same household.
    However, if:
    (a) The spouse ceases to be a resident of the same household during the policy period, the spouse shall be a *named insured* for the full term of that policy period.
    (b) *Your covered auto* is owned by a farm family co-partnership or corporation, *named insured* includes the head of the household of each family designated in the policy as having a working interest in the farm.

20. *Occupying* means in, upon, entering into, on, out, off or alighting from an *auto*.

21. *Pedestrian* means any person who is not *occupying* a vehicle:
    (a) Propelled by other than muscular power; and
    (b) Designed primarily for use on highways, rails and tracks.

22. *Precertification* means the pre-approval by us of potentially covered expenses including but not limited to certain services, diagnostic tests, medical treatment and procedures, prescription supplies, and durable medical equipment.

23. *Significant disfigurement* means the result and/or manifestation of a serious traumatic injury that is observable as a permanent and substantial defect in the appearance and functional ability of the person injured. Significant disfigurement is a serious outward change that substantially detracts from the appearance and functional ability of the person injured.

24. *Your covered auto* means an *auto*:

    (a) For which the *named insured* is required to maintain automobile liability insurance coverage under the New Jersey Automobile Reparation Reform Act;

    (b) To which the bodily injury liability coverage under this policy applies; and

    (c) For which a specific premium is charged.

**PERSONAL INJURY PROTECTION COVERAGE**
**LOSSES WE PAY**

1. We will pay personal injury protection benefits to or for an *insured* who sustains *bodily injury*. The *bodily injury* must be caused by an accident arising out of the ownership, maintenance or use, including loading or unloading, of an *auto* as an automobile.

2. With respect to Personal Injury Protection Coverage, *insured* means:

    (a) The *named insured* or any *relative* who sustains *bodily injury* while:

       1. *Occupying* or using an *auto*; or

       2. A *pedestrian*, when caused by:

          (i) An *auto*; or

          (ii) An object propelled by or from an *auto*.

    (b) Any other person who sustains *bodily injury* while *occupying* or using *your covered auto* with the permission of the *named insured*.

3. Subject to the limits shown in Schedule A or in the Declarations, personal injury protection benefits consist of the following:

    (a) Medical expenses.

    Reasonable and necessary expenses incurred for:

       1. Medical, surgical, rehabilitative and diagnostic treatments and services;

       2. *Hospital expenses*;

       3. Ambulance or transportation services;

       4. Medication; and

       5. Non-medical expenses that are prescribed by a treating *health care provider* for a permanent or significant brain, spinal cord or disfiguring injury.

       Non-medical expense means charges for:

          (a) Products and devices, not exclusively used for medical purposes or as durable medical equipment, such as vehicles, durable goods, equipment, appurtenances, improvements to real or personal property, fixtures; and

         (b) Services and activities such as recreational activities, trips and leisure activities.

    All medical expenses must:

       1. Be rendered by a *health care provider*;

       2. Be *clinically supported* and consistent with the symptoms, diagnosis or indications of the *insured*;

       3. Be consistent with the most appropriate level of service that is in accordance with the standards of good practice and standard professional treatment protocols, including care paths for an *identified injury*;

       4. Not be rendered primarily for the convenience of the injured person or the *health care provider*; and

       5. Not include unnecessary testing or treatment.

    However, medical expenses include any non-medical remedial treatment rendered in accordance with recognized religious methods of healing.

    (b) Non-Medical Benefits (Extra PIP Package)

       1. Income continuation.

       The payment of loss of *income* of an *income producer* as a result of *bodily injury* disability, subject to a maximum weekly payment of $100. Such sum shall be payable during the life of the insured injured person and shall be subject to an amount or limit of $5,200, on account of injury to an insured in any one accident, except that in no case shall income continuation benefits exceed the net *income* normally earned during the period in which the benefits are payable.

2. Essential services.

Payment of essential services benefits to an *insured*, shall be made in reimbursement of necessary and reasonable expenses incurred for such substitute *essential services* ordinarily performed by the *insured* for himself and any *relatives,* subject to an amount or limit of $12 per day. Such benefits shall be payable during the life of the insured and shall be subject to an amount or limit of $4,380, on account of injury to any *insured* in any one accident.

3. Death benefits.

An amount payable in the event of the death of an *insured*, calculated as follows:

(a) If the *insured* was an *income producer* at the time of the accident, the amount equal to the difference between $5,200 and all income continuation benefits paid for any loss of *income* resulting from the insured's injury prior to the *insured's* death.

(b) If the *insured* ordinarily performed *essential services* for the care and maintenance of himself and any *relative*, an amount not to exceed the difference between $4,380 and all essential service benefits paid with respect to the *insured's* injury prior to death.

Benefits of this section shall be paid to the surviving spouse or *civil union* partner, or in the event there is no surviving spouse or *civil union* partner, then to the surviving children, and in the event there are no surviving spouse, *civil union* partner or surviving children, then to the estate of the *insured*.

4. Funeral expenses.

Reasonable expenses incurred for funeral, burial and cremation.

## PEDESTRIAN PERSONAL INJURY PROTECTION COVERAGE
## LOSSES WE PAY

1. We will pay Pedestrian Personal Injury Protection Coverage to or for a *named insured* or *relative* who sustains *bodily injury*.

2. With respect to Pedestrian Personal Injury Protection Coverage, *insured* means a person who sustains *bodily injury* while a *pedestrian*;

(a) Caused by an *insured motor vehicle*; or

(b) As a result of being struck by an object propelled by or from an *insured motor vehicle*.

3. Subject to the limits shown in **PEDESTRIAN PERSONAL INJURY PROTECTION COVERAGE OR PERSONAL INJURY PROTECTION OPTIONS - SCHEDULE A**, Pedestrian Personal Injury Protection benefits consist of the following:

(a) Medical expenses.
(b) Income continuation.
(c) Essential services.
(d) Death benefits.
(e) Funeral expenses.

## RESIDUAL MEDICAL PAYMENTS – MEDICAL PAYMENTS COVERAGE
## LOSSES WE PAY

1. We will pay extended medical expense benefits to or for an *insured* who sustains *bodily injury*. The *bodily injury* must be caused by an accident arising out of the ownership, maintenance or use, including loading and unloading, of a *highway vehicle* not owned by or furnished or available for the regular use of the *named insured* or any *relative*.

2. With respect to Extended Medical Expense Benefits Coverage, *insured* means:

(a) The *named insured* or any *relative* who sustains *bodily injury* while:

(i) *Occupying* or using a *highway vehicle*; or
(ii) A *pedestrian*, caused by a *highway vehicle*.

(b) Any other person:

(i) Who sustains *bodily injury* while *occupying* a *highway vehicle* being operated by the *named insured* or any *relative*, other than a:

(a) Motorcycle; or
(b) Vehicle being used as a public or livery conveyance; or

(ii) Using such *highway vehicle* with the permission of the *named insured*.

3. The total limit of Extended Medical Expense Benefits payable is $1,000 per person/per accident, unless another limit is shown on the Declarations under Residual Medical Payments.

**EXCLUSIONS**

**A.** We do not provide Personal Injury Protection Coverage for *bodily injury*:

    **1.** To any *insured*:

        (a) Whose conduct contributed to the *bodily injury* in any of the following ways:

            (i) While committing a high misdemeanor or felony, or seeking to avoid lawful apprehension or arrest by a police officer; or

            (ii) While acting with specific intent to cause injury or damage to himself or others.

        (b) Operating or *occupying* an *auto* without the permission of the:

            (i) Owner of the *auto*; or

            (ii) *Named insured* under the policy insuring that *auto*.

        (c) Other than a *named insured* or any *relative* if that *insured* is entitled to Personal Injury Protection Coverage or Medical Payments Coverage as a *named insured* or *relative* under the terms of another policy.

    **2.** To any *relative* if that *relative* is entitled to New Jersey Personal Injury Protection Coverage as a *named insured* under the terms of another policy.

    **3.** Arising out of the ownership, maintenance or use, including loading or unloading, of any vehicle while located for use as a residence or premises, other than for transitory recreational purposes.

    **4.** Due to:

        (a) *War* (declared or undeclared);

        (b) Civil *war*;

        (c) Insurrection;

        (d) Rebellion or revolution; or

        (e) Any act or condition incident to any of the above.

    **5.** Resulting from the:

        (a) Radioactive;

        (b) Toxic;

        (c) Explosive; or

        (d) Other hazardous;

        properties of nuclear material.

**B.** We do not provide:

    **1.** Personal Injury Protection Coverage for *bodily injury* to any *insured* who is not *occupying your covered auto* if the accident occurs outside of New Jersey.  However, this exclusion does not apply to:

        (a) The *named insured*;

        (b) Any *relative*; or

        (c) Any resident of New Jersey.

    **2.** Personal Injury Protection Coverage or Extended Medical Expense Benefits Coverage for *bodily injury* to any *insured* who, at the time of the accident, was the owner or registrant of an *auto* registered or principally garaged in New Jersey that was being operated without Personal Injury Protection Coverage.

    **3.** Extended Medical Expense Benefits Coverage for *bodily injury* to any *insured*:

        (a) Who is entitled to benefits for the *bodily injury* under:

            (i) Personal Injury Protection Coverage; or

            (ii) Any:

                1. Workers' compensation law; or

                2. Medicare provided under federal law.

        (b) Who would be entitled to benefits for the *bodily injury* under Personal Injury Protection Coverage, except for the application of a:

            (i) Deductible;

            (ii) Co-payment; or

            (iii) Medical fee schedule promulgated by the New Jersey Department of Banking and Insurance.

        (c) If the accident occurs outside of New Jersey.  However, this exclusion does not apply to:

            (i) The *named insured*;

            (ii) Any *relative*; or

            (iii) Any resident of New Jersey.

**C.** We do not provide Personal Injury Protection Coverage with respect to the following diagnostic tests:

    **1.** Spinal diagnostic ultrasound;

ᴵ2000014422313074290120000248ᴵ

2. Iridology;
3. Reflexology;
4. Surrogate arm mentoring;
5. Surface electromyography (surface EMG);
6. Mandibular tracking and stimulation; or
7. Any other diagnostic test that is determined to be ineligible for coverage under Personal Injury Protection Coverage by New Jersey law or regulation.

D. Pursuant to N.J.A.C. 13:30-8.22(c), the personal injury protection medical expense coverage shall not provide reimbursement for the following diagnostic tests which have been identified by the New Jersey State Board of Dentistry as failing to yield data of sufficient volume to alter or influence the diagnosis or treatment plan employed to treat TMJ/D:

1. Mandibular tracking;
2. Surface EMG;
3. Sonography;
4. Doppler ultrasound;
5. Needle EMG;
6. Electroencephalogram (EEG);
7. Thermograms/thermographs;
8. Video fluoroscopy; and
9. Reflexology.

E. We do not provide Personal Injury Protection for those benefits deemed experimental or investigational.

**LIMIT OF LIABILITY**

A. The limits of liability shown in the Declarations and Schedule A for the Personal Injury Protection Coverage benefits that apply are the most we will pay to or for each *insured* injured in any one accident, regardless of the number of:
1. *Insured*;
2. Policies applicable; or
3. Vehicles insured.

B. Any amounts payable under Personal Injury Protection Coverage shall be reduced by any amounts:
1. Paid;
2. Payable; or
3. Required to be provided;
under any of the following:
1. Workers' compensation law, disability benefits law or similar law;
2. Employees temporary disability law or similar law;
3. Medicare provided under federal law; or
4. Benefits actually collected that are provided under federal law to active and retired military personnel.

C. Any amounts payable for medical expense benefits shall be limited by the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance for specific injuries or services.

D. Any amounts payable for medical expense benefits as a result of any one accident shall be:
1. Reduced by the applicable deductible indicated in Schedule A or in the Declarations; and
2. Subject to a co-payment of 20% per person/per accident for the amount between the applicable deductible and $5,000.

E. If the Declarations indicates the *named insured* has elected the Medical Expense Benefits as Secondary Coverage under PIP MED ONLY HEALTH PRIMARY or PIP FULL HEALTH PRIMARY option, the following provisions apply to medical expenses benefits:
1. Priority of Benefits
   (a) The health benefits plans under which the *named insured* and any *relative* are insured shall provide primary coverage for *allowable expenses* incurred by the *named insured* or any *relative* before any medical expense benefits are paid by *us*.
   (b) This insurance shall provide secondary coverage for medical expense benefits for *allowable expenses* which remain uncovered after the health benefits plans, under which the *named insured* and any *relative* are insured, have paid benefits towards those *allowable expenses*.
   (c) The total benefits paid by the health benefits plans and this insurance shall not exceed the total amount of *allowable expenses*.
2. Determination of Medical Expense Benefits Payable
   (a) To calculate the amount of *actual benefits* to be paid by *us*, we will first determine the amount of *eligible expenses* which would have been paid by *us*, after application of the deductible and co-payment indicated in Schedule A or in the Declarations, had the *named insured* not elected the Medical Expense Benefits as Secondary Coverage option.
   (b) If the remaining *allowable expenses* are:

1. Less than the benefits calculated in paragraph "(a)" above, we will pay **actual benefits** equal to the remaining **allowable expenses**, without reducing the remaining **allowable expenses** by the deductible or co-payment.
2. Greater than the benefits calculated in paragraph "(a)" above, we will pay **actual benefits** equal to the benefits calculated in paragraph "(a)" above, without reducing the remaining **allowable expenses** by the deductible or co-payment.

(c) We will not reduce the **actual benefits** determined in paragraph "(b)":
1. By any deductibles or co-payments of the health benefits plans which have provided primary coverage for medical expense benefits; or
2. For any **allowable expense** remaining uncovered which otherwise would not be an **eligible expense** under Personal Injury Protection Coverage, except as set forth in paragraph "(d)" below.

(d) In determining remaining uncovered **allowable expenses**, we shall not consider any amount for items of expense which exceed the dollar or percent amounts recognized by the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance.

(e) The total amount of medical expense benefits for the **named insured** or any **relative** per accident shall not exceed the maximum amount payable for medical expense benefits under this policy.

3. Health Benefits Plan Ineligibility
(a) If, after the **named insured** has elected the Medical Expense Benefits as Secondary Coverage under PIP MED ONLY HEALTH PRIMARY or PIP FULL HEALTH PRIMARY option, it is determined that the **named insured** or any **relative** did not have a health benefits plan in effect at the time an accident occurred which resulted in **bodily injury** to the **named insured** or any **relative**, medical expense benefits shall be provided to the **named insured** or any **relative**, subject to the following:
1. Only paragraphs "A." and "B." of the Limit of Liability provision will apply with respect to medical expense benefits.
2. Any amount payable for medical expense benefits for the **named insured** and any **relative** as a result of any one accident shall:
    (a) Be reduced by a deductible equal to the sum of $750 per person/per accident plus the applicable deductible indicated in Schedule A or in the Declarations; and
    (b) Be subject to a co-payment of 20% per person/per accident for amounts less than $5,000 after the deductible has been applied.
    (c) Be determined:
        (i) By the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance; or
        (ii) By **us**, on a reasonable basis, considering the medical fee schedules for similar services or equipment in the region where the service or equipment was provided, if an item of expense is not included on the medical fee schedules.
    (d) Not exceed the maximum amount payable for medical expense benefits under this policy.

(b) All items of medical expense incurred by the **named insured** or any **relative** for the treatment of **bodily injury** shall be **eligible expenses** to the extent the treatment or procedure from which the expenses arose:
1. Is recognized on the medical fee schedules promulgated by the New Jersey Department of Banking and Insurance; or
2. Are reasonable expenses in accordance with Section 4 of the New Jersey Automobile Reparation Reform Act.

(c) We shall be entitled to recover the difference between:
1. The reduced premium paid under this policy for the Medical Expense Benefits as Secondary Coverage option; and
2. The premium which would have been paid under this policy had the **named insured** not elected such option.

We will not provide any premium reduction for the Medical Expense Benefits as Secondary Coverage under PIP MED ONLY HEALTH PRIMARY and PIP FULL HEALTH PRIMARY option for the remainder of the policy period.

F. The limit of liability shown in Schedule A or in the Declarations for weekly income continuation benefits shall be prorated for any period of **bodily injury** disability, for work or employment, less than one week.

**OTHER INSURANCE**

A. No one will be entitled to duplicate payments for the same elements of loss under this or any similar insurance, including approved plans of self-insurance. If an **insured** receives benefits from another insurer, that insurer shall be entitled to recover from **us** its pro rata share of the benefits paid. An insurer's pro rata share is the proportion that the insurer's liability bears to the total of all applicable limits.

*2000014422313074299012000249*

B.  With respect to:
1.  Personal Injury Protection Coverage; or
2.  Pedestrian Personal Injury Protection Coverage;

if there is other applicable insurance, including approved self-insurance plans, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the insurance with the highest limit of liability.

C.  With respect to extended medical expense benefits coverage, any insurance we provide under this policy shall be excess over any amounts:
1.  Payable; or
2.  Required to be provided;

under any other automobile no-fault law or medical payments coverage.

D.  If the *relative* for which this coverage is purchased is a *named insured* under a Basic Policy, this coverage does not apply pursuant to N.J.A.C. 11:3- 3.3.

## DUTIES AFTER AN ACCIDENT OR LOSS

A.  In the event of an accident, prompt written notice must be given to *us* or *our* authorized representative.  Such notice shall include:
1.  Sufficient details to identify the *insured*; and
2.  Reasonably obtainable information as to the time, date, how, when and where the accident happened shall be given by or on behalf of each insured.

B.  A person seeking Personal Injury Protection Coverage must:
1.  Promptly give *us* written proof of claim, including:
    (a)  Full particulars of the nature and extent of the *bodily injury* and treatment received and contemplated; and
    (b)  Any other information which may assist *us* in determining the amount due and payable; and
    (c)  Cooperate and immediately provide any and all documents and/or information we request, in the manner and form we may reasonably require, including but not limited to any and all requests for fully completed PIP forms.
2.  Promptly send *us* copies of:
    (a)  The summons and complaint; or
    (b)  Other process;

    served in connection with any legal action taken, to recover damages for *bodily injury*, against a person or organization who is or may be legally liable.
3.  Independent Medical Examination(s) - IME
    Submit, as often as we require, to physical or mental exams by physicians we select.  We will provide the *insured* or his or her designee with a copy of the medical report if requested.
    The *insured* is expected to attend each IME as scheduled by us or our Plan, with proper photo identification.
    (a)  Failure of the insured to attend a scheduled IME without notice to the examining physician or the Plan shall constitute an unexcused failure to attend a scheduled IME.  The burden is on the insured to prove that proper notice was provided.
    (b)  Failure of an insured to attend a scheduled IME will be considered excused if the insured notifies the examining physician or Plan at least 3 days prior to the IME date and reschedules the IME for a date, not to exceed 35 calendar days from the date of the original IME.
    (c)  The insured shall supply all requested medical records, diagnostic imaging films, test results and other pertinent records at the time of the examination or before.  If the insured fails to provide the records by the IME date and proper photo identification on the date of IME, the IME will be unexcused.

    **Rescheduling Independent Medical Examinations**
    (a)  If an insured has an excused failure to attend a scheduled IME and does not reschedule the IME within 35 calendar days of the original IME date, the failure to attend the original IME will be unexcused.
    (b)  If an insured reschedules an IME for a date more than 35 calendar days from the date of the original IME, failure to attend the rescheduled IME shall be unexcused.

    **Failure to Appear at Two or More Independent Medical Examinations**
    If the *insured* has two or more consecutive unexcused failures to attend scheduled IMEs of the same specialty, we (GEICO) will immediately notify the insured or their designee of benefit termination.  We will deny payment of future treatment, durable medical equipment, and diagnostic testing provided on or after the date of the second unexcused failure to attend for the diagnosis and related diagnosis contained in the attending physician's treatment plan form and all other treatment on file.
4.  Comply with all other requirements of the Decision Point Review/Pre-Certification Plan.

## GENERAL CONDITIONS

The conditions of **Section V** of the policy apply to **Section II** except as modified below.

## *OUR* RIGHT TO RECOVER PAYMENT

If we make a payment under this coverage and the person to or for whom payment was made recovers damages from another:

1.  That person shall:
    (a) Hold in trust for *us* the proceeds of the recovery;
    (b) Reimburse *us* to the extent of our payment;
    (c) Execute and deliver such instruments and papers as may be appropriate to secure the rights and obligations of that person and *us*; and
    (d) Do nothing after loss to prejudice these rights.
2.  We shall have a lien to the extent of such payment. We may give notice of lien to:
    (a) The person or organization causing the *bodily injury*;
    (b) His agent;
    (c) His insurer; or
    (d) A court having jurisdiction.

## TERRITORY

The policy territory is, with respect to:

1.  Personal Injury Protection Coverage or Extended Medical Expense Benefits Coverage, anywhere in the world.
2.  Pedestrian Personal Injury Protection Coverage, this policy applies only to accidents, occurrences or losses during the policy period within the state of New Jersey.

## TWO OR MORE AUTO POLICIES

If this policy covers two or more autos, the limit of coverage applies separately to each. An *auto* and an attached *trailer* are considered to be one *auto*.

1.  This provision does not apply to Extended Medical Expense Benefits Coverage.
2.  No one will be entitled to receive duplicate payments for the same elements of loss under Extended Medical Expenses Benefits Coverage.

## PAYMENT OF BENEFITS

1.  We may, at *our* option, pay any medical expense benefits or essential services benefits to the:
    (a) *Insured*; or
    (b) Person or organization providing products or services for such benefits.
    These benefits shall not be assignable except to providers of service benefits.
2.  In the event of the death of an *insured*, we will pay:
    (a) Any amounts payable, but unpaid prior to death, for medical expense benefits to the *insured's* estate.
    (b) Death benefits for an *insured* who was:
        1.  An *income producer*, to:
            (a) The surviving spouse or *civil union* partner; or
            (b) If there is no surviving spouse or *civil union* partner, the surviving children; or
            (c) If there are no surviving children, the *insured's* estate.
        2.  A provider of *essential services*, to the person who has incurred the expense of providing *essential services*.
    (c) Funeral expense benefits to the *insured's* estate.

## PROOF OF HEALTH BENEFITS PLAN COVERAGE

If the Declarations and Schedule A indicates the Medical Expense Benefits as Secondary Coverage (PIP MED ONLY HEALTH PRIMARY and PIP FULL HEALTH PRIMARY) option applies, the *named insured* must provide proof that the *named insured* and any *relatives* are insured by health insurance coverage or benefits in a manner and to an extent approved by the New Jersey Department of Banking and Insurance.

## DELETION OF BENEFITS OTHER THAN MEDICAL EXPENSE BENEFITS

If the Declarations and Schedule A indicates the Deletion of Benefits Other Than Medical Expense Benefits (PIP MED ONLY HEALTH PRIMARY and PIP MED ONLY PIP PRIMARY) option applies, we will pay personal injury protection benefits consisting of only medical expense benefits for the *named insured* or any *relative*.

## EMPLOYEE BENEFITS REIMBURSEMENT

If an *insured* fails to apply for workers' compensation benefits or disability benefits for which that *insured* is eligible, we may immediately apply to the provider of such benefits for reimbursement of any benefits we have paid under this coverage.

## SECTION III - PHYSICAL DAMAGE COVERAGES
### *Your* Protection For *Loss* Or Damage To *Your* Auto

**DEFINITIONS**

The definitions of the terms *auto business*, *farm auto*, *private passenger auto*, *relative*, *temporary substitute auto*, *utility auto*, *you*, and *war* under **Section I** apply to **Section III** also.  Under this Section, the following special definitions apply:

1. *Actual cash value* is the replacement cost of the auto or property less *depreciation* and/or *betterment*.

2. *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.

3. *Collision* means *loss* caused by upset of the *owned* or *non-owned auto* or its collision with another object, including an attached vehicle.
   *Losses* caused by the following are comprehensive *losses*:

   | | |
   |---|---|
   | (a) Missiles; | (k) Water; |
   | (b) Falling objects; | (l) Flood; |
   | (c) Fire; | (m) Malicious mischief; |
   | (d) Lightning; | (n) Vandalism; |
   | (e) Theft; | (o) Riot; |
   | (f) Larceny; | (p) Civil commotion; or |
   | (g) Explosion; | (q) Colliding with a bird or animal. |
   | (h) Earthquake; | |
   | (i) Windstorm; | |
   | (j) Hail; | |

4. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:
   (a) Are permanently installed or attached; or
   (b) Alter the appearance or performance of a vehicle.
   This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto*, using bolts or brackets, including slide-out brackets.

5. *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

6. *Diminution in value* means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

7. *Insured* means:
   (a) Regarding the *owned auto*:
       (i) *You* and *your relatives*;
       (ii) A person or organization maintaining, using or having custody of the auto with *your* permission, if the use is within the scope of that permission.
   (b) Regarding a *non-owned auto*: *you* and *your relatives*, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

8. *Loss* means direct and accidental loss of or damage to:
   (a) The auto, including its equipment; or
   (b) Other insured property.

9. *Non-owned auto* means a *private passenger auto*, *utility auto*, *farm auto*, or *trailer* not owned by or furnished for the regular use of either *you* or *your relatives*, except a *temporary substitute auto*. *You* or *your relative* must be using the auto or *trailer* within the scope of permission given by its owner.  An auto rented or leased for more than 30 days will be considered as furnished for *your* regular use.

10. *Owned auto* means:
    (a) Any vehicle described in this policy for which a specific premium charge indicates there is coverage;
    (b) A *private passenger*, *farm* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more; if
        (i) It replaces an *owned auto* as described in (a) above, or
        (ii) We insure all *private passenger*, *farm*, *utility autos* and *trailers* owned or leased by *you* on the date of such acquisition and *you* request us to add it to the policy within 30 days afterward;
    (c) A *temporary substitute auto*.

11. *Trailer* means a trailer of the flatbed variety designed for use with a *private passenger auto* and not used as a home, residence, office, store, display or passenger trailer. *Trailer* does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

## LOSSES WE WILL PAY

### Comprehensive (Excluding *Collision*)

1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision* to the *owned* or *non-owned auto*. This includes glass breakage.

   No deductible will apply to *loss* caused by fire, lightning, smoke, smudge, or damage sustained while the vehicle is being transported on any conveyance.

   At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to:

   (a) Fire;
   (b) Lightning;
   (c) Flood;
   (d) Falling objects;
   (e) Earthquake;
   (f) Explosion; or
   (g) Theft of the entire auto.

   No deductible will apply to *loss* by fire or lightning.

   The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3. *Losses,* other than *collision,* arising out of a single occurrence shall be subject to no more than one deductible.

### *Collision*

1. We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

2. We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay the *loss*.

   Reimbursement will not exceed $30 per day nor more than $900 per *loss*.

2. We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

## EXCLUSIONS

### Section III does not apply:

1. To an auto used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products. However, a vehicle used in an ordinary carpool on a ride sharing or cost sharing basis is covered.

2. To *loss* due to *war*.

3. To a *non-owned auto* when used by the *insured* in the *auto business*.

4. To damage caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. To tires, when they alone are damaged by *collision*.

6. To *loss* due to radioactivity.

7. To *loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound.

8. To any radar or laser detector.

9. To *trailers* when used for business or commercial purposes with vehicles other than *private passenger*, *farm* or *utility autos*.

10. To *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

11. To any liability assumed under any contract or agreement.

12. To any *loss* or damage resulting from:

    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle; or

(c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities.

(d) The sale of an *owned auto*.

13. To the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

14. To any *loss* caused by participation in or preparing for any:

(a) Race,

(b) Speed event;

(c) Demolition contest; or

(d) Stunting activity of any nature.

15. To any *loss* resulting from participation in an organized automobile rack event.

16. *Loss* to any *non-owned auto* when used by *you* or any *relative* without a reasonable belief that *you* or that *relative* are entitled to do so.

17. *Loss* to *your owned auto* or any *non-owned auto* due to *diminution in value*.

## LIMIT OF LIABILITY

The limit of our liability for *loss*:

1. Is the *actual cash value* of the property at the time of *loss*;

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

3. To personal effects arising out of one occurrence is $200;

4. To a *trailer* not owned by *you* is $500;

5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

   *Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation* and/or *betterment* and for the physical condition of the property.

## OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available. Any insurance we provide for a vehicle *you* do not own shall be excess over any other collectible insurance.

## CONDITIONS

The following conditions apply only to the Physical Damage coverages:

1. NOTICE

   As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:

   (a) The identity of the *insured*;

   (b) A description of the auto or *trailer*;

   (c) The time, place and details of the *loss*; and

   (d) The names and addresses of any witnesses.

   In case of theft, the *insured* must promptly notify the police.

2. TWO OR MORE AUTOS

   If this policy covers two or more autos or *trailers*, the limit of coverage and any deductible apply separately to each.

3. ASSISTANCE AND COOPERATION OF THE *INSURED*

   The *insured* will cooperate and assist us, if requested:

   (a) In the investigation of the *loss*;

   (b) In making settlements;

   (c) In the conduct of suits;

   (d) In enforcing any right of subrogation against any legally responsible person or organization;

   (e) At trials and hearings;

   (f) In securing and giving evidence; and

   (g) By obtaining the attendance of witnesses.

4. ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding.  If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days.  *You* may purchase the salvage from us if *you* wish.

5. *INSURED'S* DUTIES IN EVENT OF *LOSS*

In the event of *loss* the *insured* will:

(a) Protect the auto, whether or not the *loss* is covered by this policy.  Further *loss* due to the *insured's* failure to protect the auto will not be covered.  Reasonable expenses incurred for this protection will be paid by us.

(b) File with us, within 91 days after *loss*, his sworn proof of loss, including all information we may reasonable require.

(c) At our request, the *insured* will exhibit the damaged property.

6. APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*.  In that event, we and the *insured* will each select a competent appraiser.  The appraisers will select a competent and disinterested umpire.  The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire.  An award in writing of any two will determine the amount of *loss*.  We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

7. PAYMENT OF *LOSS*

We may at our option:

(a) Pay for the *loss*; or

(b) Repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the Declarations at our expense with payment for covered damage.  We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us.  We may settle claims for *loss* either with the *insured* or the owner of the property.

8. NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* to the auto.

9. SUBROGATION

When payment is made under this coverage, we will be subrogated to all the *insured's* rights of recovery against others.  The *insured* will help us to enforce these rights.  The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

10. MANDATORY INSPECTION

This provision applies in place of any conflicting policy provision.

A. We have the right to inspect any:

1. *Private passenger auto*; or

2. Pickup or van;

which *you* insure or intend to insure for Physical Damage Coverage under this policy.

B. We do not provide Physical Damage Coverage for any additional or replacement vehicle *you* acquire during the policy period until after *you*:

1. Notify us; and

2. Request coverage for that vehicle.

However, this provision does not apply to a replacement vehicle for the three-day period beginning on the date *you* acquire the replacement vehicle if:

1. *You* acquire the vehicle during the policy period; and

2. We provided Physical Damage Coverage on the vehicle you replaced for at least 12 months prior to the date of replacement.

For each of the following which falls within the three-day period, we will extend the period one day:
1. Saturday;
2. Sunday; or
3. New Jersey State holiday.

C. When we require an inspection, *you* must:
1. Cooperate; and
2. Make the vehicle available for inspection.

11. ASSIGNMENT

With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

---

### SECTION IV – UNINSURED/UNDERINSURED MOTORISTS COVERAGE
**Protection For *You* And *Your* Passengers For Injuries Caused By *Uninsured* and *Hit-And-Run Motor Vehicle***

DEFINITIONS

The definitions of Section I apply except the following special definitions.

1. ***Bodily injury*** means bodily injury, sickness, or disease, including death, caused by accident, sustained by *you*, *your relatives* or any other person *occupying* an *insured auto* with *your* consent. All claims for damages arising from *bodily injury* to a person from a single loss shall be considered one *bodily injury*.

2. ***Hit-and-run motor vehicle*** means a motor vehicle which causes an accident resulting in *bodily injury* to an *insured* or *property damage* provided:
   (a) The owner or operator cannot be identified;
   (b) The *insured* or someone on his behalf reports the accident within 24 hours, or as soon thereafter as practicable, to the nearest office of an authorized police authority;
   (c) The *insured* or someone on his behalf files with us, within 30 days after requested, a statement under oath that the *insured* or his legal representative has a cause or causes of action arising out of the accident for damages against a person or persons whose identity cannot be determined and setting forth facts supporting the statement; and
   (d) At our request, the *insured*, or his legal representative, makes the auto which the *insured* was *occupying* at the time of the accident available for our inspection.

3. ***Insured*** means:
   (a) *You* and *your* spouse or *civil union* partner if a resident of the same household;
   (b) *Your relative* if a resident of *your* household;
   (c) Any other person while *occupying* an *owned auto*.
   (d) Any person who is entitled to recover damages because of *bodily injury* or property damage sustained by an *insured* under (a), (b), (c) above.

   If there is more than one *insured*, our limit of liability will not be increased.

4. ***Insured auto*** is an auto:
   (a) Described in the Declarations and covered by the Bodily Injury and Property Damage Liability coverages of this policy;
   (b) *Temporary substitute auto*; or
   (c) Operated by *you* or *your* spouse if a resident of the same household.

   But the term *insured auto* does not include:
   (a) An auto used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products. However, a vehicle used in an ordinary carpool on a ride sharing or cost sharing basis is covered;
   (b) An auto being used without the owner's permission; or
   (c) Under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

5. ***Property damage*** means injury to or destruction of:
   (a) An *insured auto* owned by *you*;
   (b) Any property in the *insured auto* owned by *you*, any *relative* or other person *occupying* the *insured auto*; or
   (c) Any other property owned by the *insured* if located in New Jersey

6. ***Occupying*** means in, upon, entering into, on, out, off or alighting from an *auto*.

7. ***Relative*** means a person related to *you* who resides in *your* household.

8. ***State*** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

9. **Underinsured motor vehicle** means the following:
   (a) With respect to an **insured** who:
      1. Is not the named insured under this policy; and
      2. Is a named insured under one or more other policies providing similar coverage;

      **underinsured motor vehicle** means a land motor vehicle or **trailer** of any type to which a liability bond or policy applies at the time of the accident but its limit for liability is less than the highest applicable limit of liability under any insurance providing coverage to that **insured** as a named insured.

   (b) With respect to an **insured** who:
      1. Is not the named insured under this policy or any other policy; and
      2. Is insured as a spouse or **relative** under one or more other policies providing similar coverage;

      **underinsured motor vehicle** means a land motor vehicle or **trailer** of any type to which a liability bond or policy applies at the time of the accident but its limit for liability is less than the highest applicable limit of liability under any insurance providing coverage to that **insured** as a spouse or **relative**.

   (c) With respect to any other **insured** not described in paragraphs "(a) or "(b)" above, **underinsured motor vehicle** means a land motor vehicle or **trailer** of any type to which a liability bond or policy applies at the time of the accident but its limit for liability is less than the limit of liability for this coverage.

   However, **underinsured motor vehicle** does not include:
   1. An **uninsured motor vehicle**.
   2. Any vehicle or equipment owned or operated by a self-insurer under any applicable motor vehicle law.

   Neither **uninsured motor vehicle** nor **underinsured motor vehicle** includes any vehicle or equipment:
   1. Owned by or furnished or available for the regular use of **you** or any **relative.**
   2. Owned by any governmental unit or agency.
   3. Operated on rails or crawler treads.
   4. Designed mainly for use off public roads while not on public roads.
   5. While located for use as a residence or premises.

10. **Uninsured motor vehicle** means a land motor vehicle or **trailer** of any type:
    (a) To which no liability bond or policy applies at the time of the accident.
    (b) Which, with respect to damages for **bodily injury** only, is a **hit-and-run motor vehicle** whose operator or owner cannot be identified and which hits, or causes an accident resulting in **bodily injury** without hitting:
       1. **You** or any **relative**;
       2. A vehicle which **you** or any **relative** are **occupying**; or
       3. **Your insured auto**.
    (c) To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:
       1. Denies coverage; or
       2. Is or becomes insolvent.

    However, **uninsured motor vehicle** does not include:
    1. An **underinsured motor vehicle**.
    2. Any vehicle or equipment:
       (a) Owned or operated by a self-insurer under any applicable motor vehicle law, except a self- insurer which is or becomes insolvent; or
       (b) Insured under a basic automobile insurance policy issued in accordance with New Jersey law or regulation.

    Neither **uninsured motor vehicle** nor **underinsured motor vehicle** includes any vehicle or equipment:
    1. Owned by or furnished or available for the regular use of **you** or any **relative.**
    2. Owned by any governmental unit or agency.
    3. Operated on rails or crawler treads.
    4. Designed mainly for use off public roads while not on public roads.
    5. While located for use as a residence or premises.

## LOSSES WE PAY

We will pay damages for **bodily injury** and **property damage** caused by an accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** arising out of the ownership, maintenance or use of that vehicle.

The amount of the **insured's** recovery for these damages will be determined by agreement between the **insured** or his representative and us.

A dispute with respect to the total amount of damage or the extent of liability of the tort feasor may, by mutual agreement, be submitted to arbitration. However, disputes regarding coverage under this section or threshold breach are not subject to arbitration.

The arbitration decision shall be binding unless, within 60 days of the arbitration decision, either party send notice via certified mail to the other party that the arbitration decision is rejected. If the arbitration decision is rejected by either party, the decision, award, finding and conclusion of the arbitrator will be null and void.

Subject to the above, either party shall have the right to a trial on all issues in a court of competent jurisdiction.

We will be obligated to pay no more than the applicable policy limit for this coverage regardless of whether an arbitration results in an award in excess of the applicable policy limits for this coverage as defined in the policy.

## EXCLUSIONS

Section IV does not apply:

1. To *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement of his claim which exhausts the applicable *bodily injury* or death limits of the liability insurance without our prior written consent unless:

   (a) We are notified in writing by Certified Mail that a tentative agreement to settle for the liability limits of the owner or operator of the other vehicle has been reached;

   (b) We did not make a payment equal to the tentative settlement amount to our *insured* within 30 days of our refusal to consent to the settlement offer; and

   (c) We responded to the written notice of settlement within 60 days.

2. To *bodily injury* sustained by *you* or *your relatives* while *occupying*, or through being struck by, an *uninsured motor vehicle* or *underinsured motor vehicle* owned by *you* or *your relatives*.

3. To the owner of a motor vehicle:

   (a) Insured under a basic automobile insurance policy issued in accordance with New Jersey law or regulation; or

   (b) Required to be insured in accordance with New Jersey law or regulation, but not insured for this coverage or any similar coverage.

   This includes a *trailer* of any type used with a vehicle described in "(a)" and "(b)" above.

   However, this exclusion does not apply to *you* unless *you* are *occupying*, at the time of the accident, a motor vehicle described in "(a)" and "(b)" above.

4. To an *insured's* property damaged while in, or through being struck by an *uninsured motor vehicle* or *underinsured motor vehicle* owned by an *insured*.

5. To *bodily injury* sustained by an *insured* while occupying a motor vehicle owned by an *insured* and not described in the Declarations and not covered by the Bodily Injury and Property Damage liability coverages of this policy.

6. To *bodily injury* sustained by an *insured* while *occupying* a motor vehicle not owned by, and furnished for the regular use of the *insured* when involved in an accident with an *underinsured motor vehicle*.

7. To any workers' or workmen's compensation insurer, self-insurer or disability benefits insurer.

8. To the United States of America or any of its agencies.

9. To the first $500 of *property damage* to the property of each *insured* which is damaged in any one accident.

10. To any insurer either directly or indirectly.

11. To punitive or exemplary damages.

12. To any liability assumed under any contract or agreement.

13. To damage caused by an *insured's* participation in or preparation for any:

    (a) Race;

    (b) Speed event;

    (c) Demolition contest; or

    (d) Stunting activity of any nature.

14. To damage resulting from participation in an organized automobile track event.

## PERSONS INSURED

This coverage applies to the following persons as *insureds*:

1. *You* and *your relatives*;

2. Any other person *occupying* an *insured auto* with *your* consent;

3. Any other person entitled to recover damages because of *bodily injury* to a person described in 1. or 2. above.

## COVERAGE LIMITS

Regardless of the number of *insureds*, autos or *trailers* to which this policy applies:

1. The limit of liability for Uninsured Motorists coverage stated in the Declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident.

2. The limit of liability for Uninsured Motorists coverage stated in the Declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages including damages for care and loss of services, due to *bodily injury* sustained by two or more persons as the result of one accident.

3. The limit of Uninsured Motorists Property Damage Liability coverage stated in the Declarations is the total limit of our liability for all such damages, including damages for loss of use of an auto owned by *you*, sustained in any one accident.

4. When coverage is afforded to two or more autos under this policy, the limits of liability shall apply separately to each auto as stated in the Declarations.  But these limits may not be combined so as to increase the stated coverage for the auto involved in the accident.

   If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.

   The amount payable under this coverage will be reduced by all amounts:
   (a) Paid by or for all persons or organizations liable for the injury;
   (b) Paid under the Bodily Injury and Property Damage coverages of this policy;
   (c) Recovered under any workers' or workmen's compensation law, disability benefits law or any similar law, exclusive of non-occupational disability benefits; or
   (d) Paid under a property insurance policy.

5. Any payment made under this coverage shall reduce any amount the *insured* is entitled to receive from the Bodily Injury or Property Damage coverages of this policy.

6. Any amounts paid under the Physical Damage coverages of this policy are not covered under this insurance.

7. We will not be obligated to make any payment under this coverage until all *bodily injury* and *property damage* insurance policies available to the *underinsured motor vehicle* and applicable to the accident have been exhausted by the payment of judgments or settlements.

## CONDITIONS

The following conditions apply to the Uninsured/Underinsured Motorists coverage:

1. NOTICE

   As soon as possible after an accident, notice must be given us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) The time, place and details of the accident; and
   (c) The names and addresses of the injured, and of any witnesses.

   If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must notify us of the suit.  The notice shall be detailed to enable us to secure whatever information we may require to protect our interest.

2. PROOF OF CLAIM

   As soon as possible, the *insured*, or other person making claim, must give us written proof of claim, under oath if required.  This will include details of the nature and extent of injuries, treatment and other facts which may affect the amount payable.

   Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

   The injured person will submit to physical examination at our expense, by doctors chosen by us, as we may reasonably require.

   The injured person, or in the event of his incapacity or death, his legal representative, must, at our request, authorize us to obtain medical reports and copies of records.

   Any person making a claim for damage to property must, within 60 days from the date of accident, file with us a sworn proof of loss.  This will be a statement explaining the ownership of the property, its value, any liens or mortgages on the property, and the time, place and circumstances of the accident.  Any other insurance on the property must be disclosed to us.  The damaged property must be made available for our inspection upon our request.

3. ASSISTANCE AND COOPERATION OF THE *INSURED*

   After we receive notice of a claim, we may require the *insured* to take any action necessary to secure his recovery rights against any person or organization that may be legally responsible for the accident.  We may require the *insured* to make that person or organization a defendant in any action against us.

4.  OTHER INSURANCE

(a) BODILY INJURY

When an *insured* occupies an auto or other motor vehicle not described in this policy, this insurance is excess over any other similar insurance available to the insured. The insurance which applies to the occupied auto or other motor vehicle is primary.

Except as provided above, if the insured has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the insured has other insurance against a loss covered by the Uninsured Motorists provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

(b) PROPERTY DAMAGE

This insurance is excess over any other insurance of any kind applicable to *property damage*. We will pay under this coverage only the amount by which the limit for this coverage is greater than the other insurance available.

6.  TRUST AGREEMENT

Whenever we make a payment under this coverage and have not waived our rights by failing, within 60 days of receipt of any written notice of a tentative agreement to settle for the liability limits, to make a payment equal to the tentative settlement amount:

(a) We will be entitled to repayment out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury* or *property damage*.

(b) The *insured* will hold in trust for our benefit all rights of recovery which he may have against any legally responsible person or organization. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

(c) At our written request, the *insured*, in his own name, will take through our designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The *insured* will pay us out of the recovery for our expenses, costs and attorney's fees.

(d) The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

7.  PAYMENT OF LOSS

Any amount due is payable:

(a) To the *insured* or his authorized representative;

(b) If the *insured* is a minor, to his parent or guardian, or

(c) If the *insured* is deceased, to his surviving spouse or *civil union* partner; otherwise

(d) To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay any amount due in accordance with (d) above.

8.  ACTION AGAINST US

Suit will not lie against us unless the *insured* and his legal representative have fully complied with all the policy terms.

## SECTION V - GENERAL CONDITIONS
### These Conditions Apply To All Coverages In This Policy

1. **TERRITORY**

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

2. **POLICY PERIOD**

Unless otherwise cancelled, this policy will expire as shown in the Declarations. But, it may be continued by our offer to renew and *your* acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the Declarations.

3. **PREMIUM**

When *you* dispose of, acquire ownership of, or replace a *private passenger*, *farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

4. **CHANGES**

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in *your* file. *You* agree:

(a) That we may adjust *your* policy premiums during the policy term if any of the information on which the premiums are based is incorrect, incomplete or changed.

(b) That *you* will cooperate with us in determining if this information is correct and complete.

(c) That *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

**5.  DISPOSAL OF VEHICLE**

If *you* relinquish possession of a leased vehicle or if *you* sell or relinquish ownership of an *owned auto*, any coverage provided by this policy for that vehicle will terminate on the date *you* do so.

**6.  ASSIGNMENT**

*Your* rights and duties under this policy may not be assigned without our written consent.

If *you* die, this policy will cover:

(a) *Your* surviving spouse or *civil union* partner, if covered under the policy prior to *your* death, and until the expiration of the policy term;

(b) The executor or administrator of *your* estate, but only while operating an *owned auto* and while acting within the scope of his duties;

(c) Any person having proper temporary custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

**7.  CANCELLATION BY THE *INSURED***

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

If this policy is cancelled, *you* may be entitled to a premium refund.  The premium refund, if any, will be computed according to our manuals.

**8.  CANCELLATION BY US**

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

(a) At least 10 days notice if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

(b) At least 15 days but not more than 30 days notice if cancellation is for nonpayment of premium; or

(c) At least 20 days notice in all other cases.

After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

(a) For nonpayment of premium; or

(b) If *your* driver's license or that of:

    1.  Any driver who lives with *you*; or

    2.  Any driver who customarily uses *your owned auto*;

has been suspended or revoked for one or more convictions for serious motor vehicle violations as set forth in N.J.A.C. 11:3-35.  This must have occurred:

    1.  During the policy period; or

    2.  Since the last anniversary of the original effective date if the policy period is other than one year.

(c) Under the provisions of N.J.A.C. 11-3-35.4(g), if *you* knowingly provide materially false or misleading information in connection with any application for insurance, renewal of insurance or claim for benefits under an insurance policy.

(d) Under the provisions of N.J.A.C. 11-3-35.4(e), if a household member is convicted of a violation of operating a motor vehicle without liability insurance during the policy term; or other  evidence exists indicating that the suspended or revoked driver has been operating a vehicle during a period of suspension.

The mailing or delivery of the above notice will be sufficient proof of notice.  The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund.  The premium refund, if any, will be computed according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

**9.  RENEWAL**

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to *you,* at the address shown in this policy, at least 60 days and not more than 90 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice.  This policy will expire without notice if any of the following conditions exist:

(a) *You* do not pay any premium as we require to renew this policy.

(b) *You* have informed us or our agent that *you* wish the policy to be cancelled or not renewed.

(c) *You* do not accept our offer to renew or *you* refuse to provide us with renewal classification and rating information as we may require.

(d) *You* are no longer an eligible person for this policy as defined in N.J.A.C. 11:3-34;

(e) *You* are no longer eligible for this policy according to our underwriting rules as approved by the New Jersey Department of Banking and Insurance;

(f) In the five years immediately preceding notice of nonrenewal, *you* or any driver insured under this policy had at least two of the following in any combination:

   1. An at-fault accident;

   2. A moving violation for which four or more automobile insurance eligibility points were assessed; or

   3. A failure to maintain, without lapse, coverage mandated by the New Jersey Automobile Reparation Reform Act.

(g) *You* provided false or misleading information in connection with any application for insurance, renewal of insurance or claim for benefits under this policy.

## 10. OTHER INSURANCE

If other insurance is obtained on *your owned auto*, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

If *you* relinquish possession of a leased vehicle or if *you* sell or relinquish ownership of an *owned auto*, any coverage provided by this policy will terminate on the date *you* do so.

## 11. DIVIDEND PROVISION

*You* are entitled to share in a distribution of the surplus of the company as determined by its Board of Directors from time to time.

## 12. DECLARATIONS

By accepting this policy, *you* agree that:

(a) The statements in *your* application and in the Declarations are *your* agreements and representations;

(b) This policy is issued in reliance upon the truth of these representations; and

(c) This policy, along with the application and Declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

## 13. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) At the time application is made; or

(b) At anytime during the policy period; or

(c) In connection with the presentation or settlement of a claim.

## 14. EXAMINATION UNDER OATH

The *insured*, or any other person seeking coverage under this policy, must submit to examination under oath by any person named by us when and as often as we may require.

## 15. AUTHORIZATIONS

The *insured* will provide the company with written authorization to release information if requested.

## 16. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of New Jersey are amended to conform to those statutes.

## 17. CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of New Jersey.

## 18. LIMITATION ON LAWSUIT OPTION

*You* and any *relatives*, who are not named insureds under another policy, may not maintain a suit for tort liability for non-economic loss for an accident arising out of the maintenance, operation, or use, including loading or unloading, of an auto to which N.J.S.A. Section 39:6A-8.1 applies, unless *you* or such *relative* has sustained a *bodily injury* that results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. This limitation applies if *you* have not selected the Full Tort Option under the policy.

## SECTION VI -- AMENDMENTS AND ENDORSEMENTS
### SPECIAL ENDORSEMENT – UNITED STATES GOVERNMENT EMPLOYEES

**SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES**

**A.** Under the Property Damage Coverage of **Section I**, we provide coverage to United States Government employees, civilian or military, using:

1. Motor vehicles owned or leased by the United States Government or any of its Agencies, or
2. Rented motor vehicles used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits described in paragraph **B.** below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

**B.** The following limits apply to this coverage:

1. A $100 deductible applies to each occurrence.

2. For vehicles described in **A.1.** above, our liability shall not exceed the lesser of the following:
   (a) The *actual cash value* of the property at the time of the occurrence; or
   (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   (c) Two months basic pay of the *insured*; or
   (d) The limit of Property Damage Liability coverage stated in the Declarations.

3. For vehicles described in **A.2.** above, our liability shall not exceed the lesser of the following:
   (a) The *actual cash value* of the property at the time of the occurrence; or
   (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   (c) The limit of Property Damage Liability coverage stated in the Declarations.

This insurance is excess over other valid and collectible insurance.


W. C. E. Robinson
Secretary

O. M. Nicely
President

# EXHIBIT B

# GEICO

**ONE GEICO PLAZA**
**Washington, D. C. 20076-0001**
**Telephone: 1-800-841-3000**

# Nevada Family Automobile Insurance Policy

A-30-NV (02-08)

# POLICY INDEX

Page

**SECTION I**

**Liability Coverages**
**Your Protection Against Claims From Others**
Definitions.................................................................. 3
Losses We Will Pay For You................................... 3
Additional Payments We Will Make Under The
    Liability Coverages............................................. 3
    Legal Expenses And Court Costs
    Bail And Appeal Bonds
    First Aid Expenses
Exclusions: When Section I Does Not Apply............ 4
Persons Insured:  Who Is Covered........................... 4
Financial Responsibility Laws .................................. 5
Out of State Insurance.............................................. 5
Limits Of Liability  ..................................................... 5
Other Insurance........................................................ 5
Conditions................................................................. 5
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II**

**Automobile Medical Payments Coverage**
**Protection For You And Your Passengers For**
**Medical Expenses**

Definitions  .............................................................. 6
Payments We Will Make............................................ 6
Exclusions: When Section II Does Not Apply .......... 6
Limit Of Liability  ....................................................... 7
Other Insurance........................................................ 7
Conditions................................................................. 7
    Notice
    Two Or More Autos
    Action Against Us
    Medical Reports - Proof And Payment Of Claims
    Subrogation

**SECTION III**

**Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions................................................................ 8
Losses We Will Pay................................................... 8
    Comprehensive Coverage................................. 8
    Collision Coverage ........................................... 9
Additional Payments We Will Make Under The
    Physical Damage Coverages ........................... 9
    Car Rental If Your Car Is Stolen
Exclusions:  When The Physical Damage
    Coverages Do Not Apply.................................... 9
Limit Of Liability  ..................................................... 10
Other Insurance...................................................... 10

Page
Conditions............................................................... 10
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation
    Assignment

**SECTION IV**

**Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By Uninsured**
**And Hit And Run Motorists**

Definitions ............................................................. 11
Losses We Pay......................................................... 12
Exclusions:  When Section IV Does Not Apply.......12
Limits Of Liability  .................................................. 13
Anti-Stacking  ......................................................... 13
Other Insurance...................................................... 13
Arbitration............................................................... 13
Trust Agreement..................................................... 14
Conditions............................................................... 14
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Proof Of Claim - Medical Reports
    Payment Of Loss

**SECTION V**

**General Conditions**
**The Following Apply To All Coverages In This Policy**

Territory - Policy Period .......................................... 15
Premium ................................................................. 15
Changes.................................................................. 15
Assignment............................................................. 15
Cancellation By The Insured .................................. 15
Cancellation By Us.................................................. 15
Cancellation By Us Is Limited................................. 15
Renewal .................................................................. 16
Other Insurance...................................................... 16
Dividend Provision ................................................. 16
Declarations............................................................ 16
Fraud And Misrepresentation................................. 16
Examination Under Oath......................................... 16
Terms Of Policy Conformed To Statutes ...............16
Disposal of Vehicle ................................................ 16
Choice of Law ........................................................ 16

**SECTION VI**

**Amendments And Endorsements**
Special Endorsement
    United States Government Employees ...........17

**Whenever, "he," "his," "him," "himself" appears in this policy, you may read "she," "her," "hers," or "herself."**

**AGREEMENT**

**We, the Company named in the declarations attached to this policy, make this agreement with you, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if you pay your premium when due, we will do the following:**

**SECTION I - LIABILITY COVERAGES**
**Your Protection Against Claims From Others**
**Bodily Injury Liability And Property Damage Liability**

**DEFINITIONS**

The words italicized in Section I of this policy are defined below.

1.  *Auto business* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2.  *Bodily injury* means bodily injury to a person, including resulting sickness, disease or death.

3.  *Farm auto* means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

4.  *Insured* means a person or organization described under PERSONS INSURED.

5.  *Non-owned auto* means an automobile or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

6.  *Owned auto* means:
    (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
    (b) A *trailer* owned by *you*;
    (c) A *private passenger*, *farm* or *utility auto* which *you* acquire ownership of during the policy period or for which *you* enter into a lease for a term of six months or more during the policy period, if
        (i)  It replaces an *owned auto* as defined in (a) above; or
        (ii) We insure all *private passenger*, *farm* and *utility autos* owned or leased by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;
    (d) A *temporary substitute auto*.

7.  *Private passenger auto* means a four-wheel private passenger, station wagon or jeep-type auto.

8.  *Relative* means a person related to *you* who resides in *your* household.

9.  *Temporary substitute auto* means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

10. *Trailer* means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger*, *farm* or *utility auto*.

11. *Utility auto* means a vehicle, other than a *farm auto*, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. *War* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

13. *You* or *your* means the policyholder named in the declarations or his or her spouse if a resident of the same household.

**LOSSES WE WILL PAY FOR YOU UNDER SECTION I**

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1.  *Bodily injury*, sustained by a person, and;

2.  Damage to or destruction of property, arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES**

1.  All investigative and legal costs incurred by us.

2.  All court costs charged to an *insured* in a covered lawsuit.

3.  Interest calculated on that part of a judgment that is within our limit of liability and accruing:
    (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;
    (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.

4.  Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.

5. Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an *owned* or *non-owned auto*, not to exceed $250 per bail bond.

6. We will upon request by an *insured*, provide reimbursement for the following items:
   (a) Costs incurred by any *insured* for first aid to others at the time of an accident involving an *owned auto* or *non-owned auto*.
   (b) Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.
   (c) All reasonable costs incurred by an *insured* at our request.

## EXCLUSIONS

### When Section I Does Not Apply

Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

1. Section I does not apply, in excess of the minimum financial responsibility limits, to any vehicle used to carry goods for hire.

2. *Bodily injury* or property damage caused intentionally by or at the direction of an *insured* is not covered.

3. We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy.

4. *Bodily injury* or property damage arising from the operation of farm machinery is not covered.

5. *Bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured* is not covered.
   However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

6. We do not cover *bodily injury* to a fellow employee of an *insured* if the fellow employee's *bodily injury* arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend *you* if suit is brought by a fellow employee against *you* alleging use, ownership or maintenance of an auto by *you*.

7. We do not cover an *owned auto* while used by a person (other than *you* or a *relative*) when he is employed or otherwise engaged in the *auto business*.

8. A *non-owned auto* while maintained or used by any person is not covered while such person is employed or otherwise engaged in (1) any *auto business* if the accident arises out of that business; (2) any other business or occupation of any *insured* if the accident arises out of that business or occupation, except a *private passenger auto* used by *you* or *your* chauffeur or domestic servant while engaged in such other business.

9. We do not cover damage to:
   (a) Property owned, operated or transported by an *insured*; or
   (b) Property rented to or in charge of an *insured* other than a residence or private garage.

10. We do not cover an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

11. We do not cover:
    (a) The United States of America or any of its agencies;
    (b) Any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.

12. We do not cover *bodily injury* or property damage caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

13. *Bodily injury* or property damage that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

14. *Bodily injury* or property damage that results from bio-chemical attack or exposure to bio-chemical agents is not covered.

15. We do not cover any liability assumed under any contract or agreement.

16. Regardless of any other provision in this policy, there is no coverage for punitive or exemplary damages.

17. We do not cover *bodily injury* or property damage that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.

18. Section I does not apply to any vehicle used to carry persons for compensation or a fee. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

1. *You* and *your relatives*;

2. Any other person using the auto with *your* permission. The actual use must be within the scope of that permission;

3.  Any other person or organization for his or its liability because of acts or omissions of an *insured* under 1. or 2. above.

Section I applies to the following with regard to a *non-owned auto*:

1.  (a)  *You;*
    (b)  *Your relatives* when using a *private passenger, farm* or *utility auto* or *trailer.*

    Such use by *you* or *your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;

2.  A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

    The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

**FINANCIAL RESPONSIBILITY LAWS**

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

**OUT OF STATE INSURANCE**

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

**LIMITS OF LIABILITY**

Regardless of the number of autos or *trailers* to which this policy applies:

1.  The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability   for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

2.  The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

3.  The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

**OTHER INSURANCE**

If the *insured* has other insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over other valid and collectible insurance.

**CONDITIONS**

The following conditions apply to Section I:

1.  NOTICE

    As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

    (a)  The identity of the *insured*;
    (b)  The time, place and details of the occurrence;
    (c)  The names and addresses of the injured, and of any witnesses; and
    (d)  The names of the owners and the description and location of any damaged property.

    If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2.  TWO OR MORE AUTOS

    If this policy covers two or more autos, the limit of coverage applies separately to each.  An auto and an attached *trailer* are considered to be one auto.

3.  ASSISTANCE AND COOPERATION OF THE **INSURED**

    The *insured* will cooperate and assist us, if requested:

    (a)  In the investigation of the occurrence;
    (b)  In making settlements;
    (c)  In the conduct of suits;

(d) In enforcing any right of contribution or indemnity against any legally or responsible person or organization because of *bodily injury* or property damage;

(e) At trials and hearings;

(f) In securing and giving evidence; and

(g) By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

4. ACTION AGAINST US

No suit will lie against us:

(a) Unless the *insured* has fully complied with all the policy's terms and conditions, and

(b) Until the amount of the *insured's* obligation to pay has been finally determined, either:

    (i) By a final judgment against the *insured* after actual trial; or

    (ii) By written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

5. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

## SECTION II - AUTO MEDICAL PAYMENTS
### Protection For You And Your Passengers For Medical Expenses

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, *occupying* means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This Coverage applies to:

1. *You* and each *relative* who sustains *bodily injury* caused by accident:

(a) While *occupying* the *owned auto*; or

(b) While *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or

(c) When struck as a pedestrian by an auto or *trailer*.

2. Any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while being used by *you*, a resident of *your* household, or other persons with *your* permission.

**EXCLUSIONS**

**When Section II Does Not Apply**

1. There is no coverage for *bodily injury* sustained by any occupant of an *owned auto* used to carry goods for hire.

2. There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

3. *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:

(a) A farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or

(b) A vehicle operated on rails or crawler-treads.

4. There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.

5. There is no coverage for *bodily injury* sustained due to *war*.

6. The United States of America or any of its agencies are not covered as an *insured*, a third party beneficiary, or otherwise.

7. We do not cover *bodily injury* caused by an auto driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

8. There is no coverage for *bodily injury* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

9. There is no coverage for *bodily injury* that results from bio-chemical attack or exposure to bio-chemical agents.

10. There is no coverage for *bodily injury* that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.

11. There is no coverage for *bodily injury* sustained by any occupant of an *owned auto* used to carry persons for compensation or a fee. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**LIMIT OF LIABILITY**

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

**OTHER INSURANCE**

If the *insured* has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance .

**CONDITIONS**

The following conditions apply to this Coverage:

1. NOTICE

   As soon as possible after an accident, written notice must be given us or our authorized agent stating:

   (a) The identity of the *insured*;
   (b) The time, place and details of the accident; and
   (c) The names and addresses of the injured, and of any witnesses.

2. TWO OR MORE AUTOS

   If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. ACTION AGAINST US

   Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

4. MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

   As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

   The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

   We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

## SECTION III - PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Car

**DEFINITIONS**

The definitions of the terms *auto business, farm auto, private passenger auto, relative, temporary substitute auto, utility auto, you, your,* and *war* under Section I apply to Section III also.  Under this Section, the following special definitions apply:

1. *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment*.
2. *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.
3. *Collision* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.
4. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:
   (a) Are permanently installed or attached; or
   (b) Alter the performance of the vehicle.

   This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signal, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or newly acquired vehicle using bolts or brackets, including slide-out brackets.
5. *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.
6. *Insured* means:
   (a) Regarding the *owned auto*:
      (i) *You* and *your relative;*
      (ii) A person or organization maintaining, using or having custody of the auto with  *your* permission, if his use is within the scope of that permission.
   (b) Regarding a *non-owned auto*; *you* and *your relatives*, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.
7. *Loss* means direct and accidental loss of or damage to:
   (a) The auto, including its equipment; or
   (b) Other insured property.
8. *Non-owned auto* means a *private passenger, farm* or *utility* auto or *trailer* not owned by or furnished for the regular use of either *you* or *your relatives*, except a *temporary substitute auto*. *You* or *your relative* must be using the auto or *trailer* within the scope of permission given by its owner.  An auto rented or leased for more than 30 days will be considered as furnished for regular use.
9. *Owned auto* means:
   (a) Any vehicle described in this policy for which a specific premium charge indicates there is coverage;
   (b) A *private passenger, farm* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period; if
      (i) It replaces an *owned auto* as described in (a) above, or
      (ii) We insure all *private passenger, farm, utility autos* and *trailers* owned by *you* on the date of such acquisition and *you* request us to add it to the policy within 30 days afterward;
   (c) A *temporary substitute auto.*
10. *Trailer* means a trailer designed for use with a *private passenger auto* and not used as a home, office, store, display or passenger trailer.

**LOSSES WE WILL PAY FOR YOU**
**Comprehensive (Excluding *Collision*)**

1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision*, to the *owned* or *non-owned auto*. This includes breakage of glass and *loss* caused by:

| | | | |
|---|---|---|---|
| (a) Missiles; | (f) Larceny; | (k) Hail; | (p) Riot; or |
| (b) Falling objects; | (g) Explosion; | (l) Water; | (q) Civil commotion. |
| (c) Fire; | (h) Earthquake; | (m) Flood; | |
| (d) Lightning; | (i) Colliding with a bird or animal; | (n) Malicious mischief; | |
| (e) Theft; | (j) Windstorm; | (o) Vandalism; | |

No deductible will apply to *loss* caused by:

(a) Fire, lightning, smoke, smudge; or

(b) Damage sustained while the vehicle is being transported on any conveyance.

At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision Coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for *loss* to personal effects due to:

(a) Fire;                    (e) Falling objects;

(b) Lightning;               (f) Earthquake; or

(c) Flood;                   (g) Explosion.

(d) Theft of the entire automobile;

The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

No deductible will apply due to *loss* by fire or lightning.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

### Collision

1. We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

2. We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.

Reimbursement will not exceed $25 per day nor $750 per *loss*.

2. We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

### EXCLUSIONS

#### When The Physical Damage Coverages Do Not Apply

1. An auto used to carry goods for hire is not covered.

2. *Loss* due to *war* is not covered.

3. We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

4. There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. Tires, when they alone are damaged by *collision*, are not covered.

6. *Loss* due to radioactivity is not covered.

7. *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

8. We do not cover *loss* to any radar or laser detector.

9. We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger, farm* or *utility autos*.

10. We do not cover any physical damage to an auto being driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature whether or not prearrange or organized.

11. There is no coverage for *loss* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

12. There is no coverage for *loss* that results from bio-chemical attack or exposure to bio-chemical agents.

13. We do not cover *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

14. There is no coverage for any liability assumed under any contract or agreement.

15. There is no coverage for *loss* or damage resulting from:

(a) The acquisition of a stolen vehicle;

(b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or any claiming an ownership interest in the vehicle;

(c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities; or

(d) The sale of an *owned auto*.

16. There is no coverage for the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

17. We do not cover *loss* that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.

18. There is no coverage for any vehicle used to carry persons for compensation or a fee. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

## LIMIT OF LIABILITY

The limit of our liability for *loss*:

1. Is the *actual cash value* of the property at the time of the *loss*;

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs at the prevailing competitive price;

3. To personal effects arising out of one occurrence is $200;

4. To a *trailer* not owned by *you* is $500;

5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

   *Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

## OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro- rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance .

## CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

1. NOTICE

   As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:

   (a) The identity of the *insured*;

   (b) A description of the auto or *trailer*;

   (c) The time, place and details of the *loss*; and

   (d) The names and addresses of any witnesses.

   In case of theft, the *insured* must promptly notify the police.

2. TWO OR MORE AUTOS

   If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

3. ASSISTANCE AND COOPERATION OF THE *INSURED*

   The *insured* will cooperate and assist us, if requested:

   (a) In the investigation of the *loss*;

   (b) In making settlements;

   (c) In the conduct of suits;

   (d) In enforcing any right of subrogation against any legally responsible person or organization;

   (e) At trials and hearings;

   (f) In securing and giving evidence; and

   (g) By obtaining the attendance of witnesses.

4. ACTION AGAINST US

   Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

5. ***INSURED'S*** DUTIES IN EVENT OF *LOSS*

   In the event of *loss* the *insured* will:

   (a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.

   (b) File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.

   (c) At our request, the *insured* will exhibit the damaged property.

6. APPRAISAL

   If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

   We will not waive our rights by any of our acts relating to appraisal.

7. PAYMENT OF *LOSS*

   We may at our option:

   (a) Pay for the *loss*; or

   (b) Repair or replace the damaged or stolen property.

   At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

8. NO BENEFIT TO BAILEE

   This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

9. SUBROGATION

   When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

   This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

10. ASSIGNMENT

    With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

## SECTION IV - UNINSURED MOTORISTS COVERAGE

### Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured And *Hit-And-Run Motorists*

**DEFINITIONS**

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. ***Hit-and-run motor vehicle*** is a motor vehicle causing *bodily injury* to an *insured* through physical contact with him or with an auto he is *occupying* at the time of the accident and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

   (a) Reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

   (b) Files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and

   (c) Makes available for inspection, at our request, the auto *occupied* by the *insured* at the time of the accident.

2. ***Insured*** means:

   (a) The individual named in the declarations and his or her spouse if a resident of the same household;

   (b) ***Relatives*** of (a) above if residents of his household;

   (c) Any other person while *occupying* an *owned auto*;

    (d)  Any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

    If there is more than one *insured*, our limit of liability will not be increased.

3.  *Insured auto* is an auto:
    (a)  Described in the declarations and covered by the bodily injury liability coverage of this policy;
    (b)  Temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; or
    (c)  Operated by *you* or *your* spouse if a resident of the same household.
    But the term *insured auto* does not include:
    (i)  An auto used to carry passengers or goods for hire, except in a car pool;
    (ii)  An auto being used without the owner's permission; or
    (iii)  Under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

4.  *Occupying* means in, upon, entering into or alighting from.

5.  *State* includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

6.  *Underinsured motor vehicle* means a motor vehicle which has a liability bond or insurance that applies at the time of the accident but the limits of that insurance are less than the amount the *insured* is legally entitled to recover for damages.

7.  *Uninsured motor vehicle* is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the  *state* in which the *insured auto* is principally garaged at the time of an accident.  This term also includes an auto whose insurer is or becomes insolvent  or denies coverage and an *underinsured motor vehicle.*
    The term *uninsured motor vehicle* does not include:
    (a)  An *insured auto*;
    (b)  An auto owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;
    (c)  An auto owned by the United States of America, any other national government, a state, or a political subdivision of any such government or its agencies;
    (d)  A land motor vehicle or *trailer* operated on rails or crawler-treads or located for use as a residence or premises;
    (e)  A farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under the Uninsured Motorists Coverage we will pay damages for *bodily injury* caused by accident which the *insured* is legally entitled to recover from the owner or operator of an  *uninsured motor vehicle* or *hit-and-run motor vehicle* arising out of the ownership, maintenance or use of that auto.

The amount of the *insured's* recovery for these damages will be determined by agreement between the *insured* or his representative and us.  The dispute may be arbitrated if an agreement cannot be reached.

## EXCLUSIONS

### When Section IV Does Not Apply

1.  This Coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2.  There is no coverage for *bodily injury* sustained by an *insured* while operating, *occupying* or through being struck by a motor vehicle owned by or available for the regular use of  *you* or any *relative* and which is not insured under the liability coverage of this policy.

3.  The Uninsured Motorists Coverage will not benefit any workers' compensation insurer, self insurer, or disability benefits insurer.

4.  We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

5.  We do not cover any person while *occupying* a vehicle described in the declarations on which Uninsured Motorists Coverage is not carried.

6.  Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages under the Uninsured or Underinsured Motorists coverage of this policy.

7.  *Bodily injury* that results from nuclear exposure or explosion including resulting fire, radiation, or contamination is not covered.

8.  *Bodily injury* that results from bio-chemical attack or exposure to bio-chemical agent is not covered.

9. This coverage does not apply to any liability assumed under any contract or agreement.

10. This coverage does not apply to damage caused by an *insured's* participation in or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

11. There is no coverage for *bodily injury* that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* insured, persons covered or premiums paid for this policy:

1. The limit of liability for Uninsured Motorists Coverage stated in the declarations for "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident.

2. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of one accident.

3. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

   If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.

   The amount payable under this Coverage will be reduced by all amounts:

   (a) Paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy; or

   (b) Paid or payable under any worker's compensation law, disability benefits law or any similar law.

   We will pay, up to the limits selected, any amount of damages for *bodily injury* which the named insured is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of bodily injury carried by that owner or operator.

   The limitations in this paragraph apply:

   (a) Regardless of the number of Uninsured Motorists premiums paid;

   (b) Regardless of whether the *insured auto* is covered under a single, multi-vehicle policy, or under separate policies;

   (c) To insurance issued by us as well as other insurance.

4. **ANTI-STACKING**

   **IF *YOU* OR ANY OTHER *INSURED* IS IN AN ACCIDENT:**

   **(A) IN AN *INSURED AUTO* WE WILL NOT PAY MORE THAN THE LIMIT OF COVERAGE FOR THAT PARTICULAR *INSURED AUTO*.**

   **(B) IN A MOTOR VEHICLE OTHER THAN *YOUR INSURED AUTO* OR WHILE AS A PEDESTRIAN, WE WILL NOT PAY MORE THAN THE LIMIT OF COVERAGE WHICH *YOU* HAVE ON ANY ONE OF *YOUR INSURED AUTOS*.**

   **THIS LIMIT OF COVERAGE APPLIES REGARDLESS OF THE NUMBER OF POLICIES, *INSUREDS, YOUR INSURED AUTOS*, CLAIMS MADE, OR MOTOR VEHICLE INVOLVED IN THE ACCIDENT. COVERAGES ON OTHER MOTOR VEHICLES INSURED BY US CANNOT BE ADDED OR STACKED ON THE COVERAGE OF *YOUR INSURED AUTO* THAT COVERS THE LOSS.**

## OTHER INSURANCE

When an *insured* occupies an auto not described in this policy, this insurance is excess over any other similar insurance available to the *insured* and the insurance which applies to the occupied auto is primary.

Except as provided above, if the *insured* has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the *insured* has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

This provision will not apply if *you* have purchased separate coverage on the *insured auto* and have paid a premium calculated for full reimbursement under that coverage.

## ARBITRATION

Except as set forth in the last sentence of this paragraph, any dispute arising between any *insured* and us regarding:

   (a) The extent to which the *insured* is legally entitled to recover against an owner or operator of an *uninsured motor vehicle* (i.e., issues of liability); or

   (b) The amount of damages sustained by the *insured*

may be arbitrated. However, neither the *insured* nor we will be required to arbitrate unless arbitration is expressly required by state law. Unless so required, binding arbitration will not be used to resolve disputes regarding policy interpretation, the existence of this Coverage in a particular policy, or the application of this Coverage to a particular claim or claimant.

An award by any two arbitrators up to the per person financial responsibility or compulsory liability limit of the *state* in which the policy is rated shall be binding upon the parties.  When an award exceeds this per-person limit, either party shall have the right to a trial on all the issues in a court of competent jurisdiction.  This right must be exercised within 60 days of the award.  Where such right is exercised by either party, the judgment of the arbitrators shall not be binding on either party.

We will be obligated to pay no more than the applicable policy limits for this Coverage regardless of whether an arbitration results in an award in excess of the applicable policy limits for this Coverage as defined in this policy.

Unless otherwise required by state law, the method, manner and format of any arbitration process will be subject to agreement by *you* and us.  Attorney fees and expenses will be paid by the party incurring them.

**TRUST AGREEMENT**

When we make a payment under this Coverage:

1.  We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury*.

2.  The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages.  He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3.  At our written request, the *insured*, in his own name, will take, through a designated representative, appropriate actions necessary to recover payment for damages from the legally responsible person or organization.  The *insured* will pay us out of the recovery for our expenses, costs and attorneys' fees.

4.  The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following conditions apply only to the Uninsured Motorists Coverage:

1.  NOTICE

    As soon as possible after an accident, notice must be given us or our authorized agent stating:

    (a)  The identity of the *insured*;

    (b)  The time, place and details of the accident; and

    (c)  The names and addresses of the injured, and of any witnesses.

    If the *insured* or his legal representative files suit before we make a settlement under this Coverage, he must immediately provide us with a copy of the pleadings.

2.  ASSISTANCE AND COOPERATION OF THE **INSURED**

    After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization.  We may require the *insured* to make that person or organization a defendant in any action against us.

3.  ACTION AGAINST US

    Suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms.

4.  PROOF OF CLAIM - MEDICAL REPORTS

    As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required.  This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

    Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

    The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require.  In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

5.  PAYMENT OF LOSS

    Any amount due is payable:

    (a)  To the *insured* or his authorized representative;

    (b)  If the *insured* is a minor, to his parent or guardian; or

    (c)  If the *insured* is deceased, to his surviving spouse; otherwise

    (d)  To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

    We may, at our option, pay an amount due in accordance with (d) above.

## SECTION V - GENERAL CONDITIONS

These conditions apply to all Coverages in this policy.

1.  **TERRITORY - POLICY PERIOD**

    This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

    Unless otherwise canceled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

2.  **PREMIUM**

    When *you* dispose of, acquire ownership of, or replace a *private passenger*, *farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3.  **CHANGES**

    The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

    We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

    The premium for each auto is based on the information we have in *your* file. *You* agree:

    (a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

    (b) That *you* will cooperate with us in determining if this information is correct and complete.

    (c) That *you* will notify us of any changes in this information.

    Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

4.  **ASSIGNMENT**

    *Your* rights and duties under this policy may not be assigned without our written consent.

    If *you* die, this policy will cover:

    (a) *Your* surviving spouse;

    (b) The executor or administrator of *your* estate, but only while operating an *owned auto* and while acting within the scope of his duties;

    (c) Any person having proper temporary custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate; and

    (d) Under the Medical Payments Coverage, a person who was a *relative* at the time of *your* death.

5.  **CANCELLATION BY THE *INSURED***

    *You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

    If this policy is canceled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

6.  **CANCELLATION BY US**

    We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective.

    We will mail this notice:

    (a) 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due;

    (b) 10 days in advance if the policy has been in effect for less than 70 days at the time notice of cancellation is mailed and this is not a renewal policy;

    (c) 30 days in advance in all other cases.

    The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

    If this policy is canceled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. Payment or tender of unearned premium is not a condition of cancellation.

7.  **CANCELLATION BY US IS LIMITED**

    After this policy has been in effect for 70 days or, if the policy is a renewal, effective immediately, we will not cancel except for any of the following reasons:

    (a) Failure to pay a premium when due;

    (b) Conviction of the *insured* of a crime arising out of acts increasing the hazard insured against;

(c) Discovery of fraud or misrepresentation in the obtaining of the policy or in the presentation of a claim thereunder;

(d) Discovery of:

    (1) An act or omission; or

    (2) A violation of any condition of the policy, which occurred after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed.

(e) A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed.

(f) A determination by the Commissioner that a continuation of the insurer's present volume of premiums would jeopardize the insurer's solvency or be hazardous to the interests of policyholders of the insurer, its creditors or public; or

(g) A determination by the Commissioner that the continuation of the policy would violate, or place the insurer in violation of, any provision of the Code.

We have the right, at renewal, to modify the Comprehensive Coverage under Section III by offering a higher deductible.

Our failure to cancel for any reasons listed above will not obligate us to renew the policy.

**8.** RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to **you**, at the address shown in this policy, at least 30 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

(a) **You** do not pay any premium as we require to renew this policy.

(b) **You** have informed us or our agent that **you** wish the policy to be canceled or not renewed.

(c) **You** do not accept our offer to renew or **you** refuse to provide us with renewal classification and rating information as we may require.

**9.** OTHER INSURANCE

If other insurance is obtained on **your** insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**10.** DIVIDEND PROVISION

**You** may be entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

**11.** DECLARATIONS

By accepting this policy, **you** agree that:

(a) The statements in **your** application and in the declarations are **your** agreements and representations;

(b) This policy is issued in reliance upon the truth of these representations; and

(c) This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**12.** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) At the time of application; or

(b) At any time during the policy period; or

(c) In connection with the presentation or settlement of a claim.

**13.** EXAMINATION UNDER OATH

The **insured** or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

**14.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Nevada are amended to conform to those statutes.

**15.** DISPOSAL OF VEHICLE

If **you** relinquish possession of a leased vehicle or if **you** sell or relinquish ownership of an **owned auto**, any coverage provided by this policy for that vehicle will terminate on the date **you** do so.

**16.** CHOICE OF LAW

The policy and any amendment(s) or endorsement(s) are to be interpreted pursuant to the laws of the state of Nevada.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

1. SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

   A. Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

      1. Motor vehicles owned or leased by the United States Government or any of its agencies, or
      2. Rented motor vehicles used for United States Government business,

      when such use is with the permission of the United States Government.  Subject to the limits described in paragraph B.  below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

   B. The following limits apply to this Coverage:

      1. A $100 deductible applies to each occurrence.
      2. For vehicles described in **A.1.** above, our liability shall not exceed the lesser of the following:
         (a) The *actual cash value* of the property at the time of the occurrence; or
         (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
         (c) Two months basic pay of the *insured*; or
         (d) The limit of Property Damage liability coverage stated in the declarations.
      3. For vehicles described in **A.2.** above, our liability shall not exceed the lesser of the following:
         (a) The *actual cash value* of the property at the time of the occurrence; or
         (b) The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
         (c) The limit of Property Damage liability coverage stated in the declarations.

   This insurance is excess over other valid and collectible insurance.

W.C.E. Robinson
Secretary

O. M. Nicely
President

# EXHIBIT C

**GEICO**

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

# Maine
# Family
# Automobile
# Insurance
# Policy

A-30ME (08-11)

## POLICY INDEX

Page

### SECTION I

**Liability Coverages**
**Your Protection Against Claims From Others**

Definitions............................................................ 3
Losses We Will Pay For You................................ 4
Additional Payments We Will Make Under The
    Liability Coverages........................................... 4
    Legal Expenses And Court Costs
    Bail And Appeal Bonds
    First Aid Expenses
Exclusions: When Section I Does Not Apply............ 4
Persons Insured: Who Is Covered........................... 5
Financial Responsibility Laws ................................. 5
Out Of State Insurance........................................... 5
Limits Of Liability .................................................. 5
Other Insurance..................................................... 6
Conditions............................................................. 6
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

### SECTION II

**Auto Medical Payments Coverage**
**Protection For You And Your Passengers For Medical**
**Expenses**

Definitions ........................................................... 6
Payments We Will Make......................................... 7
Exclusions: When Section II Does Not Apply........... 7
Limit Of Liability ................................................... 7
Other Insurance..................................................... 7
Conditions............................................................. 8
    Notice
    Two Or More Autos
    Action Against Us
    Medical Reports - Proof And Payment Of Claims
    Subrogation

### SECTION III

**Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions............................................................ 9
Losses We Will Pay................................................ 9
    Comprehensive Coverage................................. 9
    Collision Coverage.......................................... 9
Additional Payments We Will Make Under The
    Physical Damage Coverages............................. 9
    Car Rental If Your Car Is Stolen
Exclusions:  When The Physical Damage
    Coverages Do Not Apply................................. 10
Limit Of Liability ................................................... 10
Other Insurance..................................................... 11

Page

Conditions............................................................. 11
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation

### SECTION IV

**Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By Uninsured**
**And Hit And Run Motorists**

Definitions ........................................................... 12
Losses We Pay...................................................... 13
Exclusions:  When Section IV Does Not Apply........ 13
Limits Of Liability ................................................. 14
Other Insurance.................................................... 14
Arbitration............................................................ 14
Trust Agreement................................................... 14
Conditions............................................................ 15
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Proof Of Claim - Medical Reports
    Payment Of Loss

### SECTION V

**General Conditions**
**The Following Apply To All Coverages In This Policy**

Territory .............................................................. 15
Premium............................................................... 15
Changes............................................................... 16
Assignment........................................................... 16
Policy Period......................................................... 16
Cancellation By The Insured.................................. 16
Cancellation By Us................................................ 16
Cancellation By Us Is Limited................................ 16
Renewal............................................................... 16
Other Insurance.................................................... 17
Dividend Provision ............................................... 17
Declarations......................................................... 17
Fraud And Misrepresentation................................ 18
Examination Under Oath....................................... 18
Disposal of Vehicle............................................... 18
Terms Of Policy Conformed To Statutes................18
Choice of Law...................................................... 18

### SECTION VI

**Amendments And Endorsements**

Special Endorsement

    United States Government Employees .............18

Whenever he, his, him, himself appears in this policy, *you* may read she, her, hers, or herself.

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you*, the policyholder. Relying on the information *you* have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

## SECTION I
## Liability Coverages

**Your Protection Against Claims From Others**
**Bodily Injury Liability**
**Property Damage Liability**
**DEFINITIONS**
The words italicized in Section I of this policy are defined below.

1.  *Auto business* means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.
2.  *Bodily injury* means bodily injury to a person, including resulting sickness, disease or death.
3.  *Farm auto* means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, that is not used for commercial purposes other than farming.
4.  *Insured* means a person or organization that is described under PERSONS INSURED.
5.  *Non-owned auto* means an automobile or *trailer* that is not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto that is rented or leased for more than 30 days will be considered as furnished for regular use.
6.  *Owned auto* means:
    (a) a vehicle that is described in this policy and for which a premium charge is shown for these coverages;
    (b) a *trailer* that is owned by *you*;
    (c) a *private passenger auto*, *farm auto* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period that is for a term of six months or more, if
        (i) it replaces an *owned auto* as defined in (a) above; or
        (ii) we insure all
            a) *private passenger autos*;
            b) *farm autos*; and
            c) *utility autos* that are owned or leased by *you* on the date of the acquisition
        and *you* ask us to add it to the policy no more than 30 days later;
    (d) a *temporary substitute auto*.
7.  *Personal vehicle sharing program* means a business, organization, network or group facilitating the sharing of private passenger vehicles for use by individuals or businesses.
8.  *Private passenger auto* means a four-wheel private passenger, station wagon or jeep-type auto.
9.  *Relative* means a person that is related to *you* by blood, marriage or adoption and who resides in *your* household. This includes a ward or foster child.
10. *Temporary substitute auto* means an automobile or *trailer*, not owned by *you*, that is temporarily used with the permission of the owner. It must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its:
    (a) breakdown;
    (b) repair;
    (c) servicing;
    (d) loss; or
    (e) destruction.
11. *Trailer* means a trailer designed to be towed by a *private passenger auto*, if it is not being used for business or commercial purposes with a vehicle other than a *private passenger auto*, *farm auto* or *utility auto*.
12. *Utility auto* means a vehicle, other than a *farm auto*, with a gross vehicle weight of 15,000 pounds or less that is of the pick-up body, van or panel truck type not used for commercial purposes.
13. *War* means:
    (a) armed conflict among nations, whether or not declared;
    (b) civil war;
    (c) insurrection;
    (d) rebellion; or
    (e) revolution.
14. *You* and *your* means the named insured shown in the declarations or his or her spouse if he or she is a resident of the same household

**LOSSES WE WILL PAY FOR YOU**
**UNDER SECTION I**
Under Section I, we will pay damages which an *insured* becomes legally obligated to pay due to:
1. *bodily injury*, that is sustained by a person; and
2. damage to or destruction of property
that arises out of the ownership, maintenance or use of the *owned auto* or of a *non-owned auto*.
We will defend any suit for damages that are payable under the terms of this policy.  We may investigate and settle any claim or suit.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES**
1. We will pay all investigative and legal costs that are incurred by us.
2. We will pay all court costs that are charged to an *insured* in a covered lawsuit.
3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:
   (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;
   (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage. Interest calculated after the judgment will be provided in accordance with Maine law.
4. We will pay premiums for appeal bonds in a suit that we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.
5. We will pay premiums for bail bonds that are paid by an *insured* and are due to traffic law violations arising out of the use of an *owned auto* or *non-owned auto*, not to exceed $250 per bail bond.
6. We will upon request by an *insured*, provide reimbursement for the following items:
   (a) We will pay costs that are incurred by any *insured* for first aid to others at the time of an accident involving an *owned auto* or *non-owned auto*.
   (b) We will pay for loss of earnings up to $50 a day, but not for other income, if we request an *insured* to attend hearings and trials.
   (c) We will pay all reasonable costs that are incurred by an *insured* at our request.

**EXCLUSIONS**
**When Section I Does Not Apply**
Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.
1. Section I does not apply to any vehicle that is used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products.  However, a vehicle that is used in an ordinary car pool on a ride or cost sharing basis is covered.
2. *Bodily injury* or property damage that is caused intentionally by or at the direction of an *insured* is not covered.
3. We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy.
4. *Bodily injury* or property damage that arises from the operation of farm machinery is not covered.
5. *Bodily injury* to an employee of an *insured* that arises out of and in the course of employment by an *insured* is not covered.
   However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' compensation law.
6. We do not cover *bodily injury* to a fellow employee of an *insured* if the fellow employee's *bodily injury* arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available.  We will defend *you* if suit is brought by a fellow employee against *you* alleging use, ownership or maintenance of an auto by *you*.
7. We do not cover an *owned auto* while used by a person (other than *you* or a *relative*) when he is employed or otherwise engaged in the *auto business*.
8. A *non-owned auto* while maintained or used by any person is not covered while such person is employed or otherwise engaged in (1) any *auto business*, if the accident arises out of that business; (2) any other business or occupation of any *insured*, if the accident arises out of that business or occupation, except a *private passenger auto* used by *you* or *your* chauffeur or domestic servant while engaged in such other business.
9. We do not cover damage to:
   (a) property that is owned, operated, transported or used by an *insured*; or
   (b) property that is rented to or in charge of an *insured* other than a residence or private garage.
10. We do not cover an auto that is acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.
11. We do not cover:
    (a) the United States of America or any of its agencies;
    (b) any person, including *you*, if covered by the Federal Tort Claims Act.
12. We do not cover *bodily injury* or property damage that results from the operation of a *non-owned auto* or *temporary substitute auto* that is designed for use principally off public roads that is not registered for use on public roads.

13. We do not cover *bodily injury* or property damage that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.
14. We do not cover *bodily injury* or property damage that results from bio-chemical attack or exposure to bio-chemical agents is not covered.
15. Section I does not apply:
    (a) To *bodily injury* or property damage caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.
    (b) To the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
16. We do not cover any liability assumed under any contract or agreement.
17. We do not cover punitive or exemplary damages recovered or potentially recoverable from any insured arising from the use or abuse of alcohol, medication or drugs.
18. We do not cover *bodily injury* or property damage due to the discharge of a weapon or the throwing or ejecting of any projectile is not covered.
19. An order of restitution awarded in a criminal proceeding or equitable action is not covered.
20. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

**PERSONS INSURED**
**Who Is Covered**
Section I applies to the following as *insureds* with regard to an *owned auto*:
1. *you*;
2. *your relatives*;
3. any other person using the auto with *your* permission.  The actual use must be within the scope of that permission;
4. any other person or organization for his or its liability because of acts or omissions of an *insured* under 1., 2. or 3. above.
Section I applies to the following with regard to a *non-owned auto*:
1. (a) *you*;
    (b) *your relatives* when using a *private passenger auto*, *farm auto* or *utility auto* or *trailer*.

    Such use by *you* or *your relatives* must be:
    (a) with the permission, or
    (b) reasonably believed to be with the permission
    of the owner and within the scope of that permission.
2. a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.
    The limits of liability stated in the declarations are the most we will pay regardless of the number of *insureds* involved in the occurrence.

**FINANCIAL RESPONSIBILITY LAWS**
When this policy is certified as proof of financial  responsibility for the future under the provisions of a  motor vehicle financial responsibility law, this liability  insurance will comply with the provisions of that law.   The *insured* agrees to reimburse us for payments that are  made by us which we would not have had to make except for this agreement.

**OUT OF STATE INSURANCE**
When the policy applies to the operation of a motor  vehicle when outside of *your* state, we agree to increase *your* coverages to the extent that is required of out-of- state motorists by local law.  This additional coverage  will be reduced to the extent that *you* are protected by another insurance policy.  No person can be paid more than once for any item of loss.

**LIMITS OF LIABILITY**
Regardless of the number of autos or *trailers* to which this policy applies:
1. The limit of bodily injury liability that is stated in the declarations as applicable to "each person" is the most we will pay for all damages, including damages for care and loss of services, because of *bodily injury* that is sustained by one person as the result of one occurrence.
2. The limit of such liability that is stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the most we will pay for all such damages, including damages for care and loss of services, because of *bodily injury* that is sustained by two or more persons as the result of any one occurrence.
3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the most we will pay for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

**OTHER INSURANCE**

If the *insured* has other insurance against a loss that is covered by Section I of this policy, we will not owe  more than our pro-rata share of the total coverage avail able.

Any insurance that we provide for losses arising out of the ownership, maintenance or use of a vehicle that *you* do not own shall be excess over other insurance that is valid and collectible.

**CONDITIONS**

The following conditions apply to Section I:

1.   NOTICE

As soon as possible after an occurrence, written notice must be given to us or to our authorized agent  stating:

(a)  the identity of the *insured*;

(b)  the time, place and details of the occurrence;

(c)  the names and addresses of the injured, and of any witnesses; and

(d)  the names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, he must promptly send to us each demand, notice, summons or other process received.

2.   TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each.  An auto and an attached *trailer* are considered to be one auto.

3.   ASSISTANCE AND COOPERATION OF THE  INSURED

The *insured* will cooperate and assist us, if we request:

(a)  in the investigation of the occurrence;

(b)  in making settlements;

(c)  in the conduct of suits;

(d)  in enforcing any right of contribution or indemnity against any legally responsible person or organization that is due to *bodily injury* or property damage;

(e)  at trials and hearings;

(f)  in securing and giving evidence; and

(g)  by obtaining the attendance of witnesses.

Only at his own cost will the *insured:*

(a)  make a payment;

(b)  assume any obligation; or

(c)  incur any cost

other than for first aid to others.

4.   ACTION AGAINST US

No suit will lie against us:

(a)  unless the *insured* has fully complied with all of  the policy's terms and conditions, and

(b)  until the amount of the *insured's* obligation to pay has been finally determined, either:

(i)   by a final judgment against the *insured* after an actual trial; or

(ii)  by written agreement of the *insured*, the claimant and us.

A person or organization, or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the  *insured* or his estate will not relieve us of our obligations.

5.   SUBROGATION

When payment is made under this policy, we will  be subrogated to all of the *insured's* rights of recovery against others.  The *insured* will help us to enforce these rights.  The *insured* will do nothing after loss to prejudice these rights.

This means that we will have the right to sue for or  otherwise recover the loss from anyone else who may be held responsible.

---

**SECTION II**
**Auto Medical Payments**

**Protection For You And Your Passengers For Medical Expenses**

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage.  In addition, under this Coverage, *occupying* means:

(a)  in; or

(b)  upon; or

(c)  entering into; or

(d)  alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses that are for necessary:

(a)  medical;
(b)  surgical;
(c)  x-ray; and
(d)  dental services;
(e)  prosthetic devices; and
(f)  ambulance;
(g)  hospital;
(h)  professional nursing; and
(i)  funeral

services that are actually incurred by an *insured* within three years from the date of the accident.

This Coverage applies to:

1. *you* and each *relative* who sustains *bodily injury* caused by accident:
    (a) while *occupying* the *owned auto*; or
    (b) while *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe that *you* have the owner's permission to use the auto and the use is within the scope of that permission; or
    (c) when struck as a pedestrian by an auto or *trailer*.
2. any other person who sustains *bodily injury* that is caused by accident while *occupying* the *owned auto* while being used by:
    (a) *you*;
    (b) a resident of *your* household; or
    (c) other persons with *your* permission.

**EXCLUSIONS**

**When Section II Does Not Apply**

1. There is no coverage for *bodily injury* that is sustained by any occupant of an *owned auto* that is used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products. However, a vehicle that is used in an ordinary car pool on a ride sharing or cost sharing basis is covered.
2. There is no coverage for an *insured* while *occupying* a vehicle that is located for use as a residence or premises.
3. *You* and *your relatives* are not covered for *bodily injury* that is sustained while *occupying* or when struck by:
    (a) a farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or
    (b) a vehicle that is operated on rails or crawler treads.
4. There is no coverage for persons that are employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.
5. *Bodily injury* sustained due to *war* is not covered.
6. The United States of America or any of its agencies are not covered as an *insured*, a third party beneficiary, or otherwise.
7. Section II does not apply:
    (a) To *bodily injury* caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.
    (b) To the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
    This exclusion only applies to covered medical payments which exceed $2,000.
8. There is no coverage for *bodily injury* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.
9. There is no coverage for *bodily injury* that results from bio-chemical attack or exposure to bio-chemical agents.
10. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

**LIMIT OF LIABILITY**

The limit of liability for medical payments that is stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons that are insured or the number of autos or *trailers* to which this policy applies.

**OTHER INSURANCE**

If the *insured* has other medical payments insurance against a loss that is covered by Section II of this policy, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle that *you* do not own shall be excess over any other insurance that is valid and collectible.

## CONDITIONS

The following conditions apply to this Coverage:

1. **NOTICE**

   As soon as possible after an accident, written notice must be given to us or to our authorized agent stating:

   (a) the identity of the *insured*;

   (b) the time, place and details of the accident; and

   (c) the names and addresses of the injured, and of any witnesses.

2. **TWO OR MORE AUTOS**

   If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. **ACTION AGAINST US**

   Suit will not lie against us unless the *insured* has fully complied with all of the policy terms.

4. **MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS**

   As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. At our request, he will give us written authority to obtain medical reports and copies of records.

   The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

   We may pay either:

   (a) the injured person;

   (b) the doctor; or

   (c) other persons or organizations rendering medical services.

   These payments are made without regard to fault or legal liability of the *insured*.

5. **SUBROGATION**

   When we make a payment under this coverage, our procedures for medical payments subrogation will be in accordance with Maine law. Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them. This means that we may have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

## SECTION III

### Physical Damage Coverages

**Your Protection For Loss Or Damage To Your Car**

**DEFINITIONS**

The definitions of the terms *auto business, farm auto, personal vehicle sharing program, private passenger auto, relative, temporary substitute auto, utility auto, you* and *war* under Section I apply to Section III also. Under this Section, the following special definitions apply:

1. *Actual cash value* is the replacement cost of the auto or property less *depreciation*.

2. *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.

3. *Collision* means *loss* that is caused by:

   (a) upset of the covered auto; or

   (b) its collision with another object, including an attached vehicle.

4. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

   (a) Are permanently installed or attached; or

   (b) Alter the appearance or performance of a vehicle; this includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

5. *Depreciation* means a decrease or loss in value to the auto or property due to:

   (a) use;                                           (b) disuse;

   (c) physical wear and tear;                (d) age;

   (e) outdatedness; or                         (f) other causes.

6. *Insured* means:

   (a) regarding the *owned auto*:

      (i) *you* and *your relatives*;

      (ii) a person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the scope of that permission.

   (b) regarding a *non-owned auto*; *you* and *your relatives*, using the auto, if the actual operation or use is with the permission or is reasonably believed to be with the permission of the owner and is within the scope of that permission.

7. **Loss** means direct and accidental loss of or damage to:
   (a) the auto, including its equipment; or
   (b) other insured property.
8. **Non-owned auto** means a **private passenger auto**, **farm auto**, **utility auto** or **trailer** that is:
   (a) not owned by; or
   (b) not furnished for the regular use of either **you** or **your relatives**, except a **temporary substitute auto**. **You** or **your relative** must be using the auto or trailer within the scope of permission that is given by its owner. An auto that is rented or leased for more than 30 days is furnished for regular use.
9. **Owned auto** means:
   (a) any vehicle that is described in this policy and for which a specific premium charge indicates that there is coverage;
   (b) a **private passenger auto**, **farm auto** or **utility auto** or a **trailer**, ownership of which is acquired by **you** during the policy period or for which **you** enter into a lease during the policy period for a term of six months or more; if
      (i) it replaces an **owned auto** as described in (a) above, or
      (ii) we insure all **private passenger autos**, **farm autos**, **utility autos** and **trailers** that are owned or leased by **you** on the date of such acquisition and **you** request us to add it to the policy within 30 days afterward;
   (c) a **temporary substitute auto**.
10. **Trailer** means a trailer that is designed to be towed by a **private passenger auto** and which is not used as a home, residence, office, store, display or passenger trailer. **Trailer** does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

## LOSSES WE WILL PAY FOR YOU
### Comprehensive (Excluding **Collision**)
1. We will pay for each **loss**, less the applicable deductible, that is caused other than by **collision**, to the **owned auto** or **non-owned auto**. This includes breakage of glass and **loss** that is caused by:

| | | | | |
|---|---|---|---|---|
| (a) missiles; | (b) falling objects; | (c) fire; | (d) lightning; | (e) theft; |
| (f) larceny; | (g) explosion; | (h) earthquake; | (i) colliding with a bird or animal | |
| (j) windstorm; | (k) hail; | (l) water; | (m) flood; | |
| (n) malicious mischief; | (o) vandalism | (p) riot; or | (q) civil commotion. | |

At the option of the **insured**, breakage of glass caused by **collision** may be paid under the Collision Coverage, if it is included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for **loss** to personal effects due to:

| | | |
|---|---|---|
| (a) fire; | (b) lightning; | (c) flood; |
| (d) theft of the entire automobile; | (e) falling objects; | (f) earthquake or; |
| | | (g) explosion. |

The property must be owned by:
   (a) **you** or a **relative**; and
   (b) must be in or upon an **owned auto**.
3. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

### Collision
1. We will pay for **collision loss** to the **owned auto** or **non-owned auto** for the amount of each **loss** less the applicable deductible.
2. We will pay up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects that is due to a **collision**. The property must be owned by **you** or a **relative**, and it must be in or upon an **owned auto**.
3. **Losses** that arise out of a single occurrence shall be subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES
1. We will reimburse the **insured** for transportation expenses that are incurred during the period beginning 48 hours after a theft of the entire auto that is covered by Comprehensive Coverage under this policy has been reported to us and the police. Payment ends when the auto is returned to use or we pay for the **loss**.
   This payment will not exceed $25 per day nor $750 per **loss**.
2. We will pay general average and salvage charges for which the **insured** becomes legally liable when the auto is being transported.

**EXCLUSIONS**

**When The Physical Damage Coverages Do Not Apply**

1.  We do not cover an auto used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products.  However, a vehicle that is used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2.  We do not cover *loss* that is due to *war* .

3.  We do not cover *loss* to a *non-owned auto* when it is used by the *insured* in the *auto business*.

4.  There is no coverage for *loss* caused by and limited to:
    (a) wear and tear;
    (b) freezing; or
    (c) mechanical or electrical breakdown or failure
    unless that damage results from a covered theft.

5.  We do not cover road damage to tires.

6.  We do not cover *loss* due to radioactivity.

7.  We do not cover *loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound.

8.  We do not cover *loss* to any radar or laser detector.

9.  We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger auto*, *farm auto* or *utility autos*.

10. We do not cover loss to an:
    (a) *owned auto;* or
    (b) *non-owned auto* that results from destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activities.

11. There is no coverage for loss that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

12. There is no coverage for loss that results from bio-chemical attack or exposure to bio-chemical agents.

13. Section III does not apply:
    (a) To any *loss* caused by participation in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged.
    (b) To any *loss* caused by the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving.  This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

14. We do not cover *loss* for *custom parts or equipment*, in excess of $1,000, unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been issued.

15. There is no coverage for any liability assumed under any contract or agreement.

16. There is no coverage for *loss* resulting from:
    (a) the acquisition of a stolen vehicle;
    (b) any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c) any confiscation, seizure or impoundment of a vehicle by governmental authorities; or
    (d) the sale of an *owned auto*.

17. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

18. There is no coverage for any damage arising out of, resulting from, caused by or attributed to electromagnetic radiation including but not limited to electromagnetic radiation caused by solar flare, solar wind, solar radiation, solar activity, solar phenomena, solar storm, magnetic storm or magnetic field.

**LIMIT OF LIABILITY**

The limit of our liability for *loss*:

1.  is the *actual cash value* of the property at the time of the *loss*;

2.  will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts including parts from non-original equipment manufacturers, with other that is of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss*.  Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility.  At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

3.  to personal effects arising out of one occurrence is $200;

4.  to a *trailer* that is not owned by *you* is $500;

5.   for *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.  However, the most we will pay for *loss* to *custom parts or equipment* is $1,000, unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

*Actual cash value* of property will be determined at the time of the *loss* and will be adjusted for:
(a) *depreciation*;
(b) *betterment*; and for
(c) physical condition.

**OTHER INSURANCE**

If the *insured* has other insurance against a *loss* that is covered by Section III, we will not owe more than our pro-rata share of the total coverage that is available.

Any insurance we provide for a vehicle that *you* do not own shall be excess over any other insurance that is valid and collectible.

**CONDITIONS**

The following conditions apply only to the Physical Damage Coverages:

1.   NOTICE
As soon as possible after a *loss*, written notice must be given to us or to our authorized agent stating:
(a) the identity of the *insured;*
(b) a description of the auto or *trailer;*
(c) the time, place and details of the *loss*; and
(d) the names and addresses of any witnesses.
In case of theft, the *insured* must promptly notify the police.  In the case of theft of the entire auto, the *insured* must promptly notify the police  that the vehicle was stolen. To be eligible as a covered  *loss*, the police report must acknowledge and classify the report as theft of a motor vehicle.  Th e *insured* must cooperate fully: with the policy investigation, with the prosecution of any person(s) charged with theft and any civil suit brought by  *us* against the person(s) responsible to recover for the *loss*.

2.   TWO OR MORE AUTOS
If this policy covers two or more autos or *trailers*:
(a) the limit of coverage; and
(b ) any deductibles  apply separately to each.

3.   ASSISTANCE AND COOPERATION OF THE
*INSURED*
The *insured* will cooperate and assist us, if requested:
(a) in the investigation of the  *loss*;
(b) in making settlements;
(c) in the conduct of suits;
(d) in enforcing any right of subrogation against any legally responsible person or organization;
(e) at trials and hearings;
(f) in securing and giving evidence; and
(g) by obtaining the attendance of witnesses.

4.   ACTION AGAINST US  Suit will not lie against us unless:
(a)  the policy terms have been complied with; and
(b)  until 30 days after proof of loss is filed and the amount of  *loss* is determined.
If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding.  If  *you* ask us immediately after a  *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days.   *You* may purchase the salvage from us if  *you* wish.

5.   *INSURED'S* DUTIES IN EVENT OF  *LOSS*
In the event of  *loss* the *insured* will:
(a) Protect the auto, whether or not the  *loss* is covered by this policy.  Further *loss* due to the *insured's* failure to protect the auto will not be covered.  Reasonable expenses that are incurred for this protection will be paid by us.
(b)  File with us, within 91 days after  *loss*, his sworn proof of loss including all information that we may reasonably require.
(c)  At our request, the *insured* will exhibit the damaged property.

6.   APPRAISAL
If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the  *loss*.  In that event, we and the *insured* will each select a competent appraiser.  The appraisers will select a competent and disinterested umpire.  The appraisers will state separately the *actual cash value* and the amount of the *loss*.  If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*.  We and the *insured* will each pay his chosen appraiser.  We will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

7. PAYMENT OF *LOSS*
   We may at our option:
   (a) pay for the *loss*; or
   (b) repair or replace the damaged or stolen property.
   At any time before the *loss* is paid or the property is replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for the covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or with the owner of the property.

8. NO BENEFIT TO BAILEE
   This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire that is liable for the *loss* of the auto.

9. SUBROGATION
   When payment is made under this policy, we will be subrogated to all of the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights.  The *insured* will do nothing after *loss* to prejudice these rights.
   This means that we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

10. ASSIGNMENT
    With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent.  Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

## SECTION IV
## Uninsured Motorists Coverage

**Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists**
**DEFINITIONS**
The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. *Hit-and-run auto* is a motor vehicle that causes *bodily injury* to an *insured* and whose operator or owner cannot be identified, if the *insured* or someone on his behalf:
   (a) reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
   (b) files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against a person that is unidentified; and
   (c) makes available for inspection, at our request, the auto that was *occupied* by the *insured* at the time of the accident.
   The *hit-and-run auto* does not have to make contact with the *insured* or the vehicle the *insured* is *occupying* if it can be proved through competent evidence that the *bodily injury* was caused by the unidentified owner or operator.

2. *Insured* means:
   (a) the named insured shown in the declarations; and
   (b) his or her spouse if a resident of the same household;
   (c) *relatives* of (a) above if residents of his household;
   (d) any other person while *occupying* an *owned auto*;
   (e) any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), (c) or (d) above.
   If there is more than one *insured*, our limit of liability will not be increased.

3. *Insured auto* is an auto:
   (a) that is described in the declarations and that is covered by the bodily injury liability coverage of this policy;
   (b) that is temporarily substituted for an *insured auto* when it is withdrawn from normal use because of its:
       (i) breakdown;
       (ii) repair;
       (iii) servicing;
       (iv) loss; or
       (v) destruction, or
   (c) that is operated by *you* or *your* spouse if a resident of the same household.
   But the term *insured auto* does not include:
   (a) an auto that is used to carry passengers or goods for hire, except in a car pool;
   (b) an auto that is being used without the owner's permission; or
   (c) under subparagraphs (b) and (c) above, an auto that is owned by or that is furnished for the regular use of an *insured*.

4. **Occupying, occupied, occupies** means:
    (a) in;
    (b) upon;
    (c) entering into; or
    (d) alighting from.
5. **Relative** means a person that is related to **you** by blood, marriage or adoption and who resides in **your** household. This includes a ward or foster child.
6. **State** includes:
    (a) the District of Columbia;
    (b) the territories and possessions of the United States; and
    (c) the provinces of Canada.
7. **Underinsured auto** is an auto for which the total of all bodily injury liability insurance that is available in the event of an accident is less than the applicable limit of liability under this coverage.
8. **Uninsured auto** is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits that comply with the financial responsibility law of the **state** in which the **insured auto** is principally garaged at the time of an accident.  This term also includes an auto whose insurer is or becomes insolvent or denies coverage.
    The term **uninsured auto** does not include:
    (a) an **insured auto**;
    (b) an auto that is owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;
    (c) a land motor vehicle or **trailer** that is operated on rails or crawler-treads or that is located for use as a residence or premises; or
    (d) a farm-type tractor or equipment that is designed for use principally off public roads, except while used upon public roads.

**LOSSES WE PAY**

Under the Uninsured Motorists Coverage we will pay damages for **bodily injury:**
    (a) that is caused by accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured auto**, an **underinsured auto** or a **hit-and-run auto** that arise out of the ownership, maintenance or use of that auto.
    (b) sustained by an **insured** that is caused by accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured auto**, an **underinsured auto** or a **hit-and-run auto** that arise out of the ownership, maintenance or use of that auto.
    The amount of the **insured's** recovery for these damages will be set by agreement between the **insured** or his representative and us. The dispute may be arbitrated if we do not agree.

**EXCLUSIONS**

**When Section IV Does Not Apply**

1. This Coverage does not apply to **bodily injury** to an **insured** if the **insured** or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.
2. **Bodily injury** to an **insured**:
    (a) while **occupying**; or
    (b) through being struck by an **uninsured auto** owned by an **insured** or a **relative** is not covered.
3. The Uninsured Motorists Coverage will not benefit any:
    (a) worker's compensation insurer;
    (b) self insurer; or
    (c) disability benefits insurer.
4. We do not cover any person while **occupying** a vehicle that is described in the declarations on which Uninsured Motorists Coverage is not carried.
5. This coverage does not apply to a **relative** who is afforded Uninsured Motorists coverage for a motor vehicle he owns.
6. **Bodily injury** that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.
7. **Bodily injury** that results from bio-chemical attack or exposure to bio-chemical agents is not covered.
8. This coverage does not apply to any liability assumed under any contract or agreement.

9. Section IV does not apply:
   (a) To damage caused by an *insured's* participation in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged.
   (b) To damage caused by an *insured's* operation or use of a motor vehicle on a track designed primarily for racing or high speed driving.  This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
10. Regardless of any other provision of this policy, we do not cover punitive or exemplary damages.
11. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*.

**LIMITS OF LIABILITY**
Regardless of the number of autos or *trailers* to which this policy applies:
1. The limit of liability for Uninsured Motorists Coverage stated in the declarations for "each person" is the  most that we will pay for all damages, including those that are for care or loss of services, due to  *bodily injury* that is sustained by one person as the result of one accident.
2. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the most that we will pay for all such damages, including damages that are for care and loss of services, because of *bodily injury* that is sustained by two or more persons as the result of one accident.
3. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability that is applicable to one auto.
   If separate policies with us are in effect for *you* or for any person in *your* household, they may not be combined to increase the limit of our liability for a loss.
   The amount payable under this Coverage will be reduced by all amounts:
   (a) paid by or for all persons or organizations that are liable for the injury;
   (b) paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy; or (c) paid or payable under any:
      (i)   worker's compensation law;
      (ii)  disability benefits law; or
      (iii) any similar law.

**OTHER INSURANCE**
When an *insured occupies* an auto that is not described in this policy, this insurance is excess over any other similar insurance that is available to the *insured*. The insurance which applies to the *occupied* auto is primary.
Except as provided above, if the *insured* has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the *insured* has other insurance against a loss that is covered by the Uninsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

**ARBITRATION**
Except as set forth in the last sentence of this paragraph, any dispute arising between any *insured* and us regarding:
   (a) the extent to which the *insured* is legally entitled to recover against an owner or operator of an  *uninsured auto* (i.e., issues of liability); or
   (b) the amount of damages that are sustained by the *insured*
may be arbitrated.  However, neither the *insured* nor we will be required to arbitrate unless arbitration is expressly required by state law. Binding arbitration will not be used to resolve disputes regarding:
   (a) policy interpretation;
   (b) the existence of this Coverage in a particular policy; or
   (c) the application of this Coverage to a particular claim or claimant.
We will be obligated to pay no more than the applicable policy limits for this Coverage regardless of whether an arbitration results in an award that is in excess of the applicable policy limits for this Coverage as defined in this policy. Unless otherwise required by state law, the method, manner and format of any arbitration process will be subject to agreement by *you* and us. Each party will pay his or its chosen arbitrator. They will bear equally the expenses of the third arbitrator and all other expenses of the arbitration. An award by any two arbitrators up to the per-person financial responsibility or compulsory liability insurance limit of the state in which the policy is rated shall be binding upon the parties.  When an award exceeds this per-person limit, either party shall have the right to a trial on all of the issues in a court of competent jurisdiction. This right must be exercised within 60 days of the award.  Where such right is exercised by either party, the judgment of the arbitrators will not be binding upon either party.

**TRUST AGREEMENT**
When we make a payment under this Coverage:
1. We will be entitled to be paid that amount out of any settlement or judgment that the  *insured* recovers from any person or organization that is legally responsible for the *bodily injury*.

2. The **insured** will:
   (a) hold in trust for our benefit all rights of recovery which he may have against any person or organization that is responsible for these damages;
   (b) do whatever is necessary to secure all rights of recovery; and
   (c) do nothing after the loss to prejudice these rights.

3. At our written request, the **insured**, in his own name, will take, through a designated representative, appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The **insured** will pay us out of the recovery for our expenses, costs and attorneys' fees.

4. The **insured** will provide us with any needed documents to secure his and our rights and obligations.

## CONDITIONS

These conditions apply only to the Uninsured Motorists Coverage:

1. NOTICE  As soon as possible after an accident, notice must be given to us or to our authorized agent stating:
   (a) the identity of the **insured**;
   (b) the time, place and details of the accident; and
   (c) the names and addresses of the injured, and of any witnesses.
   If the **insured** or his legal representative files suit before we make a settlement under this Coverage, he must immediately provide us with a copy of the pleadings.

2. ASSISTANCE AND COOPERATION OF THE **INSURED**
   After we receive notice of a claim, we may require the **insured** to take any action that is necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the **insured** to make that person or organization a defendant in any action against us.

3. ACTION AGAINST US
   Suit will not lie against us unless the **insured** or his legal representative have fully complied with all of the policy terms.

4. PROOF OF CLAIM - MEDICAL REPORTS
   As soon as possible, the **insured** or other person that is making claim must give us written proof of claim, under oath if required. This will include details of:
   (a) the nature and extent of injuries;
   (b) treatment; and
   (c) other facts which may affect the amount payable.
   Proof of claim must be made on forms that are furnished by us unless we have not furnished these forms within 15 days after we receive notice of the claim.
   The injured person will submit to examination by doctors that are chosen by us, at our expense, as we may reasonably require. In the event of the **insured's** incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

5. PAYMENT OF LOSS Any amount due will be paid:
   (a) to the **insured** or his authorized representative;
   (b) if the **insured** is a minor, to his parent or guardian; or
   (c) if the **insured** is deceased, to his surviving spouse; otherwise
   (d) to a person that is authorized by law to receive the payment; or to a person that is legally entitled to recover payment for the damages.
   We may, at our option, pay an amount that is due in accordance with (d) above.

## SECTION V
## General Conditions

These conditions apply to all Coverages that are in this policy.

1. TERRITORY
   This policy applies only to accidents, occurrences or losses during the policy period within:
   (a) the United States of America;
   (b) its territories or possessions; or
   (c) Canada; or
   (d) when the auto is being transported between ports thereof.

2. PREMIUM
   When you dispose of, acquire ownership of, or replace a:
   (a) **private passenger auto**;
   (b) **farm auto**; or
   (c) **utility auto**,
   any necessary premium adjustment will be made as of the date of the change and will be made in accordance with our manuals.

3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement that is issued to form a part of this policy. We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when it is effective in *your* state. The premium for each auto is based on the information that we have in *your* file. *You* agree:

(a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) that *you* will cooperate with us in determining if this information is correct and complete.

(c) that *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

4. ASSIGNMENT

*Your* rights and duties under this policy may not be assigned without our written consent. If *you* die, this policy will cover *your* surviving spouse, if covered under the policy prior to *your* death. Until the policy term expires, we will also cover:

(a) the executor or administrator of *your* estate, but only while he is operating an *owned auto* and only while he is acting within the scope of his duties; and

(b) any person having proper custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or the administrator of *your* estate.

5. POLICY PERIOD

Unless otherwise cancelled, this policy will expire as is shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address as stated in the declarations.

6. CANCELLATION BY THE *INSURED*

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective. If this policy is cancelled, *you* may be due a refund of premium. The refund of premium, if any, will be computed according to our manuals.

7. CANCELLATION BY US

We may cancel this policy by mailing to *you*, at *your* last known address, written notice stating when the cancellation will be effective.

We will mail this notice so that *you* receive it:

(a) 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due;

(b) 20 days in advance in all other cases.

A Post Office certificate of mailing shall be proof of receipt by *you* on the 5th day after mailing. The policy will cease to be in effect as of the date and hour stated in the notice. If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. Payment or tender of unearned premium is not a condition of cancellation.

8. CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal policy, we will not cancel except for any of the following reasons:

(a) *You* do not pay the initial premium on other than a renewal policy or any additional premiums for this policy or fail to pay any premium installment when due to us or our agent.

(b) There is fraud or material misrepresentation affecting the policy or the presentation of a claim.

(c) A violation of the policy terms or conditions.

(d) *You* or any operator who either resides in the same household or customarily operates any auto insured under this policy has a driver's license suspended, other than a first or second suspension under Title 29-A, section 2471, subsection 2, or a suspension under Title 28-A, section 2052, or revoked during the policy term or, if the policy is a renewal policy, during its term or the 180 days immediately preceding its effective date.

Our failure to cancel for any of the reasons above will not obligate us to renew the policy.

9. RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to *you*, at *your* last known address and it is received by *you* at least 30 days prior to the expiration date. A Post Office certificate of mailing shall be proof of receipt by *you* on the third day after mailing.

We will refuse to renew only if our refusal is based upon a reason for which the policy could have been cancelled or it is based upon one or more of the following grounds which occurred during the 36 month period preceding the yearly anniversary date of the policy:

(a) Convictions - *you* or any operator who either resides in the same household or customarily operates an auto insured under this policy is convicted of any of the following:
  (i) Operating a motor vehicle while intoxicated or impaired by the consumption of alcohol or drugs;
  (ii) Homicide or assault arising out of the use or operation of a motor vehicle, criminal negligence in the use or operation of a motor vehicle resulting in the injury or death of another person or use or operation of a motor vehicle directly or indirectly in the commission of a felony;
  (iii) Operating a motor vehicle in excess of the speed limit or in a reckless manner where injury or death results therefrom;
  (iv) Operating a motor vehicle in excess of the speed limit or reckless driving or any combination thereof on 3 or more occasions;
  (v) Operating a motor vehicle insured under this policy without a valid license or registration in effect, except when the person convicted had possessed a valid license or registration which had expired and was subsequently renewed, or during a period of revocation or suspension thereof or in violation of the limitations set forth on the operator's license;
  (vi) Operating a motor vehicle while attempting to avoid apprehension or arrest by a law enforcement officer;
  (vii) Filing or attempting to file a false or fraudulent automobile insurance claim or knowingly aiding or abetting in the filing or attempted filing of any such claim;
  (viii) Leaving the scene of an accident without reporting;
  (ix) Filing a false document with the Secretary of State or the Bureau of Motor Vehicles or using a license or registration obtained by filing a false document with the Secretary of State or the Bureau of Motor Vehicles;
  (x) Operating a motor vehicle in a race or speed test; or
  (xi) Knowingly permitting or authorizing an unlicensed driver to operate a motor vehicle insured under this policy.
(b) Accidents - *you* or any other person who operates a motor vehicle insured under this policy is individually or are aggregately involved in 2 or more vehicle accidents while operating a motor vehicle insured under this policy , or under another policy issued by the same insurer for a motor vehicle in the same household, resulting in either personal injury or property damage in excess of $1,000. Any of the following occurrences involving a motor vehicle operated by *you* or such other person shall not be considered an accident when:
  (i) the motor vehicle was struck from the rear;
  (ii) the motor vehicle was struck while parked;
  (iii) only the operator of another motor vehicle involved in the accident was convicted of a crime, offense or violation contributing to the accident; or
  (iv) You or any other operator of the motor vehicle insured under this policy , or we, were reimbursed by or on behalf of a person responsible for the accident or have a judgment against that person.
When more than one motor vehicle is insured by this policy, the aggregate number of accidents that would permit nonrenewal of the policy or policies insuring those vehicles must be increased by one for each additional motor vehicle insured.
(c) Insurability - when there is a material change in a motor vehicle insured under this policy which so substantially increases the hazard insured against as to render the motor vehicle uninsurable in accordance with our underwriting standards in effect at the time the policy was issued or last renewed; provided that if the insured motor vehicle is uninsurable for physical damage coverages only, we will offer to renew the policy without the physical damage coverages.
This policy will expire without notice if any of the following conditions exist:
(a) *You* do not pay any premium as we require to renew this policy.
(b) *You* have informed us or our agent that *you* wish the policy to be cancelled or not renewed.
(c) *You* do not accept our offer to renew.

**10.** OTHER INSURANCE
If other insurance is obtained on *your owned auto*, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**11.** DIVIDEND PROVISION
*You* are entitled to share in a distribution of the surplus of the Company as is determined by its Board of Directors from time to time.

**12.** DECLARATIONS
By accepting this policy, *you* agree that:
(a) the statements that are in *your* application and that are in the declarations are *your* agreements and representations;
(b) this policy is issued in reliance upon the truth of these representations; and
(c) this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance.
The terms of this policy cannot be changed orally.

**13.** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) at the time of application; or

(b) at any time during the policy period; or

(c) in connection with the presentation or settlement of a claim.

**14.** EXAMINATION UNDER OATH

The *insured* or any other person that is seeking coverage under this policy must submit to examination under oath by any person that is named by us when and as often as we may require.

**15.** DISPOSAL OF VEHICLE

If *you*:

(a) relinquish possession of a leased vehicle; or

(b) sell or otherwise relinquish ownership of an *owned auto* any coverage provided by this policy for that vehicle will terminate on the date *you* do so.

**16.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy that are in conflict with the statutes of Maine are amended to conform to those statutes.

**17.** CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Maine.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

**1.** SPECIAL ENDORSEMENT

UNITED STATES GOVERNMENT EMPLOYEES

**A.** Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

1. Motor vehicles that are owned or leased by the United States Government or by any of its agencies, or
2. Rented motor vehicles that are used for United States Government business, when such use is with the permission of the United States Government. Subject to the limits described in paragraph B. below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

**B.** The following limits apply to this Coverage:

1. A $100 deductible applies to each occurrence.
2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:
   a. the *actual cash value* of the property at the time of the occurrence; or
   b. the cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   c. two months basic pay of the *insured*; or
   d. the limit of Property Damage liability coverage stated in the declarations.
3. For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:
   a. the *actual cash value* of the property at the time of the occurrence; or
   b. the cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   c. the limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

W. C. E. Robinson
Secretary

O. M. Nicely
President

# EXHIBIT D

# GEICO

BUFFALO, NEW YORK.
FOR SUPPLEMENT REQUESTS COPY THE
LINK BELOW
partners.geico.com/gvbps/Logon.aspx
300 CROSSPOINT PKWY
GETZVILLE, NY 08052
Phone: (917) 440-8155
Fax: (516) 213-7011

Claim #: ███████████
Workfile ID: ████████

## Estimate of Record

Written By: STUART FLAXMAN, 1/16/2018 9:41:12 AM
Adjuster: CC57

| | | | | | |
|---|---|---|---|---|---|
| Insured: | Sherry Lewis | Owner Policy #: | ████████ | Claim #: | ████████████ |
| Type of Loss: | Collision | Date of Loss: | 01/10/2018 11:45 AM | Days to Repair: | 0 |
| Point of Impact: | 12 Front | Deductible: | 1000.00 | | |

**Owner (Insured):**
Sherry Lewis
██████████
████████████
██████████

**Inspection Location:**
AUTO IMAGES
401 S BLACKHORSE PIKE
BLACKWOOD, NJ 08012
Repair Facility
(856) 227-0130 Business

**Appraiser Information:**
Sflaxman@geico.com
(917) 440-8155

**Repair Facility:**
TOTAL LOSS

## VEHICLE

2017 VW Jetta SE Automatic 4D SED 4-1.4L Turbocharged Gasoline Gasoline Direct Injection WHITE

| | | | | | |
|---|---|---|---|---|---|
| VIN: | ████████████ | Production Date: | | Interior Color: | |
| License: | X39JFB | Odometer: | 3043 | Exterior Color: | WHITE |
| State: | NJ | Condition: | | | |

**TRANSMISSION**
Automatic Transmission
**POWER**
Power Steering
Power Brakes
Power Windows
Power Locks
Power Mirrors
Heated Mirrors
**DECOR**
Dual Mirrors
Tinted Glass
Console/Storage
Overhead Console
**CONVENIENCE**

Air Conditioning
Intermittent Wipers
Tilt Wheel
Cruise Control
Rear Defogger
Keyless Entry
Message Center
Steering Wheel Touch Controls
Telescopic Wheel
Backup Camera w/Parking Sensors
**RADIO**
AM Radio
FM Radio
Stereo
Search/Seek

CD Player
Auxiliary Audio Connection
Satellite Radio
**SAFETY**
Drivers Side Air Bag
Passenger Air Bag
Anti-Lock Brakes (4)
4 Wheel Disc Brakes
Front Side Impact Air Bags
Head/Curtain Air Bags
Communications System
Hands Free Device
Blind Spot Detection
**ROOF**
Electric Glass Sunroof

**SEATS**
Bucket Seats
Reclining/Lounge Seats
Leather Seats
Heated Seats
**WHEELS**
Aluminum/Alloy Wheels
**PAINT**
Clear Coat Paint
**OTHER**
Traction Control
Stability Control
Signal Integrated Mirrors
Power Trunk/Gate Release

Claim #:

Workfile ID:

## Estimate of Record

2017 VW Jetta SE Automatic 4D SED 4-1.4L Turbocharged Gasoline Gasoline Direct Injection WHITE

| Line | Oper | | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|------|------|---|-------------|-------------|-----|------------------|-------|-------|
| 1 | **FRONT BUMPER & GRILLE** | | | | | | | |
| 2 | | | O/H front bumper | | | | 2.8 | |
| 3 | ** | Repl | A/M CAPA Bumper cover | 8424424Q | 1 | 356.00 | Incl. | 2.8 |
| 4 | | | Add for Clear Coat | | | | | 1.1 |
| 5 | | Repl | Tow eye cap | 5C6807241FGRU | 1 | 40.60 | Incl. | 0.2 |
| 6 | | R&I | Lower deflector | 5C6805903J9B9 | | | Incl. | |
| 7 | ** | Repl | A/M License bracket | 8424004 | 1 | 46.00 | 0.2 | |
| 8 | | Repl | Absorber | 5C6807248L | 1 | 165.00 | Incl. | |
| 9 | * | Repl | LKQ Impact bar w/o collision warning +25% | ~172128710 | 1 | 452.50 | <u>Incl.</u> | |
| 10 | | Repl | Lower c'member | 5C6807651 | 1 | 76.67 | 0.3 | |
| 11 | ** | Repl | A/M CAPA LT Side retainer | 842443AQ | 1 | 36.00 | Incl. | |
| 12 | | R&I | RT End cap w/o fog lamp | 5C6807234 9B9 | | | Incl. | |
| 13 | ** | Repl | A/M CAPA LT End cap w/o fog lamp | VW1038136C | 1 | 98.00 | Incl. | |
| 14 | ** | Repl | A/M LT Housing | 0214.2670 | 1 | 58.33 | Incl. | |
| 15 | ** | Repl | A/M LT Outer grille w/o fog lamps | 0214.3270 | 1 | 43.33 | Incl. | |
| 16 | ** | Repl | A/M Grille w/o HYBRID, w/o collision warning w/chrome | 842431H | 1 | 165.00 | Incl. | |
| 17 | **FRONT LAMPS** | | | | | | | |
| 18 | | R&I | RT R&I headlamp assy | 5C7941006J | | | 0.3 | |
| 19 | | Repl | LT Headlamp assy | 5C7941005J | 1 | 366.67 | 0.4 | |
| 20 | | | Aim headlamps | | | | 0.5 | |
| 21 | **RADIATOR SUPPORT** | | | | | | | |
| 22 | | Repl | Radiator support w/1.4 liter | 5C6805588Q | 1 | 346.67 | 5.2 | |
| 23 | | | Evacuate & recharge | | | m | 1.4 | |
| 24 | | | Add for auto trans | | | m | 0.2 | |
| 25 | ** | Repl | A/M CAPA RT Cross bar | 0214.1306C | 1 | 43.33 | Incl. | 0.3 |
| 26 | ** | Repl | A/M CAPA LT Cross bar | 0214.1406C | 1 | 43.33 | Incl. | 0.3 |
| 27 | | Repl | Upper support w/o GLI w/o collision warning | 5C6805706J | 1 | 56.67 | Incl. | 0.4 |
| 28 | **COOLING** | | | | | | | |
| 29 | | Repl | Radiator primary | 5C0121251L | 1 | 316.67 m | Incl. | |
| 30 | ** | Repl | A/M Reservoir | 0208.7592 | 1 | 33.33 m | 0.3 | |
| 31 | | Repl | LT Air baffle | 5C6121283J | 1 | 37.60 | Incl. | |
| 32 | | Repl | Shroud | 1KM121205 | 1 | 155.40 m | Incl. | |
| 33 | | Repl | RT Fan & motor | 1KM959455E | 1 | 171.67 m | Incl. | |
| 34 | | Repl | LT Fan & motor | 1KM959455G | 1 | 350.00 m | Incl. | |
| 35 | | Repl | Intercooler | 04E145749F | 1 | 243.33 m | 0.7 | |
| 36 | **AIR CONDITIONER & HEATER** | | | | | | | |
| 37 | ** | Repl | A/M Condenser | AC3889 | 1 | 184.00 m | Incl. | |
| 38 | | Repl | Discharge hose | 5C0820721BP | 1 | 301.67 m | 0.3 | |

Claim #:

Workfile ID:

## Estimate of Record

2017 VW Jetta SE Automatic 4D SED 4-1.4L Turbocharged Gasoline Gasoline Direct Injection WHITE

| 39 | | Repl | Suction line | 5C0820743BQ | 1 | 371.67 | m | 0.8 | |
| 40 | | Repl | Liquid line | 5C0820741CF | 1 | 398.33 | m | 0.7 | |
| 41 | **HOOD** | | | | | | | | |
| 42 | ** | Repl | A/M CAPA Hood | V0719 | 1 | 292.31 | | 1.5 | 2.6 |
| 43 | | | Add for Underside(Complete) | | | | | | 1.3 |
| 44 | | Repl | RT Hinge | 5C6823302A | 1 | 68.33 | | 0.3 | 0.3 |
| 45 | | Repl | LT Hinge | 5C6823301A | 1 | 65.00 | | 0.3 | 0.3 |
| 46 | | Repl | LT Front w'strip | 5C6823707 | 1 | 29.40 | | Incl. | |
| 47 | | Repl | Lock w/o HYBRID | 5U0823509H | 1 | 93.33 | | Incl. | |
| 48 | | Repl | Insulator | 5C6863831G | 1 | 175.00 | | Incl. | |
| 49 | **FENDER** | | | | | | | | |
| 50 | * | Rpr | RT Fender | 5C6821106A | | | | 2.0 | 2.0 |
| 51 | | | Overlap Major Adj. Panel | | | | | | -0.4 |
| 52 | ** | Repl | A/M CAPA LT Fender | 8424114Q | 1 | 108.00 | | 1.7 | 2.0 |
| 53 | | | Overlap Major Adj. Panel | | | | | | -0.4 |
| 54 | | | Add for Edging | | | | | | 0.5 |
| 55 | | Repl | LT Front brace | 5C6821135 | 1 | 50.40 | | 0.1 | 0.3 |
| 56 | ** | Repl | A/M LT Fender liner w/o GLI w/o fog lamps | 842414G | 1 | 63.00 | | Incl. | |
| 57 | | Repl | LT Cover w/o GLI | 5C6805413A | 1 | 27.40 | | | |
| 58 | | Repl | LT End plate | 5C6821111A | 1 | 18.20 | | Incl. | |
| 59 | | Repl | LT Rail section (HSS) | 5C0803105 | 1 | 250.27 | s | 6.1 | 0.7 |
| 60 | | Repl | LT Apron assy (HSS) | 5C6805115A | 1 | 313.33 | s | 7.8 | 1.2 |
| 61 | | | Overlap Minor Panel | | | | | | -0.2 |
| 62 | | Repl | LT Upper rail (HSS) | 5C6810135A | 1 | 134.28 | s | Incl. | 0.8 |
| 63 | | | Overlap Minor Panel | | | | | | -0.2 |
| 64 | **ENGINE / TRANSAXLE** | | | | | | | | |
| 65 | | Repl | Intake duct | 04E129651C | 1 | 39.80 | m | Incl. | |
| 66 | | Repl | Air cleaner assy | 04E129611H | 1 | 136.67 | m | Incl. | |
| 67 | | Repl | Intake pipe | 04E129654N | 1 | 136.67 | | | |
| 68 | **RESTRAINT SYSTEMS** | | | | | | | | |

NOTE: ROOF DEPLOYMENT
Deployed air bag
module(s)
Headliner
Windshield pillar trim
Center pillar trim
Upper quarter trim
Grip handle mount bkt
Impact sensors, on
FRONT DEPLOYMENT
Deployed air bag
module(s)
Support for passenger
module
Clockspring
Seat belts, w/triggere
belt tensioners

Claim #:

Workfile ID:

## Estimate of Record

2017 VW Jetta SE Automatic 4D SED 4-1.4L Turbocharged Gasoline Gasoline Direct Injection WHITE

| 69 | | Repl | Driver air bag w/leather w/o sports wheel | 5C6880201E81U | 1 | 464.00 | m | Incl. | |
|----|---|------|-------------------------------------------|---------------|---|--------|---|-------|---|
| 70 | | Repl | RT Head air bag | 5C6880742D | 1 | 464.00 | m | 0.9 | |
| 71 | | Repl | LT Head air bag | 5C6880741D | 1 | 464.00 | m | 0.9 | |
| 72 | | Repl | Clockspring w/gas engine w/o GLI | 5C0959653 | 1 | 255.00 | m | 1.3 | |
| 73 | | Repl | Control module w/o GLI | 561959655Z01 | 1 | 504.00 | m | 0.7 | |
| 74 | | Repl | LT Ft impact sensor | 561959659 | 1 | 143.33 | m | Incl. | |
| 75 | | Repl | RT Side impact sens front | 561959354 | 1 | 88.33 | m | 0.2 | |
| 76 | | Repl | LT Side impact sens front | 561959354 | 1 | 88.33 | m | 0.2 | |
| 77 | | Repl | RT Retractor assy | 5C6857706CRAA | 1 | 278.00 | | 0.6 | |
| 78 | | Repl | LT Retractor assy | 5C6857705BRAA | 1 | 278.00 | | 0.6 | |
| 79 | | Repl | RT Buckle end 03/2011-12/2016 | 5C6857756KYLZ | 1 | 95.00 | | 0.2 | |
| 80 | | Repl | LT Buckle end 03/2011-12/2016 | 5C6857755CYLZ | 1 | 95.00 | | 0.2 | |
| 81 | **ROOF** | | | | | | | | |
| 82 | | Repl | Headliner w/sunroof gray | 5C6867501AP5T5 | 1 | 623.33 | | 3.5 | |
| 83 | **PILLARS, ROCKER & FLOOR** | | | | | | | | |
| 84 | * | Rpr | LT Aperture panel | 5C6809835 | | | | 1.5 | 1.5 |
| 85 | | | Overlap Major Adj. Panel | | | | | | -0.4 |
| 86 | **FRONT DOOR** | | | | | | | | |
| 87 | | Repl | LT Door shell from 05/2013 | 5C6831055G | 1 | 781.67 | | 5.1 | 3.1 |
| 88 | | | Overlap Major Adj. Panel | | | | | | -0.4 |
| 89 | | Repl | LT Upper hinge | 8K0831401H | 1 | 81.67 | | 0.3 | 0.3 |
| 90 | | Repl | LT Lower hinge | 8K0831401H | 1 | 81.67 | | 0.3 | 0.3 |
| 91 | | | Clear Coat | | | | | | 2.5 |
| 92 | **REAR DOOR** | | | | | | | | |
| 93 | | Blnd | LT Outer panel | SEE FOOTNOTE | | | | | 1.1 |
| 94 | | R&I | LT Belt w'strip w/chrome strip | 5C6839475B3Q7 | | | | 0.1 | |
| 95 | | R&I | LT Handle, outside | 5N0837205MGRU | | | | 0.5 | |
| 96 | | R&I | LT R&I trim panel | 5C6867211AEAHA | | | | 0.5 | |
| 97 | **QUARTER PANEL** | | | | | | | | |
| 98 | | Blnd | LT Quarter panel | 5C6809843A | | | | | 1.2 |
| 99 | **MISCELLANEOUS OPERATIONS** | | | | | | | | |
| 100 | # | Refn | Cover Car Complete | | | | | | 0.2 |
| 101 | # | Repl | Restore Corrosion Protection | | 1 | 10.00 | T | 0.2 | |
| 102 | # | Subl | Flex Additive | | 1 | 10.00 | T | | |
| 103 | # | Rpr | SETUP & MEASURE | | | | | 2.0 | |
| 104 | # | | PULL AND SQUARE | | 1 | | | 3.0 | |
| 105 | # | | *****EST FOR FILE ONLY VEH TOTAL LOSS***** | | 1 | | | | |
| 106 | **OTHER CHARGES** | | | | | | | | |
| 107 | # | | E.P.C. | | 1 | 2.50 | | | |
| | | | **SUBTOTALS** | | | **11,766.99** | | **56.7** | **25.3** |

## NOTES

Claim #: 

Workfile ID:

## Estimate of Record

2017 VW Jetta SE Automatic 4D SED 4-1.4L Turbocharged Gasoline Gasoline Direct Injection WHITE

Prior Damage Notes:
SEE EVAL...VEH T/L

### ESTIMATE TOTALS

| Category | Basis | | Rate | Cost $ |
|---|---|---|---|---|
| Parts | | | | 11,744.49 |
| Body Labor | 56.7 hrs | @ | $ 49.00 /hr | 2,778.30 |
| Paint Labor | 25.3 hrs | @ | $ 49.00 /hr | 1,239.70 |
| Paint Supplies | 25.3 hrs | @ | $ 29.00 /hr | 733.70 |
| Miscellaneous | | | | 20.00 |
| Other Charges | | | | 2.50 |
| Subtotal | | | | 16,518.69 |
| Sales Tax | $ 16,518.69 | @ | 6.6250 % | 1,094.36 |
| **Total Cost of Repairs** | | | | **17,613.05** |
| Deductible | | | | 1,000.00 |
| **Total Adjustments** | | | | **1,000.00** |
| **Net Cost of Repairs** | | | | **16,613.05** |

This is not an authorization to repair.

All GEICO customers have the right to have their vehicle repaired in the shop of their choice.

No Supplement will be honored unless authorized by GEICO.

NOTICE: Vehicles constructed of special metals may require the use of specialized welding and bonding equipment. Proper measuring and structural repair systems are required on today's vehicle to accurately accomplish vehicle repairs. Make sure your shop has the proper equipment to repair your vehicle.

ALTERNATE PARTS DISCLAIMER:
IF A QUALITY REPLACEMENT PART (A/M, LKQ, RECOND OR OPT OEM) APPEARS ON THIS ESTIMATE, IT INDICATES THAT THIS ESTIMATE HAS BEEN PREPARED BASED ON THE USE OF ONE OR MORE CRASH PARTS SUPPLIED BY A SOURCE OTHER THAN THE MANUFACTURER OF YOUR MOTOR VEHICLE. GUARANTEES, IF ANY, APPLICABLE TO THESE REPLACEMENT CRASH PARTS ARE PROVIDED BY THE PART MANUFACTURER OR DISTRIBUTOR RATHER THAN BY THE MANUFACTURER OF YOUR VEHICLE.

***IN ADDITION TO ANY SUCH GUARANTEES, GEICO PROVIDES THE FOLLOWING:
****OWNER LIMITED GUARANTEE**** WE GUARANTEE THAT ALL QUALITY REPLACEMENT BODY PARTS (PARTS NOT MANUFACTURED BY THE MANUFACTURER) IDENTIFIED ON YOUR ESTIMATE, ARE FREE OF DEFECTS IN MATERIAL AND WORKMANSHIP AND MEET GENERALLY ACCEPTED INDUSTRY STANDARDS. THIS PARTS AND LABOR GUARANTEE WILL BE IN EFFECT FOR AS LONG AS YOU OWN THE VEHICLE DESCRIBED IN THE ESTIMATE. THIS GUARANTEE COVERS THE COST OF THE PART, LABOR TO INSTALL, AND INCIDENTALS SUCH AS PAINT AND MATERIALS AND IS SPECIFICALLY LIMITED TO THOSE ITEMS. THIS GUARANTEE DOES NOT COVER LOSS OR DAMAGE THAT IS UNRELATED TO DEFECTS IN THE QUALITY REPLACEMENT PARTS. THIS IS NOT TRANSFERABLE. IF ANY QUALITY REPLACEMENT PARTS ARE DEFECTIVE IN EITHER MATERIAL OR WORKMANSHIP, CONTACT YOUR LOCAL GEICO REPRESENTATIVE.

Claim #: ████████████

Workfile ID: ████████████

**Estimate of Record**

2017 VW Jetta SE Automatic 4D SED 4-1.4L Turbocharged Gasoline Gasoline Direct Injection WHITE

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR COMMERCIAL INSURANCE OR A STATEMENT OF CLAIM FOR ANY COMMERCIAL OR PERSONAL INSURANCE BENEFITS CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, AND ANY PERSON WHO, IN CONNECTION WITH SUCH APPLICATION OR CLAIM, KNOWINGLY MAKES OR KNOWINGLY ASSISTS, ABETS, SOLICITS OR CONSPIRES WITH ANOTHER TO MAKE A FALSE REPORT OF THE THEFT, DESTRUCTION, DAMAGE OR CONVERSION OF ANY  MOTOR VEHICLE TO A LAW ENFORCEMENT AGENCY, THE DEPARTMENT OF MOTOR VEHICLES OR AN INSURANCE COMPANY, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE VALUE OF THE SUBJECT MOTOR VEHICLE OR STATED CLAIM FOR EACH VIOLATION.

You are entitled to the return of all replaced parts, except warranty and exchange parts, but you must ask for them in writing before any work is done. If you authorize work by phone, the shop must keep any replaced parts, and make them available when you pick up the vehicle.

THE PREPARATION OF THIS ESTIMATE MAY HAVE BEEN BASED ON THE USE OF CRASH PARTS SUPPLIED BY A SOURCE OTHER THAN THE MANUFACTURER OF YOUR MOTOR VEHICLE.  THERE ARE WARRANTIES APPLICABLE TO THESE REPLACEMENT PARTS.  THESE WARRANTIES ARE PROVIDED BY THE MANUFACTURER AND/OR DISTRIBUTOR OF THE PARTS RATHER THAN BY THE ORIGINAL MANUFACTURER OF YOUR VEHICLE.

Claim #: ▮▮▮▮▮▮

Workfile ID: ▮▮▮▮▮

## Estimate of Record

2017 VW Jetta SE Automatic 4D SED 4-1.4L Turbocharged Gasoline Gasoline Direct Injection WHITE

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data.  Unless otherwise noted, (a) all items are derived from the Guide ERA9283, CCC Data Date 1/2/2018, and potentially other third party sources of data; and (b) the parts presented are OEM-parts manufactured by the vehicles Original Equipment Manufacturer.  OEM parts are available at OE/Vehicle dealerships.  OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships.  OPT OEM or ALT OEM parts may reflect some specific, special, or unique pricing or discount.  OPT OEM or ALT OEM parts may include "Blemished" parts provided by OEM's through OEM vehicle dealerships.  Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may be modified or may have come from an alternate data source.  Tilde sign (~) items indicate MOTOR Not-Included Labor operations.  The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate.  Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM, A/M or NAGS.  Used parts are described as LKQ, RCY, or USED.  Reconditioned parts are described as Recond.  Recored parts are described as Recore.  NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications.  Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times.  NAGS labor operation times are not included.  Pound sign (#) items indicate manual entries.

Some 2017 vehicles contain minor changes from the previous year.  For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used.  The CCC ONE estimator has a list of applicable vehicles.  Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component.  s=MOTOR Structural component.  T=Miscellaneous Taxed charge category.  X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category.  E=Electrical labor category.  F=Frame labor category.  G=Glass labor category.  M=Mechanical labor category.  S=Structural labor category.  (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent.  Algn.=Align.  ALU=Aluminum.  A/M=Aftermarket part.  Blnd=Blend.  BOR=Boron steel.  CAPA=Certified Automotive Parts Association.  D&R=Disconnect and Reconnect.  HSS=High Strength Steel.  HYD=Hydroformed Steel.  Incl.=Included.  LKQ=Like Kind and Quality.  LT=Left.  MAG=Magnesium.  Non-Adj.=Non Adjacent.  NSF=NSF International Certified Part.  O/H=Overhaul.  Qty=Quantity.  Refn=Refinish.  Repl=Replace.  R&I=Remove and Install.  R&R=Remove and Replace.  Rpr=Repair.  RT=Right.  SAS=Sandwiched Steel.  Sect=Section.  Subl=Sublet.  UHS=Ultra High Strength Steel.  N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Information Services Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair.  EPA=Environmental Protection Agency.  NHTSA= National Highway Transportation and Safety Administration.  PDR=Paintless Dent Repair.  VIN=Vehicle Identification Number.

Claim #:
Workfile ID:

**Estimate of Record**

2017 VW Jetta SE Automatic 4D SED 4-1.4L Turbocharged Gasoline Gasoline Direct Injection WHITE

PURSUANT TO SECTION 2610 OF THE INSURANCE LAW, AN INSURANCE COMPANY CANNOT REQUIRE THAT REPAIRS BE MADE TO A MOTOR VEHICLE IN A PARTICULAR PLACE OR REPAIR SHOP. YOU HAVE THE RIGHT TO HAVE YOUR VEHICLE REPAIRED IN THE SHOP OF YOUR CHOICE.

Claim #: ▮
Workfile ID: ▮

## Estimate of Record

2017 VW Jetta SE Automatic 4D SED 4-1.4L Turbocharged Gasoline Gasoline Direct Injection WHITE

## ALTERNATE PARTS SUPPLIERS

| Line | Supplier | Description | Price |
|------|----------|-------------|-------|
| 3 | KSI Trading South Jersey<br>Arley Townsend<br>8295 National Hwy unit B<br>Pennsauken NJ 08110<br>(856) 662-2791 | #8424424Q<br>A/M CAPA Bumper cover | $ 356.00 |
| 7 | KSI Trading South Jersey<br>Arley Townsend<br>8295 National Hwy unit B<br>Pennsauken NJ 08110<br>(856) 662-2791 | #8424004<br>A/M License bracket | $ 46.00 |
| 9 | LKQ Venice<br>3350 South 61st Street<br>Philadelphia PA 19153<br>(215) 727-3610 | #~172128710<br>LKQ Impact bar w/o collision warning +25%<br>Bumper Bar - Front 4DR,WHT,GLI (SDN) W/FOAM,S#$V1109<br>Quote: 181070740<br>Expires: 03/01/18 | $ 362.00 |
| 11 | KSI Trading South Jersey<br>Arley Townsend<br>8295 National Hwy unit B<br>Pennsauken NJ 08110<br>(856) 662-2791 | #842443AQ<br>A/M CAPA LT Side retainer | $ 36.00 |
| 13 | KEYSTONE - PENNSAUKEN, NJ<br>39 PHOENIX DRIVE<br>WEST DEPTFORD NJ 08086<br>(800) 223-0171 | #VW1038136C<br>A/M CAPA LT End cap w/o fog lamp<br>Quote: 181070740<br>Expires: 03/01/18 | $ 98.00 |
| 14 | Continental Auto Parts<br>Robert Harkinson<br>1085 Thomas Busch Memorial Hwy<br>Pennsauken NJ 08110<br>(856) 235-2300 | #0214.2670<br>A/M LT Housing | $ 58.33 |
| 15 | Continental Auto Parts<br>Robert Harkinson<br>1085 Thomas Busch Memorial Hwy<br>Pennsauken NJ 08110<br>(856) 235-2300 | #0214.3270<br>A/M LT Outer grille w/o fog lamps | $ 43.33 |
| 16 | KSI Trading South Jersey<br>Arley Townsend | #842431H<br>A/M Grille w/o HYBRID, w/o collision warning w/chrome | $ 165.00 |

Claim #:

Workfile ID:

## Estimate of Record

2017 VW Jetta SE Automatic 4D SED 4-1.4L Turbocharged Gasoline Gasoline Direct Injection WHITE

8295 National Hwy unit B
Pennsauken NJ 08110
(856) 662-2791

| 25 | Continental Auto Parts | #0214.1306C | $ 43.33 |
| | Robert Harkinson | A/M CAPA RT Cross bar | |
| | 1085 Thomas Busch Memorial Hwy | | |
| | Pennsauken NJ 08110 | | |
| | (856) 235-2300 | | |
| 26 | Continental Auto Parts | #0214.1406C | $ 43.33 |
| | Robert Harkinson | A/M CAPA LT Cross bar | |
| | 1085 Thomas Busch Memorial Hwy | | |
| | Pennsauken NJ 08110 | | |
| | (856) 235-2300 | | |
| 30 | Continental Auto Parts | #0208.7592 | $ 33.33 |
| | Robert Harkinson | A/M Reservoir | |
| | 1085 Thomas Busch Memorial Hwy | | |
| | Pennsauken NJ 08110 | | |
| | (856) 235-2300 | | |
| 37 | KSI Trading South Jersey | #AC3889 | $ 184.00 |
| | Arley Townsend | A/M Condenser | |
| | 8295 National Hwy unit B | | |
| | Pennsauken NJ 08110 | | |
| | (856) 662-2791 | | |
| 42 | Empire Auto Parts, NJ | #V0719 | $ 292.31 |
| | Randall Bollander | A/M CAPA Hood | |
| | 15 Jackson Road | | |
| | Totowa NJ 07512 | | |
| | (973) 772-4206 | | |
| 52 | KSI Trading South Jersey | #8424114Q | $ 108.00 |
| | Arley Townsend | A/M CAPA LT Fender | |
| | 8295 National Hwy unit B | | |
| | Pennsauken NJ 08110 | | |
| | (856) 662-2791 | | |
| 56 | KSI Trading South Jersey | #842414G | $ 63.00 |
| | Arley Townsend | A/M LT Fender liner w/o GLI w/o fog lamps | |
| | 8295 National Hwy unit B | | |
| | Pennsauken NJ 08110 | | |
| | (856) 662-2791 | | |

# EXHIBIT E


**geico.com**

**Government Employees Insurance Company**

Buffalo/New Jersey Claims, PO BOX 9515
Fredericksburg, VA 22403-9515

1/31/2018

Date Loss Reported to GEICO: 1/10/2018

Sherry Lewis



Policy Number: █████████

Dear Sherry Lewis,

We understand that your 2017 VW Jetta SE Automatic ████████████████ has been declared a total loss.

To assist you in updating your policy, we've provided a number of scenarios for you to review and suggested next steps:

- If you will be purchasing another vehicle within the next thirty days, we recommend not making any changes to your policy.
- If you will not be replacing the vehicle at this time, but will be renting a vehicle, we suggest canceling the policy the day after your return the rental.
- If you will not be replacing the vehicle or driving a rental at this time, we recommend canceling your policy effective the date after the loss.
- If you decide to keep this vehicle rather than accept a total loss settlement, there are a few things we will need to go over to ensure appropriate coverage.

To cancel your policy or discuss keeping this vehicle, give us a call at 1-800-861-8380.

You will continue to receive your regularly scheduled billing statements if you do not make any changes to your policy.

Any refund due to you will be sent in the form of a check or electronically returned to your credit card or bank account as quickly as possible.

We look forward to hearing from you soon.

Sincerely,
GEICO Service Department | 800-861-8380

AT0023 (05/2015)

# EXHIBIT F



**Government Employees Insurance Company**

Attn: Salvage Department, PO BOX 13528
Macon, GA 31208-3528

1/29/2018

Date Loss Reported to GEICO: 1/10/2018

Sherry Lewis



Dear Sherry Lewis,

The enclosed "Total Loss Settlement Explanation" is a breakdown of your vehicle's settlement. For your convenience, the Market Valuation is available on GEICO.com. The Net Settlement Amount is the Base Value of your vehicle, plus any applicable fees and adjustments. If you have any questions, please contact me at 917-440-8155. You can also access your claim information at GEICO.com.

Sincerely,

Stuart Flaxman
917-440-8155

Encl:   SHCL30

EC0977 (12/2014)

## TOTAL LOSS SETTLEMENT EXPLANATION

| | |
|---|---|
| Date | January 29, 2018 |
| Accident Date | January 10, 2018 |
| Claim Number | ███████████ |
| Company | Government Employees Insurance Company |
| Vehicle | 2017 VW Jetta SE Automatic |
| VIN | ████████████████ |

Dear: Sherry Lewis,

This is a brief explanation of your claim settlement:

| | | |
|---|---|---|
| Base Value | | $16,172.00 |
| Condition Adjustment | | $886.00 |
| Pre Tax Adjustment | | $1,200.00 |
| Tax | | $1,209.59 |
| Total Value | | $19,467.59 |
| State and Local Regulatory Fees | | $0.00 |
| Post Tax Adjustment | | $0.00 |
| Less Deductible | | $1,000.00 |
| Less Percent Negligent | 0% | $0.00 |
| Less Retention Amount | | $0.00 |
| Net Settlement Amount | | $18,467.59 |
| Towing Charges | | $0.00 |
| Storage Charges | | $0.00 |

State law requires that owners of total loss or salvage motor vehicles apply for a salvage certificate within 10 days after a total loss settlement.

Does Apply                              Does Not Apply
☐                                       ■

Any state sales tax due the owner through replacement of the vehicle will be considered when notice is given and purchase invoice presented.

Does Apply                              Does Not Apply
☐                                       ■

Adjuster Stuart Flaxman              Telephone No.  917-440-8155

Customer's Signature  _____

CL-30  (10-13)



**GEICO®**
geico.com

**Government Employees Insurance Company**

Attn: Salvage Department, PO BOX 13528
Macon, GA 31208-3528

1/29/2018

Date Loss Reported to GEICO: 1/10/2018

Sherry Lewis



| | |
|---|---|
| Company Name: | Government Employees Insurance Company |
| Claim Number: | ████████████ |
| Loss Date: | Wednesday, January 10, 2018 |
| Policyholder: | Sherry Lewis |
| Policy Number: | ████████ |

Dear Sherry Lewis,
Government Employees Insurance Company is required by the New Jersey Administrative
Code under 11:3-10.4 Adjustment of Total Losses, to inform you of the following:

"If Government Employees Insurance Company is notified in writing within 30 calendar days
of the receipt of the claim draft that you cannot purchase a comparable vehicle at the market
value established by us, we shall reopen our claim file and the following procedures will
apply:

1. We may locate a substantially similar vehicle by the same manufacturer of the same
   year, make and model, with similar options, mileage, and condition as the destroyed
   vehicle from a licensed dealer. Such vehicle will be within a reasonable distance not
   to exceed 25 miles from your principal place of garaging; OR

2. Government Employees Insurance Company shall either pay the difference between
   the market value before applicable deductions and the cost or the market value as
   determined by Government Employees Insurance Company of a substantially similar
   vehicle located by you or negotiate and effect purchase of this vehicle for you;

   A quotation obtained by us for a substantially similar motor vehicle must be from a
   dealer located within a reasonable distance from the principal place you garage your
   vehicle. Unless otherwise agreed to by you, a reasonable distance shall not exceed
   25 miles from the principal place you garage your vehicle. The vehicle must be
   available for purchase by you and you must be able to purchase it for the
   Government Employees Insurance Company cash offer plus applicable deductions.
   We shall maintain in our claim proof of the vehicle's availability and the name and

location of the dealer, stock number, vehicle identification number and description of the substantially similar vehicle; OR

3. We may elect to offer a replacement vehicle in accordance with the provisions stated as follows:

If we elect to replace the vehicle, the replacement vehicle must be an immediately available, substantially similar vehicle that is both furnished and paid for by Government Employees Insurance Company subject to the deductible, if any, and including any applicable sales tax; OR

4. We may conclude the loss settlement as provided for under the appraisal section of your policy contract in force at the time of the loss. The appraisal shall be considered as binding against both parties, but shall not preclude or waive any other rights either party has under the insurance contract or under law."

Sincerely,

Claims Department
(800)841-2920

New Jersey law requires the following to appear on this form:
"Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties."

# EXHIBIT G



**GEICO**
geico.com

Government Employees Insurance Company

Buffalo New Jersey Claims, PO BOX 9515
Fredericksburg, VA 22403-9515

**Company:**   Government Employees Insurance Company

**Date:**   February 13, 2018

**From:**   India Patterson
800-691-4312

**To:**   Sherry M Lewis

**RE:**   Claim Documents ████████████

| | **Type Info Here:** |
|---|---|
| Salvage Specialist: | India Patterson |
| Date: | February 13, 2018 |
| Loss Date: | January 10, 2018 |
| Claim Number: | |
| Customer Name: | Sherry M Lewis |
| Base Value: | $16,172.00 |
| Pre-Loss Deduction: | |
| Agreed Value of Vehicle: | $16,172.00 |
| Add State Sales Tax: | |
| Misc. Fees & Adjustments: | $2,086.00 |
| Total: | $18,258.00 |
| Less deductible amount (if any): | $1,000.00 |
| Less net value of salvage you retained: | |
| Less payment to lien holder: | |
| Lienholder Payment Draft Number: | |
| **AMOUNT TO CUSTOMER:** | $17,258.00 |
| Customer Payment Draft Number: | |
| **Additional Payments:** | |
| Additional Payments Draft Number: | |

<u>In Colum B.</u>

Enter your name

Enter today's date

Enter date of loss

Enter claim number

Enter customer's name

Enter the base value of the vehicle

Enter any pre-loss amount

NO ENTRY - DO NOT DELETE CELL CONTENTS!

Enter any state sales tax

Enter the total of any other fees & adjustments made

NO ENTRY - DO NOT DELETE CELL CONTENTS!

Enter deductible here

Enter salvage value if customer is retaining vehicle

Enter any lienholder payments here

Enter lienholder payment draft number here (if any)

NO ENTRY - DO NOT DELETE CELL CONTENTS!

Enter customer payment draft number here (if any)

Enter any additional payments here

Enter additional payment draft number here (if any)

IMPORTANT!!! Do not make any changes to the next
worksheet. To print your CL30, click the "CL30" tab
at the bottom of the screen, then on the printer icon
at the top of the "CL30" screen. Then close Excel
without saving the changes

***If you experience any problems with this form,
please contact Isabel Bryant via ibryant@geico.com
Thank you!

## Do NOT email this Excel document!!!

Select printer button to create a PDF file...send ONLY the PDF file as an attachment.



Sensitively Confidential

# EXHIBIT H

**Volkswagen Credit** 

February 14, 2018

Volkswagen Credit
PO Box 3
Hillsboro, OR 97123-0003
Phone (800) 428-3032

SHERRY LEWIS



Re:   **Customer Name:**   David Lewis
      **Co-Lessee:**        Sherry Lewis
      **Account Number:**
      **Vehicle:**          2017 Volkswagen Jetta
      **VIN:**

Dear Sherry Lewis:

We have received the $17,258.00 settlement check from your insurance company, the insurance deductible amount is $1,000.00. The Insurance Settlement Amount has been subtracted from the Account Payoff Amount. The GAP Subtotal is compared to your Insurance deductible amount. The Total Balance Due is the lesser of the GAP or the Subtotal Insurance Deductible amount, less any applicable Security Deposit.

| | |
|---|---:|
| Account Payoff Amount | $17,744.09 |
| Less: Insurance Settlement Amount | $17,258.00 |
| GAP Subtotal | $486.09 |
| Past Due Payment Amount: | $0.00 |
| Late/Misc fees Due: | $0.00 |
| Lesser of GAP Subtotal or Insurance Deductible | $486.09 |
| Less: Security Deposit | $0.00 |
| Total Balance Due | $486.09 |

Please send the Total Balance Due of $486.09 within 15 days of this notice to:

VW Credit, Inc.
Attn: Asset Resolution Department
PO Box 7572
Libertyville, IL 60048-7572

We appreciate the opportunity to continue servicing your account and look forward to assisting you with your future automotive needs. Please feel free to contact us at (800) 428-3032 if you have any questions.

Sincerely,

**Volkswagen Credit**

VW Credit, Inc. (d.b.a. Volkswagen Credit and Audi Financial Services) is a servicer for VW Credit Leasing, Ltd. and VCI Lease Services, LLC

80-003-LG (12-10)