**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                                    :
SHERRY LEWIS and DAVID V. LEWIS,:
individually and on behalf of all others     :
similarly situated,                                 :
                                                    :
                     Plaintiffs,                    :
                                                    :
              v.                                    :
GOVERNMENT EMPLOYEES                   :
INSURANCE COMPANY,                        :
                                                    :
                     Defendant.                    :
_____

Civil No. 18-5111 (RBK/MJS)

**OPINION**

**KUGLER**, United States District Judge:

This matter is a purported class action on behalf of GEICO automobile insurance claimants. Plaintiffs allege that GEICO underpays claimants by not including applicable sales tax, license fees, and title fees and by imposing arbitrary "condition adjustments" in violation of New Jersey contract law and state statutes. Plaintiffs bring this action on behalf of all those insured under automobile insurance policies issued in New Jersey by GEICO whose claim valuations omitted taxes and fees and whose claim valuations were based upon the values of comparable vehicles that were reduced by "condition adjustments." Plaintiffs bring this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) against Defendant GEICO. Presently before the Court are Plaintiffs' Motion to Certify Class (Doc. No. 63) and Defendant's Motions to Strike the Testimony and Reports of Plaintiff Experts Lance Kaufman (Doc. No. 73) and David Schwickerath (Doc. No. 75). For the reasons set forth below, the Defendant's Motion to Strike the Testimony and Report of Lance Kaufman (Doc. No. 73) is **DENIED**. Defendant's Motion to Strike the

1

Testimony and Report of David Schwickerath (Doc. No. 75) is **GRANTED**. Plaintiffs' Motion to Certify Class (Doc. No. 63) is **GRANTED**.

## I.    Background

The following background is taken from the Complaint (Doc. No. 1). The named Plaintiffs are New Jersey residents who leased a vehicle. Government Employees Insurance Company ("GEICO") insured the vehicle pursuant to a New Jersey Family Automobile Insurance Policy. The policy period was January 6, 2018 to July 6, 2018. The policy required payment on first-party total loss physical damage claims of "Actual Cash Value" ("ACV"), which the policy defines as "the replacement cost of the auto or property less *depreciation* or *betterment*." "*Betterment* is improvement of the auto or property to a value greater than its pre-loss condition." (emphasis in original). "*Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes." (emphasis in original). Relating to physical damage collision coverage, the Policy provides as follows: "*Actual cash value* of property will be determined at the time of the loss and will include an adjustment for *depreciation* and/or *betterment* and for the physical condition of the property." (emphasis in original). GEICO's website states that if a policy covers total loss, GEICO will "pay the actual cash value of the vehicle (plus applicable state fees and taxes) less any deductible."

To replace a vehicle, the policyholder will have to pay sales tax, title fees, and/or license plate transfer fees. Under New Jersey law, ACV includes sales tax and specifically requires that, whether the insurer elects to replace a totaled vehicle or make a cash settlement for a totaled vehicle, it must include applicable sales tax in its offer. N.J.A.C.11:30-10.4(a).

Contrary to New Jersey law, its own policy terms, and statements on its website, GEICO does not include applicable state fees and taxes as part of its claims payments to total loss insureds

in New Jersey. In 2009, the New Jersey Department of Banking and Insurance found that GEICO violated New Jersey law for failing to include the full ACV Sales Tax in its settlement offers to insureds.

Further, GEICO systematically underpays settlement offers by applying arbitrary "condition adjustments." Under New Jersey law, the insured must rely only on "written itemized valuations showing all options and deductions." N.J.A.C. ¶ 11:3-10.4(a). If the insured uses a database of vehicle values to calculate total loss claims, it must explain and justify the condition adjustments made to the loss vehicles and comparable vehicles.

When GEICO determines the value of comparable vehicles, it relies on a valuation report from a third-party company, CCC Information Services, Inc. ("CCC"). The reports purport to contain values for comparable used vehicles recently sold or for sale in the geographic area of the insured. The valuation reports reduce the estimated values of comparable vehicles based on "condition adjustments." The condition adjustments reduce the value of the comparable vehicle, lowering the total loss claim. The reports neither itemize nor explain the basis for these condition adjustments. Condition adjustments appear to be applied categorically, without regard for the unique characteristics of comparable vehicles: multiple comparable vehicles have their values reduced by the exact same amount, down to the last dollar.

On January 10, 2018, Plaintiffs' daughter, an additional insured on the Policy, was involved in a collision resulting in a total loss of their covered vehicle. GEICO, through its adjuster, issued an estimate of record that the vehicle was a total loss. Estimated cost of repair was $17,613.05 (including 6.625% sales tax on a $16,518.69 estimated repair cost subtotal).

GEICO obtained a valuation report from CCC with an "Adjusted Vehicle Value" for the vehicle. The CCC report contained a chart comparing the loss vehicle to three comparable vehicles,

listing the equipment configuration for each. The list price for each comparable vehicle was $17,325, $18,879, and $17,770. Beneath each list price, the CCC report lists "adjustments" to the value of each comparable based on mileage and condition. The CCC report applies a flat $1,006 reduction to the value of each comparable vehicle, without an explanation for that number.

GEICO made a cash settlement offer to Plaintiffs for $18,258, minus the $1,000 deductible, for a total of $17,258. Plaintiffs contacted the adjuster who confirmed that the cash settlement offer does not include sales tax as part of ACV for total loss claims on leased vehicles in New Jersey. This is despite policy language treating "leased" vehicles as "owned auto" for the purpose of physical damage coverage.

Upon learning that the offer did not include sales tax, Plaintiffs requested that the cash settlement include sales tax. GEICO refused. A January 29, 2018 letter from the adjuster to Plaintiffs stated that "The Net Settlement Amount is the Base Value of your vehicles, plus any applicable fees and adjustments." GEICO paid $17,258 ($18,258 minus the deductible) to the lienholder VW Credit Inc. This payment did not include ACV Sales Tax, license fees, or title fees.

Plaintiffs bring this action on behalf of themselves and the following classes:

> All individuals insured in New Jersey by GEICO under a GEICO private passenger vehicle policy who, from the earliest allowable time to the present:
> (1) Received a first party total loss settlement or settlement offer that did not include applicable sales tax, title fees, or license plate fees; or
> (2) Received a first party total loss settlement or settlement offer based in whole or in part on the price of comparable vehicles reduced by a "condition adjustment."

Plaintiffs bring counts for (I) breach of contract, (II) breach of the implied covenant of good faith and fair dealing, (III) declaratory judgment and injunctive relief, and (IV) New Jersey Consumer Fraud Act. Plaintiffs seek (A) an order certifying the Class, (B) restitution, (C) injunctive relief to prevent continuation of illegal practices by GEICO and for other injunctive relief as proven

appropriate, (D) actual, statutory, and punitive damages according to proof, (E) a declaration that

GEICO is required under policies issued pursuant to Policy Form A-30NJ to pay ACV, including

sales tax, title fees, and license plate transfer fees, that GEICO may not base its valuation and

payment of Plaintiffs' and each Class Member's claim on values of comparable vehicles that have

been artificially reduced by an arbitrary and unjustified "condition adjustment," and that GEICO

must itemize and explain "condition adjustments" applied to comparable vehicles, (F) attorneys'

fees, (G) costs of suit, (H) pre-and post-judgment interest on any amounts awarded, and (I) other

and further relief as the Court may deem proper.

## II.    Daubert Motions

The admissibility of expert testimony is governed by Rule 702, which was amended in

2000 to reflect the Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509

U.S. 579 (1993). The Rule is as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or determine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may testify thereto in the form of an
> opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the
> testimony is the product of reliable principles and methods, and (3) the witness has
> applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under this rule, we act as a "gatekeeper" to ensure that expert testimony is both

relevant and reliable. *Pineda v. Ford Motor Co.,* 520 F.3d 237, 243 (3d Cir. 2008). Rule 702 has

a "'liberal policy of admissibility.'" *Id*. (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802,

806 (3d Cir. 1997)).

To be admissible, expert testimony must satisfy three requirements under Rule 702: (1) the

witness must be an expert (i.e. must be qualified); (2) the expert must testify about matters

requiring scientific, technical, or specialized knowledge (i.e. must be reliable); and (3) the expert's

testimony must assist the trier of fact (i.e. must fit). *Id.* at 806; *see also Elcock v. Kmart Corp*., 233

F.3d 734, 741 (3d Cir. 2000) (Rule 702 provides "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit."). The party offering the expert testimony carries the burden of establishing that the proffered testimony meets the three requirements by a preponderance of the evidence. *Padillas v. Stork-Gamco, Inc*., 186 F.3d 412, 418 (3d Cir. 1999). "A court's rejection of expert testimony should be the exception rather than the rule." *Luppino v. Mercedes-Benz USA, LLC*, No. CV095582, 2015 WL 12819051, at *3 (D.N.J. June 29, 2015) (citing Fed. R. Evid. 702 Advisory Committee Note). "If the expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997).

GEICO moves to strike the testimony and report of two of Plaintiffs' experts, Lance Kaufman and David Schwickerath, because they are unqualified to provide expert testimony relevant to the class certification inquiry and because their reports is unreliable and irrelevant.

### A. Testimony and Report of Lance Kaufman

Dr. Lance Kaufman, an economist, proposes a damages calculation methodology by modifying the CCC to remove the condition adjustment to the comparable vehicles while leaving in any positive condition adjustment to the total loss vehicle. Damages in Kaufman's analysis equal the base vehicle value calculated by CCC less the condition adjustments on the comparable vehicles, with some other minor adjustments for taxes, fees, and settlement. In other words, the "economic harm" is the amount of the condition applied to any comparable vehicle used in the CCC MVR, plus, potentially, amounts for taxes and fees. We are satisfied that Kaufman is qualified and that his opinion is reliable and relevant. GEICO raises no challenges to Kaufman's statistical methods.

GEICO's first challenge is that Kaufman's methodology assumes that the condition adjustments are unlawful. This is not a valid basis to exclude an expert's opinion. *See Dorman Prods. v. PACCAR, Inc.*, 201 F. Supp. 3d 663, 690 (E.D. Pa. 2016) ("All damages expert opinions are dependent . . . on the assumption that liability has been proven.").

GEICO's next challenge is that Kaufman's methodology does not reliably estimate harm. CCC sometimes made calculations using comparable vehicles without condition adjustments, and Kaufman does not account for that because he does not have the requisite data. Plaintiffs respond that this is not an issue because upon class certification, he will calculate "the difference between the corrected valuation amount and the – the actual valuation amount, which would implicitly account for the weights on the zero value comps." We agree with Plaintiffs that Kaufman has demonstrated a reliable methodology to calculate damages whether the condition adjustment is present and disclosed or not. This is because the condition deduction is always the same for all dealer vehicles in each valuation report, making the condition deduction ascertainable.

GEICO's next challenge is that Kaufman assumes that the condition adjustment to comparable vehicles injured all class members in the full amount of the condition adjustment, without accounting for any reduction in the value of comparable vehicles caused by those adjustments that could be offset partially or completely by other steps in the process, such as through condition adjustment to the loss vehicle. This argument veers into the merits of Plaintiffs' claims and GEICO's anticipated defenses. This is not a basis to exclude. Kaufman is not obligated to incorporate GEICO's theories of how harm may have been mitigated or offset by other steps in the vehicle valuation process. Rather, Kaufman's analysis is directed to Plaintiffs' theory that the condition adjustments were unsupported and unexplained.

GEICO next argues that Kaufman's methodology does not consider any purported improper conditioning of loss vehicles, only focusing on the conditioning of comparable vehicles. Kaufman concedes that if he were to incorporate into his analysis an assumption of improper conditioning of loss vehicles, it would impact the calculation of vehicle value. But the condition of the loss vehicle is not relevant to Plaintiffs' claims that the condition deductions for comparable vehicles was improper under New Jersey law. Same as above, a perceived failure to incorporate GEICO's anticipated defenses into an analysis is not a basis to exclude.

GEICO further argues that Kaufman is not qualified because his experience with CCC systems is limited and because he overly relies on Plaintiffs' counsel to form his opinions. But Kaufman is not offering opinions on CCC's valuation process. His reliance on representations by Plaintiffs' counsel is appropriate. He must make certain assumptions about liability, at the direction of counsel, to provide a damages methodology in the event that the factfinder finds liability.

On relevance, GEICO argues that Kaufman's opinions are not relevant because they do not amount to a methodology for calculating vehicle actual cash value or determining whether actual cash value was underpaid on any claim. This is not a problem here because Plaintiffs do not seek to ascertain or recover actual cash values of vehicles. Rather, they seek to recover improper adjustments. GEICO further argues that Kaufman's opinions are not relevant because he has not yet calculated damages. At this stage in the litigation, he is not obligated to do so.

The motion (Doc. No. 74) is denied.

**B.  Testimony and Report of David Schwickerath**

GEICO's first challenge is that Schwickerath is not qualified. This challenge covers several critiques: Schwickerath lacks the specific industry and legal experience to opine on CCC's financial reporting practices; Schwickerath makes improper legal opinions; Schwickerath has no

experience with the relevant New Jersey regulations; Schwickerath has no knowledge of the CCC valuation process. GEICO's second challenge is that Schwickerath's report does not employ a reliable methodology. Schwickerath opines that CCC and GEICO failed to follow financial reporting standards, but he does not explain why that matters. GEICO's third challenge is that Schwickerath's opinion is not relevant. Schwickerath testified at his deposition that he is not giving any opinions on whether class certification is appropriate. (Schwickerath Tr. 9:8-17).

Most of Schwickerath's expert report is a summary of the allegations and claims in the case. But it is not the role of an expert witness to share his opinion on the New Jersey regulations and whether GEICO followed them. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) ("[T]he District Court must ensure that an expert does not testify as to the governing law of the case."). The remainder of the report concludes that GEICO and CCC did not follow generally accepted accounting principles. He cites no law, regulation, custom, or industry practice which would require or even recommend GEICO or other insurance companies follow accounting principles for evaluating casualty loss. Whether CCC and GEICO adhered to or did not adhere to generally accepted accounting principles is not a question in this case, so comparing their practices to financial reporting standards is not a reliable method.

Plaintiffs argue that testimony about GEICO's nonadherence to financial accounting standards is relevant because it tends to show that GEICO did not properly itemize its deductions from comparable vehicles, in violation of New Jersey state law. But Plaintiffs have not provided a basis for making this connection between generally accepted accounting principles and compliance with New Jersey state law. Schwickerath does not seem to have knowledge of insurance claims practices or whether generally accepted accounting principles are applicable in the context of casualty loss. Moreover, an expert may not opine on what accounting methods are required or

acceptable under New Jersey state law. *See Casper v. SMG*, 389 F. Supp. 2d 618, 621 (D.N.J. 2005) ("The district court must limit expert testimony so as to not allow experts to opine on 'what the law required' or 'testify as to the governing law.'") (quoting *United States v. Leo*, 941 F.2d 181, 196- 97 (3d Cir. 1991). The motion (Doc. No. 76) is granted.

## III.     Class Certification Motion

In opposition to Plaintiffs' class certification motion, GEICO argues that Plaintiffs have no standing, that the class is not ascertainable, Rule 23(a) is not met, and Rule 23(b) is not met. Specifically, GEICO argues that Plaintiffs are not adequate class representatives, Plaintiffs' claims are not typical of the class, individual questions on liability predominate, individual defenses to liability predominate, no reliable damages methodology, class treatment is not superior.

### A.  Whether Plaintiffs have Article III Standing

Our jurisdiction is limited to "Cases and Controversies" as defined by the standing doctrine. *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018).  The standing doctrine burdens Plaintiffs with showing "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (internal quotations and citations omitted). Every class member must have standing. *TransUnion LLC v. Ramirez*, 131 S. Ct. 2190, 2208 (2021).

The Third Circuit recognizes two types of standing challenges: facial and factual. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). We accept the pleadings as true when faced with a facial challenge, but not when faced with a factual challenge. *Id*. GEICO argues that the class should not be certified because Plaintiffs have not shown that they suffered a concrete injury. GEICO does not specify whether the standing challenge is facial or factual.  We understand this

challenge as a factual attack because GEICO disputes whether the total loss settlement relied on CCC's calculations.

GEICO is challenging the merits of Plaintiffs' claims, not whether they have standing. Plaintiffs have alleged an injury where CCC calculations were in part used to make condition adjustments; GEICO says that this did not happen. Standing is not an opportunity to shoehorn arguments about the merits of Plaintiffs' claims. *See Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 479 (3d Cir. 2018) ("[O]ur standing inquiry must avoid any consideration of the merits beyond a screening for mere frivolity."). The rest of GEICO's arguments have the same defect. GEICO sets forth additional facts that Plaintiffs' claim was submitted to binding appraisal, thereby nullifying any injury. Plaintiffs argue in response that the appraisal offer, which they did not accept, did not resolve their claims or change the fact that GEICO undervalued their claim. This is a factual dispute about the merits, not a standing challenge.

### B.  Whether Rule 23(a) prerequisites are met

Rule 23(a) provides that class certification may be proper if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs bear the burden of demonstrating that Rule 23's requirements are met by a preponderance of the evidence, and the district court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008).

*(1) Numerosity*

There is not a specific threshold number needed to satisfy the numerosity requirement—instead, the individual facts of a given case must be examined. *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980). In the Third Circuit, a plaintiff who demonstrates that the potential number of plaintiffs exceeds 40 satisfies the numerosity requirement. *Marcus v. BMW of N. Am, LLC*, 687 F.3d 583 (3d Cir. 2012).

Plaintiffs have determined that GEICO obtained over 56,410 valuation reports from CCC that contain condition adjustments to comparable vehicles and data produced by GEICO show that there are 6,430 reports that did not include payment for sales tax, license transfer fees, and title fees in the valuation of the insured's total loss vehicle claim. (Hausman-Cohen Decl. ¶¶ 23, 35). Numerosity is satisfied.

*(2) Commonality*

"Commonality" is a consideration of whether there are "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied when there are classwide answers." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). Where, as here, a plaintiff moves for certification under Rule 23(b)(3), which requires an assessment of whether common questions predominate, the predominance inquiry, *infra*, subsumes this element of commonality. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015).

*(3) Typicality*

Under Rule 23(a)(3), the class representatives' claims must be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). This "ensures the interests of the class and the class representatives are aligned so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 427-28 (3d Cir. 2016) (internal quotations omitted). The Third Circuit has described typicality as having a "low

threshold." *Id.* "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Id.*

Plaintiffs' contends that typicality is met. Plaintiffs purchased total loss coverage from GEICO. Plaintiffs' insured vehicle was declared a total loss. Plaintiffs received a settlement offer from GEICO that was based on a CCC valuation report applying condition adjustments to the value of comparable vehicles and that did not include sales tax, title fees, and license plate fees as part of the replacement costs required to be covered under the terms of the Policies and New Jersey law. These are the same claims brought by the class. All class members are GEICO policy holders for total loss coverage from GEICO whose vehicles were totaled. Their total loss claims were paid based on a CCC valuation report that reduced the value of their vehicle through the application of uniform condition adjustments to comparable vehicles. All class members were not compensated for sales tax, license transfer fees, and title fees.

GEICO's position is that Plaintiffs have different factual and legal positions from other class members and that they face unique defenses, precluding a finding of typicality. The point to the fact that Plaintiffs' claim was subject to appraisal, and that their settlement included consideration of information (i.e. additional comparables and NADA book value) outside of the CCC MVR resulting in a $1,200 positive adjustment to settle, more than offsetting the condition adjustment.

Unique defenses bear on typicality because they present a danger that "the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006). We find that the defenses GEICO has raised

that appear unique to Plaintiffs are not enough of a danger to thwart typicality. Plaintiffs' theory of harm and what they seek to prove is that GEICO violated New Jersey law in the first instance when they relied on CCC valuations and submitted arbitrary condition adjustments to claimants without adequate itemization or specificity. Plaintiffs' theory of harm does not require that the amount ultimately received is reflective of the condition adjustment. Positive adjustments to settle (and appraisal offers, for class members who took them) have to do with damages, not liability. GEICO's other arguments, that Plaintiffs seek damages for storage charges and document fees, and that Plaintiffs are not owed transfer fees, fail for the same reason: they do not disturb Plaintiffs' allegations as to liability, so they do not present a risk of unaligned interests between Plaintiffs and the class. Typicality is met.

*(4) Fair and Adequate Class Representation*

This requirement is two-pronged. First, the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). Second, the plaintiff must not have interests antagonist to those of the class. *Id.* In short, this requirement is to ensure that there are not conflicts of interest between the named parties and those they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Plaintiffs' attorneys appear to this Court to be qualified, experienced, and able to conduct this litigation. Second, this Court does not see any outstanding conflicts of interest between the named parties and those they seek to represent. Plaintiffs have testified and responded to discovery requests. It appears that they are ready and able to prosecute this case on behalf of their fellow class members. This requirement is also satisfied.

GEICO argues that a class action will waive class members' claims for additional amounts or fees because Plaintiffs only seek minimum registration fees, and there are more claims to be had. And Rule 23 does not require Plaintiffs to bring every conceivable claim, and the scope of any judgment or settlement would necessarily be limited to the specific practices at issue. *See In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 326 (3d Cir. 1998).

### C.  Whether Rule 23(b)(3) is met

Plaintiffs seek certification pursuant to subsection (b)(3), which provides for certification if:

> [T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> A. the class members' interests in individually controlling the prosecution or defense of separate actions;
> B. the extent and nature of any litigation concerning the controversy already begun by or against class members;
> C. the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> D. the likely difficulties in managing a class action.

*Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 488 (3d Cir. 2015). In this inquiry, we must determine whether there are "reliable means of proving classwide injury," often with the help of experts. *Id.* (internal citation omitted). The predominance requirement is normally satisfied where plaintiffs have alleged a common course of conduct on the part of the defendant. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011).

"Issues common to the class must predominate over individual issues" such that the class is "sufficiently cohesive to warrant adjudication by representation*." In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311 (internal quotation omitted). Although courts may not decide cases on the merits at the class certification stage, the merits are very much at issue, as courts "must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate." *Id.* (internal quotation omitted). Ultimately, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* (internal quotation omitted).

"What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (citing *Wal-Mart*, 564 U.S. at 350). Indeed, "the focus is on whether the defendant's conduct was common as to all of the class members, not on whether each plaintiff has a 'colorable' claim." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 299-300 (3d Cir. 2011).

The predominant issues here are whether GEICO's insurance policies, under a uniform contract, included coverage for sales tax and transfer fees, and whether GEICO breached by applying condition adjustments without itemizing or explaining them. The resolution of these issues will be determined by common proof on the meaning of the subject contract language. Under New Jersey law, to state a claim for breach of contract, a plaintiff must plead that (1) the parties entered into a valid contract; (2) the defendant failed to perform its contractual obligation; and (3) as a result, the plaintiff sustained damages. *E.g., Spina v. Metro. Life Ins. Co.*, No. 1:20-cv-14129, 2021 U.S. Dist. LEXIS 114887, at *20 (D.N.J. June 21, 2021). Common issues predominate on these elements. Whether the contract permits GEICO to apply an unsupported

16

condition adjustment to the values of comparable dealer vehicles based on a non-existent or flawed inspection process is a question common to the class. Under its standard auto policy form, GEICO is contractually required to pay the replacement cost of the vehicle. This value must be determined in accordance with New Jersey law, which does not permit arbitrary, unsupported deductions or unitemized deductions. *See* N.J. Admin. Code 11:3-10.4(a), -10.4(h), and -10.3(j). Similarly, GEICO breaches the contract by failing to establish reasonable standards for the investigation of total loss claims, failing to conduct a reasonable investigation of total loss claims, failing to effectuate fair and equitable settlements, and misrepresenting pertinent facts about total loss valuations to its insureds. N.J. Rev. Stat. 17B:30-13.1. The predominance requirement is met.

In opposition, GEICO first argues that Plaintiffs cannot show predominance because sometimes there are instances when condition adjustments are appropriate, such as when a vehicle not in retail condition. But even if condition adjustments were close to an accurate casualty loss estimate, this does not change Plaintiffs' proposed plan to demonstrate liability. They allege that, rather than using the advertised prices of comparable vehicles to value each claim, GEICO simply subtracted a flat amount from each comparable vehicle under the guise of a "condition adjustment"—even though neither GEICO nor its valuation vendor CCC had ever inspected the condition of most of the comparable vehicles. And, instead of itemizing the condition adjustments it made to comparable vehicles as required by N.J. Admin. Code 11:3- 10.4(a), -10.4(h), and -10.3(j), GEICO simply subtracted an aggregated amount from each comp, lowering in turn the actual cash value of the loss vehicle. These deductions are applied to all dealer vehicles in CCC valuation reports used to value total loss claims.

GEICO next argues that whether GEICO underpaid a claim settlement would need to be analyzed with respect to each individual claim. Variations in the specific amounts of damages do

not undermine predominance. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 375 (3d Cir. 2015). We are satisfied with Plaintiffs' demonstration that the amount each individual insured was affected can be calculated. *See* II.A. Testimony and Report of Lance Kaufman, *supra*.

GEICO next argues that some claims deviated from the CCC's value, so even if the condition adjustments to comparable vehicles were improper, the presence of a condition adjustment alone would not resolve the claims of many members of the proposed class. However, deviations did not change the presence of the condition adjustment in the first instance. GEICO's adjusters did not change or remove the adjustment injected by CCC, even if the ultimate number change for another reason such as the application of a deductible.

*Lundquist v. First Nat'l Ins. Co. of Am.* is inapposite. No. C18-5301RJB, 2020 U.S. Dist. LEXIS 195746, at *2 (W.D. Wash. Oct. 21, 2020). That matter involves similar claims under a different state law. Under the Washington state law, "the Plaintiffs must show that the comparable vehicles used were not comparable vehicles at all because any condition adjustment was (1) not itemized *and* (2) inappropriate in dollar amount." *Id.* at *4 (emphasis in original). That court found that the predominance requirement was not met because under that law, Plaintiffs would have to show that each of the compensation amounts they received were incorrect in order to show liability: a task done individually, not class-wide. *Id.* Here, Plaintiffs are not required to make such a showing to demonstrate liability, so predominance is not thwarted as it was in *Lundquist.*

*Superiority*

To determine whether a class action is superior to another method, we must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

The 23(b)(3) factors weigh towards class action certification. It is unlikely that most members of the class will have the time, energy, or economic interest to pursue potentially small individual claims. The incentives to bring individual suits are not strong.

This Court provides a relatively convenient forum for the parties. GEICO needs only to defend itself here. The relative costs for all parties in proceeding in this forum are minimized. Furthermore, there do not appear to be any significant issues in managing this (a) as a class action; and (b) in this Court.

*Ascertainability*

To be certified, a Rule 23(b)(3) class must be currently and readily ascertainable in an "economical and administratively feasible manner." *Carrera v. Bayer Corp.*, 727 F.3d. 300, 306-07 (3rd Cir. 2013); *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 592-94 (3d Cir. 2012); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013). GEICO argues that the class is not ascertainable for several reasons. First, Plaintiffs cannot identify class members whose settlement did not include applicable sales tax, title fees, or license plate fees because GEICO does not maintain data tracking sales tax or fee payments and because GEICO's records do not break out the components of total loss settlement payments. Second, Plaintiffs cannot systematically identify claims where taxes were appropriately not paid because the vehicle was exempt from sales tax, the lessee received a sales tax refund or credit or additional sales tax was not owed under the lease. Third, Plaintiffs purport to identify claims with MVRs containing a comparable vehicle condition adjustment, but MVRs do not reflect the amount GEICO paid in settlement of the claim or that GEICO relied on the CCC MVR. GEICO's claim settlement payments frequently include amounts in addition to those calculated by CCC that negate any negative condition adjustment (*e.g.*,

adjustments to settle, adjustments to the loss vehicle or appraisals). GEICO maintains that only individual reviews of claims could alleviate these defects in the data.

Information gaps here are of GEICO's own making, so we are not inclined to deny class certification on this basis. *Cf. Hargrove v. Sleepy's LLC*, 974 F.3d 467, 470 (3d Cir. 2020) ("[W]here [a defendant's] lack of records makes it more difficult to ascertain members of an otherwise objectively verifiable class, the [plaintiffs] who make up that class should not bear the cost of the [defendant's] faulty record keeping.").

Plaintiffs have proposed methods of managing the information gaps to ascertain the class "as a matter of just and reasonable inference." *Id.* Prior to 2020, GEICO did not to pay sales taxes or fees, so the analysis for that time period is straightforward. Afterward, for several months, GEICO never paid them on leased total loss vehicles unless a class member submitted "supporting documentation" relating to fees. Plaintiffs submitted evidence that in a review of 198 claim files, such fees were paid only 2% of the time, and never paid in full. Plaintiffs also submitted evidence that GEICO's typically excluded sales tax from the Net Settlement Amount for leased vehicle claims—and if sales tax was wrongly included in that amount, the amount would be corrected. Therefore, Plaintiffs' damages methodology expert concluded that the Net Settlement Amount could be used to determine whether sales tax was paid on a given claim. As to the ascertainability of class members who received an offer based on the condition adjustment, Plaintiffs have submitted evidence that GEICO consistently used the CCC valuation to determine claims, including for the condition adjustments that were applied to class members. At this stage, we are satisfied that the evidentiary support gives rise to a just and reasonable inference that the class is ascertainable.

Because we certify the class under Rule 23(b)(3), we need not address the alternative methods of certification proposed.

## IV.   23(g) Class Counsel Appointment

When a court certifies a class, it must appoint class counsel. Fed. R. Civ. P. 23(g). The factors we consider are: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id.* at 23(g)(1).

Plaintiffs have proposed Plaintiffs' counsel, of whom James Cecchi appears to manage filings and correspondence with the Court in this matter. This Court accepts the suggestion. Counsel has investigated and pursued these claims. Counsel has the requisite managerial and litigation experience. This Court sees no reason to disagree and appoints Plaintiffs' Counsel James Cecchi as class counsel.

## V.   Conclusion

For the reasons set forth above, Defendant GEICO's Motion to Strike the Testimony and Report of Lance Kaufman (Doc. No. 73) is **DENIED**. Defendant's Motion to Strike the Testimony and Report of David Schwickerath (Doc. No. 75) is **GRANTED**. Plaintiffs' Motion to Certify Class (Doc. No. 63) is **GRANTED**. An order follows.

Dated: 3/17/2022                                                    /s/ Robert B. Kugler
                                                                           ROBERT B. KUGLER
                                                                           United States District Judge